# No. 25-10534

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

W.M.M., on their own behalf and on behalf of others similarly situated; F.G.M., on their own behalf and on behalf of others similarly situated; A.R.P., on their own behalf and on behalf of others similarly situated,

Petitioners - Appellants

v.

Donald J. Trump, in his official capacity as President of the United States; Pamela Bondi, Attorney General of the United States, in her official capacity; Kristi Noem, Secretary of the United States Department of Homeland Security, in her official capacity; United States Department of Homeland Security; Todd Lyons, Acting Director of the Director of United States Immigration and Customs Enforcement, in his official capacity; United States Immigration and Customs Enforcement; Marco Rubio, Secretary of State, in his official capacity; United States State Department; Josh Johnson, in his official capacity as acting Dallas Field Office Director for United States Immigration and Customs Enforcement; Marcello Villegas, in his official capacity as the Facility Administrator of the Bluebonnet Detention Center; Phillip Valdez, in his official capacity as Facility Administrator of the Eden Detention Center; Jimmy Johnson, in his/her official capacity as Facility Administrator of the Prairieland Detention Center; Judith Bennett, in her official capacity as Warden of the Rolling Plains Detention Center,

Respondents - Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**RECORD EXCERPTS**

SUBMITTED BY:
Lee P. Gelernt

125 Broad Street
New York, NY 10004-0000

# Table of Contents

| Document | Record Citation | Tab |
|---|---|---|
| Docket Sheet - 1:25-CV-59 | ROA.706-725 | Tab 1 |
| Docket Sheet - 1:25-CV-59 | ROA.1-20 | Tab 2 |
| Notice of Appeal | ROA.339-340 | Tab 3 |
| Memorandum of Law In Support of Temporary Restraining Order | ROA.51-75 | Tab 4 |
| Proposed Order | ROA.82-83 | Tab 5 |
| Order on Motion for TRO | ROA.250-259 | Tab 6 |
| Order on Motion to Certify Class | ROA.565-612 | Tab 7 |
| Order on Motion for Reconsideration | ROA.684-685 | Tab 8 |
| Petition for Writ of Habeas Corpus | ROA.21-43 | Tab 9 |
| Motion for TRO | ROA.46-50 | Tab 10 |
| Declaration(s) of Victoria Blakeborough | ROA.76-77 | Tab 11 |
| Declaration(s) of Kathryn D'Adamo | ROA.78-81 | Tab 12 |
| Declaration(s) Attorney Declaration | ROA.233-234 | Tab 13 |
| Motion for TRO | ROA.264-269 | Tab 14 |
| Exhibit(s) Declaration of Karene Brown | ROA.270 | Tab 15 |
| Exhibit(s) Declaration of Michelle Brane | ROA.271-272 | Tab 16 |
| Exhibit(s) Declaration of Travis John Collins | ROA.273-274 | Tab 17 |
| Exhibit(s) Declaration of Kevin Siegel | ROA.275 | Tab 18 |
| Motion for Miscellaneous Relief | ROA.280-283 | Tab 19 |
| SMR Notice | ROA.284 | Tab 20 |
| RJRS Notice | ROA.285 | Tab 21 |
| Declaration(s) : Collins | ROA.286 | Tab 22 |
| Declaration(s) : Petty | ROA.287-288 | Tab 23 |
| Declaration(s) : RJRS | ROA.289-290 | Tab 24 |
| Petition for Writ of Habeas Corpus | ROA.342-365 | Tab 25 |
| Declaration(s) Declaration of Assistant Field Office Director Carlos Cisneros | ROA.469-474 | Tab 26 |
| Declaration(s) Declaration of Sarah Corning | ROA.475-477 | Tab 27 |
| Motion for Reconsideration | ROA.613-615 | Tab 28 |
| Memorandum in Support of Petitioners-Plaintiffs' Mxn for Reconsideration | ROA.616-637 | Tab 29 |
| Exhibit(s) A LAS Declaration | ROA.638-641 | Tab 30 |
| Exhibit(s) B Oscar Declaration | ROA.642-644 | Tab 31 |

**TAB 1**

APPEAL

# U.S. District Court
## Northern District of Texas (Abilene)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00059-H

W.M.M., et al. v. Donald J. Trump, et. al
Assigned to: Judge James Wesley Hendrix
Case in other court:  U.S. Supreme Court, 24-01177
Cause: 28:2241 Petition for Writ of Habeas Corpus

Date Filed: 04/16/2025
Jury Demand: None
Nature of Suit: 530 Prisoner Pet/Habeas
Corpus: General
Jurisdiction: U.S. Government Defendant

**Petitioner**

**A.R.P**                                   represented by  **Brian Klosterboer**
ACLU of Texas
PO Box 8306
Houston, TX 77288
713-942-8146 x1035
Fax: 713-942-8966
Email: bklosterboer@aclutx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Adriana Cecilia Pinon**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: apinon@aclutx.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Gorski**
ACLU-American Civil Liberties Union
Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-284-7305
Email: agorski@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: aharris@aclutx.org

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
ACLU Foundation of Texas
PO Box 8306
Houston, TX 77288
713-942-8146
Email: clett@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Galindo**
American Civil Liberties Union Foundation
125 Broad Street
Ste 18th Floor
New York, NY 10004
646-905-8907
Email: dgalindo@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2616
Fax: 212-549-2654
Email: lgelernt@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
American Civil Liberties Union Foundation
425 California Street
San Francisco, CA 94104
718-483-5885
Email: mngo@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
ACLU-American Civil Liberties Union
Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7816

Email: ptoomey@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
1018 Preston Road
Houston, TX 77002
713-942-8146
Fax: 713-942-8966
Email: skumar@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: tbuser-clancy@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Petitioner**

**W.M.M.**
*on their own behalf and on behalf of others
similarly-situated*

represented by  **Brian Klosterboer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Adriana Cecilia Pinon**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Gorski**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Daniel Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Petitioner**</u>

**F.G.M**                                    represented by   **Brian Klosterboer**
*on their own behalf and on behalf of others*                (See above for address)
*similarly-situated*                                          *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Admitted/In Good Standing*

                                                             **Adriana Cecilia Pinon**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Not Admitted*

                                                             **Ashley Gorski**
                                                             (See above for address)
                                                             *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Respondent**

**Donald J. Trump**
*in his official capacity as President of the*
*United States*

represented by  **Nancy Naseem Safavi**
Department of Justice - Civil
Office of Immigration Litigation, Appellate
Section
PO Box 878, Ben Franklin Station
Washington, DC 20044
202-514-9875
Email: nancy.safavi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
US Attorney's Office
1205 Texas Ave
7th Floor
Lubbock, TX 79401
806-472-7397
Fax: 806-472-7394
Email: ann.haag@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
United States Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, TX 75242
214-659-8645
Fax: 214-659-8811
Email: george.padis@usdoj.gov
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Pamela Bondi**
*Attorney General of the United States, in*
*her official capacity*

represented by  **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

| | | |
|---|---|---|
| **Kristi Noem**<br>*Secretary of the U.S. Department of*<br>*Homeland Security, in her official capacity* | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **U.S. Department of Homeland Security** | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **Todd Lyons**<br>*Acting Director of the Director of U.S.*<br>*Immigration and Customs Enforcement, in*<br>*his official capacity* | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

**U.S. Immigration and Customs Enforcement**

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Marco Rubio**
*Secretary of State, in his official capacity*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**U.S. State Department**

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

represented by

**Josh Johnson**
*in his official capacity as acting Dallas
Field Office Director for U.S. Immigration
and Customs Enforcement;*

**Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Marcello Villegas**
*in his official capacity as the Facility
Administrator of the Bluebonnet Detention
Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Phillip Valdez**
*in his official capacity as Facility
Administrator of the Eden Detention Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

represented by

**Jimmy Johnson**
*in his/her official capacity as Facility*
*Administrator of the Prairieland Detention*
*Center*

**Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Judith Bennett**
*in her official capacity as Warden of the*
*Rolling Plains Detention Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

V.

**Movant**

**AARP**
*Party and atty are active (atty has been*
*terminated to restrict access to sealed*
*filings)*
*TERMINATED: 04/22/2025*

represented by **Devanshi Somaya**
Jackson Walker LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201
214-953-6000
Fax: 214-953-5822
Email: dsomaya@jw.com
*TERMINATED: 04/19/2025*
*LEAD ATTORNEY*
*Bar Status: Admitted/In Good Standing*

**Brian Farkas**
Arent Fox Schiff LLP
1301 Avenue of the Americas
42nd Floor

New York, NY 10019
917-573-0089
Email: brian.farkas@afslaw.com
*TERMINATED: 04/19/2025*
*Bar Status: Not Admitted*

**Jennifer S Freel**
Jackson Walker
100 Congress Ave.
Suite 1100
Austin, TX 78701
512-236-2330
Email: jfreel@jw.com
*TERMINATED: 04/19/2025*
*Bar Status: Admitted/In Good Standing*

**Amicus**

**Professor Amici**                        represented by    **Anne Marie Johnson**
*Party and atty are active (atty has been*                    Tillotson Johnson & Patton
*terminated to restrict access to sealed*                     1201 Main Street
*filings)*                                                    Suite 1300
*TERMINATED: 05/13/2025*                                      Dallas, TX 75202
                                                              214-382-3047
                                                              Fax: 214-292-6564
                                                              Email: ajohnson@tillotsonlaw.com
                                                              *TERMINATED: 05/13/2025*
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Bar Status: Admitted/In Good Standing*

                                                              **Lee Kovarsky**
                                                              Bryant Smith Chair in Law
                                                              The University of Texas School of Law
                                                              727 E. Dean Keeton Street
                                                              Austin, TX 78705
                                                              512-232-1504
                                                              *TERMINATED: 05/13/2025*
                                                              *Bar Status: Not Admitted*

                                                              **Stephani Alesha Michel**
                                                              Tillotson Johnson & Patton
                                                              1201 Main Street
                                                              Suite 1300
                                                              Dallas, TX 75202
                                                              713-250-5031
                                                              Email: smichel@tillotsonlaw.com
                                                              *TERMINATED: 05/13/2025*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|------------|---|-------------|

| | | |
|---|---|---|
| 04/16/2025 | 1 | PETITION for Writ of Habeas Corpus filed by W.M.M., A.A.R.P.. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. (Filing fee $5; receipt number ATXNDC-15425267) Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 2 | MOTION for Temporary Restraining Order filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 Memorandum of Law In Support of Temporary Restraining Order, # 2 Declaration(s) of Victoria Blakeborough, # 3 Declaration(s) of Kathryn D'Adamo, # 4 Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 3 | MOTION to Certify Class filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 Memorandum of Law In Support of Class Certification, # 2 Declaration(s) of Daniel Galindo, # 3 Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 4 | MOTION To Proceed Under Pseudonyms filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 Memorandum of Law In Support to Proceed Under Pseudonyms, # 2 Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 5 | MOTION For Leave To Appear Without Local Counsel filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 Memorandum of Law In Support of Leave to Appear Without Local Counsel, # 2 Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 6 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by A.A.R.P., W.M.M.. (Clerk QC note: No affiliate entered in ECF). (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 7 | New Case Notes: A filing fee has been paid. (skh) (Entered: 04/16/2025) |
| 04/16/2025 | 8 | ORDER. To enable the Court to adequately consider any argument the government has, the petitioners are ORDERED to, by no later than 11:30 a.m. CT on April 16, 2025, either: (1) File a brief explaining why the petitioners believe an exception has been met to the notice required under Rule 65, if the petitioners wish to proceed without notice to the defendants; or (2) Provide the Acting United States Attorney for the Northern District of Texas, Chad Meacham, a copy of their habeas petition (Dkt. No. 1 ), motion for a temporary restraining order (Dkt. No. 2 ), motion to certify a class dkt. No. 3 ), and this Order. The petitioners must also file, as soon as possible after serving the government, a notice on the docket in this case informing the Court that they have provided these pleadings and documents as ordered. The government must file its response to the petitioners' motion for a temporary restraining order by no later than 4:00 p.m. CT on April 16, 2025. See Order for additional instruction. (Ordered by Judge James Wesley Hendrix on 4/16/2025) (skh) (Entered: 04/16/2025) |
| 04/16/2025 | 9 | ORDER. Before the Court is the petitioners' motion to proceed under pseudonyms. Dkt. No. 4 . Given the sensitive and personal information about their immigration |

| | | |
|---|---|---|
| | | status and histories in this case, the Court grants the motion. The petitioners may proceed under the pseudonyms A.A.R.P. and W.M.M. (Ordered by Judge James Wesley Hendrix on 4/16/2025) (skh) (Entered: 04/16/2025) |
| 04/16/2025 | 10 | ELECTRONIC ORDER granting 5 Motion for Leave to Appear Without Local Counsel (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 11 | NOTICE of *Service* filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 12 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Ashley Harris (Filing fee $100; Receipt number ATXNDC-15427035) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 13 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Charelle Lett (Filing fee $100; Receipt number ATXNDC-15427061) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 14 | ELECTRONIC ORDER granting 12 Application for Admission Pro Hac Vice of Ashley Harris. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 15 | ELECTRONIC ORDER granting 13 Application for Admission Pro Hac Vice of Charelle Lett. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 16 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Thomas Buser-Clancy (Filing fee $100; Receipt number ATXNDC-15427559) filed by A.A.R.P. (Klosterboer, Brian) (Main Document 16 replaced with flattend version on 4/16/2025) (skh). . (Entered: 04/16/2025) |
| 04/16/2025 | 17 | ELECTRONIC ORDER granting 16 Application for Admission Pro Hac Vice of Thomas Buser-Clancy. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 18 | NOTICE of Attorney Appearance by George M Padis-DOJ on behalf of Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (Filer confirms contact info in ECF is current.) (Padis-DOJ, George) (Entered: 04/16/2025) |
| 04/16/2025 | 19 | RESPONSE filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re: 3 MOTION to Certify Class , 2 MOTION for Temporary Restraining Order (Padis-DOJ, George) (Entered: 04/16/2025) |
| 04/16/2025 | 20 | |

| | | |
|---|---|---|
| | | NOTICE of Attorney Appearance by Ann Cruce-Haag-DOJ on behalf of Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez. (Filer confirms contact info in ECF is current.) (Cruce-Haag-DOJ, Ann) (Entered: 04/16/2025) |
| 04/16/2025 | 21 | Appendix in Support filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re 19 Response/Objection, (Padis-DOJ, George) (Entered: 04/16/2025) |
| 04/16/2025 | 22 | REPLY filed by A.A.R.P. re: 2 MOTION for Temporary Restraining Order (Attachments: # 1 Declaration(s) Attorney Declaration) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 23 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15429208) filed by A.A.R.P., W.M.M. (Attachments: # 1 Proposed Order) (Gelernt, Lee) (Entered: 04/16/2025) |
| 04/16/2025 | 24 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15429212) filed by A.A.R.P., W.M.M. (Attachments: # 1 Proposed Order)Attorney Daniel Galindo added to party A.A.R.P.(pty:pet), Attorney Daniel Galindo added to party W.M.M.(pty:pet) (Galindo, Daniel) (Entered: 04/16/2025) |
| 04/17/2025 | 25 | ELECTRONIC ORDER granting 23 Application for Admission Pro Hac Vice of Lee Gelernt. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/17/2025 | 26 | ELECTRONIC ORDER granting 24 Application for Admission Pro Hac Vice of Daniel Galindo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/17/2025 | 27 | ORDER denying Motion for Temporary Restraining Order (Dkt. No. 2 ). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (skh) (Entered: 04/17/2025) |
| 04/17/2025 | 28 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Savannah Kumar (Filing fee $100; Receipt number ATXNDC-15432874) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/17/2025) |
| 04/17/2025 | 29 | ELECTRONIC ORDER: The parties are admonished not to seek ex parte communications with the judge in this pending matter. To the extent either party seeks emergency relief, it may file a motion to do so. If an emergency motion is filed, the opposing party shall have 24 hours to file a response. (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/18/2025 | 30 | Emergency MOTION for Temporary Restraining Order filed by A.A.R.P., W.M.M. (Attachments: # 1 Exhibit(s) Declaration of Karene Brown, # 2 Exhibit(s) Declaration of Michelle Brane, # 3 Exhibit(s) Declaration of Travis John Collins, # 4 Exhibit(s) Declaration of Kevin Siegel) (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 31 | |

| | | |
|---|---|---|
| | | ***VACATED PER ORDER - DOC. NO. 41*** ORDER. Before the Court is the petitioners' motion for class certification and appointment of class counsel (Dkt. No. 3 ). The Court orders the respondents to respond to the motion by no later than Wednesday, April 23, 2025. The Court further orders the petitioners to file their reply by no later than Friday, April 25, 2025. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) Modified on 4/18/2025 (bdg). (Entered: 04/18/2025) |
| 04/18/2025 | 32 | NOTICE of Attorney Appearance by Nancy Naseem Safavi on behalf of Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (Filer confirms contact info in ECF is current.) (Safavi, Nancy) (Entered: 04/18/2025) |
| 04/18/2025 | 33 | ORDER. Before the Court is the petitioners' renewed emergency motion for a temporary restraining order. Dkt. No. 30 . The motion states that the petitioners move to add F.G.M.[] as a named plaintiff. *Id.* at 3. The request to add F.G.M. as a named plaintiff is denied without prejudice for failure to comply with Federal Rule of Civil Procedure 15. See Order for additional instructions. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 34 | MOTION Emergency Status Conference filed by A.A.R.P., W.M.M. (Attachments: # 1 SMR Notice, # 2 RJRS Notice, # 3 Declaration(s) : Collins, # 4 Declaration(s) : Petty, # 5 Declaration(s) : RJRS) (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 35 | MOTION for Leave to File AMENDED CLASS PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF CERTIFICATION MOTION filed by A.A.R.P., W.M.M., F.G.M. (Attachments: # 1 Amended Habeas Petition, # 2 Amended Motion for Class Certification, # 3 Amended Brief ISO Motion for Class Certification, # 4 Proposed Order). Party F.G.M. added.Attorney Lee Gelernt added to party F.G.M.(pty:pet) (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 36 | NOTICE OF INTERLOCUTORY APPEAL as to 27 Order on Motion for TRO to the Fifth Circuit by A.A.R.P., W.M.M.. Filing fee $605, receipt number ATXNDC-15435368. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 37 | ORDER. Before the Court is the petitioners' unopposed motion for leave to file an amended class petition for writ of habeas corpus and complaint for declaratory and injunctive relief and amended class-certification motion (Dkt. No. 35 ). The motion is granted. The Clerk of Court is directed to file the amended petition and complaint (Dkt. No. 35-1) as a separate docket entry, the amended motion for class certification (Dkt. No. 35-2) as a separate docket entry, and the petitioners' memorandum of law in support of the motion for class certification (Dkt. No. 35-3) as a separate docket entry. The Court denies as moot the petitioners' original motion for class certification (Dkt. No. 3 ). The Court's scheduling deadlines set forth in its scheduling order |

| | | |
|---|---|---|
| | | regarding class certification (Dkt. No. 31 ) remain in effect as applied to the amended motion. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 38 | Amended PETITION for Writ of Habeas Corpus filed by W.M.M., A.A.R.P., F.G.M. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. **Per 37 Order. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 39 | Amended MOTION to Certify Class and Appointment of Class Counsel filed by A.A.R.P., F.G.M., W.M.M. with Brief/Memorandum in Support. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 40 | Brief/Memorandum in Support filed by A.A.R.P., F.G.M, W.M.M. re 39 MOTION to Certify Class. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 41 | ORDER. The Court thus denies the motion for an emergency status conference (Dkt. No. 34 ). Further, and in light of the notice of appeal (Dkt. No. 36 ), the Court vacates its scheduling order regarding the motion for class certification (Dkt. No. 31 ), as reiterated in its subsequent order (Dkt. No. 37 ). The Court further orders that its previous order directing the parties to file responses to emergency motions within 24 hours (Dkt. No. 29 ) no longer applies to the government as to the second motion for an emergency temporary restraining order (Dkt. No. 30 ). (Ordered by Judge James Wesley Hendrix on 4/18/2025) (bdg) (Entered: 04/18/2025) |
| 04/19/2025 | 42 | Unopposed MOTION to Intervene *for the Limited Purpose of Seeking Amendment to the Order Granting the Pseudonym Motion* filed by A.A.R.P. (Attachments: # 1 Proposed Order)Attorney Devanshi Somaya added to party A.A.R.P.(pty:pet) (Somaya, Devanshi) (Entered: 04/19/2025) |
| 04/21/2025 | 43 | JUDGMENT/MANDATE of USCA as to 36 Notice of Appeal, filed by A.A.R.P., W.M.M. Petitioners' opposed motion for a temporary administrative stay and an injunction pending appeal is DENIED as premature. The appeal is DISMISSED for lack of subject matter jurisdiction under 28 U.S.C. § 1291(a)(1), for substantially the reasons stated in Judge Ramirez's concurrence. (Attachments: # 1 USCA Letter) (skh) (Entered: 04/21/2025) |
| 04/21/2025 | 44 | ORDER. The Court construes the motion to intervene as an agreement by the existing parties to amend the styling of the case caption. Accordingly, the Court amends its prior order granting the motion to proceed under pseudonyms (dkt. No. 9) and orders that the petitioners are permitted to proceed under the pseudonyms A.R.P., W.M.M., and F.G.M. In addition, the Court orders that this case will hereafter proceed under the case caption W.M.M., et al. v. Donald J. Trump, et. al The motion to intervene by the AARP (dkt. No. 42) is denied as moot. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (skh) (Entered: 04/21/2025) |
| 04/21/2025 | 45 | ORDER. The Court orders the government to respond to the petitioners' amended motion for certification of a class and appointment of class counsel (Dkt. No. 39 ) by no later than 5:00 p.m. CT on Friday, April 25, 2025. To the extent possible, the government should explain in its response the notice and the notice process as it applied to petitioner F.G.M. The petitioners may file a reply brief by no later than 5:00 p.m. CT on Tuesday, April 29, 2025. This Order shall be vacated automatically |

| | | if, before either deadline in this Order expires, the Supreme Court grants the petitioners' request to treat their application as a petition for a writ of certiorari and grants certiorari. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (skh) (Entered: 04/21/2025) |
|---|---|---|
| 04/21/2025 | 46 | ELECTRONIC ORDER granting 28 Application for Admission Pro Hac Vice of Savannah Kumar. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/21/2025) (chmb) (Entered: 04/21/2025) |
| 04/21/2025 | 47 | ORDER. As the Court has mentioned, see Dkt. No. 41 at 2, it received an ex parte communication from an attorney representing the petitioners on the evening of April 17, 2025. Consistent with the Code of Conduct for Federal Judges and relevant case law regarding ex parte communications, the Court enters this Order to provide all parties with the contents of the ex parte communication that the Court received. Should any of the parties believe that a response is necessary, they may move for leave to respond. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (Attachments: # 1 TRANSCRIPTION FROM VOICEMAIL- APRIL 17, 2025) (skh) Modified attachment title on 4/21/2025 (skh). (Entered: 04/21/2025) |
| 04/25/2025 | 48 | Unopposed MOTION to Unseal Case filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Proposed Order) (Klosterboer, Brian) (Entered: 04/25/2025) |
| 04/25/2025 | 49 | RESPONSE filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re: 39 MOTION to Certify Class (Attachments: # 1 Declaration(s)) (Safavi, Nancy) (Attachment 1 replaced on 4/28/2025) (amg). Modified on 4/28/2025: per T/C with filer, attachment 1 replaced with redacted version (amg). (Entered: 04/25/2025) |
| 04/28/2025 | 50 | **VACATED per 61 Order** Order Setting Hearing. The Court calls an evidentiary hearing at 3:00 p.m. CT on Thursday, May 1, 2025, at the United States District Court, 1205 Texas Ave., Room C-216, Lubbock, Texas, 79401. (Ordered by Judge James Wesley Hendrix on 4/28/2025) (skh) Modified on 4/30/2025 (skh). (Entered: 04/28/2025) |
| 04/28/2025 | 51 | MOTION for Leave to File Materials Pursuant to the Court April 21 Order filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Declaration(s) Declaration of Daniel Galindo, # 2 Exhibit(s)) (Gelernt, Lee) (Entered: 04/28/2025) |
| 04/28/2025 | 52 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15458459) filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Proposed Order)Attorney My Khanh Ngo added to party A.R.P(pty:pet), Attorney My Khanh Ngo added to party F.G.M(pty:pet), Attorney My Khanh Ngo added to party W.M.M.(pty:pet) (Ngo, My Khanh) (Entered: 04/28/2025) |
| 04/29/2025 | 53 | ORDER. Before the Court is the petitioners' unopposed motion to lift the current viewing restrictions on the docket (dkt. No. 48 ). The Court grants the motion. See Fed. R. Civ. P. 5.2(c). Accordingly, the Court directs the Clerk of Court to lift all viewing restrictions on the docket- i.e., to make all prior filings electronically available to the public. All future filings shall be publicly available unless the Court grants leave to file under seal or in redacted form, other than redactions made pursuant to Federal Rule of Civil Procedure 5.2(a). (Ordered by Judge James Wesley |

| | | |
|---|---|---|
| | | Hendrix on 4/29/2025) (skh) (Entered: 04/29/2025) |
| 04/29/2025 | | Nature of suit code changed to No. 530, "Habeas Corpus," thereby lifting the viewing restrictions on future filings in this docket and all previously sealed filings unsealed per 53 Order. (skh) (Entered: 04/29/2025) |
| 04/29/2025 | 54 | ELECTRONIC ORDER granting 52 Application for Admission Pro Hac Vice of My Khanh Ngo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/29/2025) (chmb) (Entered: 04/29/2025) |
| 04/29/2025 | 55 | REPLY filed by A.R.P, F.G.M, W.M.M. re: 39 Amended MOTION to Certify Class (Attachments: # 1 Declaration(s) Declaration of Assistant Field Office Director Carlos Cisneros, # 2 Declaration(s) Declaration of Sarah Corning, # 3 Declaration(s) Declaration of F.G.M, # 4 Declaration(s) Declaration of Karene Brown) (Klosterboer, Brian) Modified on 4/30/2025: per T/C with filer, corrected link to proper motion (amg). (Entered: 04/29/2025) |
| 04/30/2025 | 56 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15462615 filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Proposed Order) (Toomey, Patrick) (Entered: 04/30/2025) |
| 04/30/2025 | 57 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15463038 filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Proposed Order) (Gorski, Ashley) (Entered: 04/30/2025) |
| 04/30/2025 | 58 | ELECTRONIC ORDER granting 56 Application for Admission Pro Hac Vice of Patrick Toomey. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/30/2025) (chmb) (Entered: 04/30/2025) |
| 04/30/2025 | 59 | ELECTRONIC ORDER granting 57 Application for Admission Pro Hac Vice of Ashley Gorski. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/30/2025) (chmb) (Entered: 04/30/2025) |
| 04/30/2025 | 60 | STIPULATION by A.R.P, F.G.M, W.M.M.. (Gelernt, Lee) (Entered: 04/30/2025) |
| 04/30/2025 | 61 | ORDER. The Court agrees with the parties that a hearing is no longer necessary. The Court therefore vacates its previous order setting a hearing (Dkt. No. 50 ). No hearing will take place tomorrow. (Ordered by Judge James Wesley Hendrix on 4/30/2025) (skh) (Entered: 04/30/2025) |
| 05/07/2025 | 62 | Request for Clerk to issue Summons filed by W.M.M.. (Klosterboer, Brian) (Entered: 05/07/2025) |
| 05/07/2025 | 63 | Summons Issued as to Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (skh) (Entered: 05/07/2025) |
| 05/08/2025 | 64 | ORDER. Before the Court is the petitioners' motion for leave to file materials in response to the Court's previous order regarding ex parte communications (dkt. No. |

| | | |
|---|---|---|
| | | 47 ). Dkt. No. 51 . The motion is granted. The Clerk of Court is instructed to file the response(dkt. No. 51-1) and its attachment (dkt. No. 5l-2) as a separate docket entry. (Ordered by Judge James Wesley Hendrix on 5/8/2025) (skh) (Entered: 05/08/2025) |
| 05/08/2025 | 65 | RESPONSE filed by A.R.P, F.G.M, W.M.M. re: 47 Order. **Clerk's Note: Docketed per instruction at 64 Order. (Attachments: # 1 Exhibit(s)) (skh) (Entered: 05/08/2025) |
| 05/08/2025 | 66 | Unopposed MOTION to Withdraw as Attorney filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas (Padis-DOJ, George) (Entered: 05/08/2025) |
| 05/09/2025 | 67 | Order denying Amended Motion to Certify Class and Appointment of Class Counsel. Dkt. No. 39 . (Ordered by Judge James Wesley Hendrix on 5/9/2025) (mms) (Entered: 05/09/2025) |
| 05/13/2025 | 68 | MOTION for Reconsideration re 67 Order on Motion to Certify Class *Or, In The Alternative, Certify A Class Under Rule 23(c)(4)* filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 Memorandum in Support of Petitioners-Plaintiffs' Mxn for Reconsideration, # 2 Exhibit(s) A LAS Declaration, # 3 Exhibit(s) B Oscar Declaration)(Gelernt, Lee) Modified to remove AARP as a filer on 5/13/2025 (skh). (Entered: 05/13/2025) |
| 05/13/2025 | 69 | MOTION for Leave to File Amicus Brief of Professor Amici filed by Professor Amici (Attachments: # 1 Proposed Order)Attorney Anne Marie Johnson added to party Professor Amici(pty:am) (Johnson, Anne) (Entered: 05/13/2025) |
| 05/13/2025 | 70 | Brief/Memorandum in Support filed by Professor Amici re 68 MOTION for Reconsideration re 67 Order on Motion to Certify Class *Or, In The Alternative, Certify A Class Under Rule 23(c)(4)*, 69 MOTION for Leave to File Amicus Brief of Professor Amici (Johnson, Anne) (Entered: 05/13/2025) |
| 05/15/2025 | 71 | ORDER granting 66 Motion to Withdraw as Attorney. Attorney George M Padis-DOJ terminated. (Ordered by Judge James Wesley Hendrix on 5/15/2025) (amg) (Entered: 05/15/2025) |
| 05/15/2025 | 72 | ORDER. Before the Court is a motion for leave to file an amicus-curiae brief. Dkt. No. 69 . The motion (Dkt. No. 69) is granted. The amicus brief, Dkt. No. 70 , is permitted. (Ordered by Judge James Wesley Hendrix on 5/15/2025) (amg) (Entered: 05/15/2025) |
| 05/20/2025 | 73 | ORDER. The Court is advised by the Clerk of Court that Adriana Pinon (Counsel), whose name appears on a pleading in this case, is not a member of the Bar of the Northern District of Texas. Accordingly, within 14 days of the date of this Order, Counsel shall either (1) provide satisfactory documentation of Bar membership to the Court and Clerk of Court or (2) apply for membership in the Bar of this Court or for admission pro hac vice for this case. (Ordered by Judge James Wesley Hendrix on 5/20/2025) (skh) (Entered: 05/20/2025) |
| 05/21/2025 | 74 | ORDER of USCA as to 36 Notice of Appeal filed by A.R.P, W.M.M. Last Friday, the Supreme Court vacated the judgment of our court, which had dismissed this appeal for lack of jurisdiction. The Court remanded the case back to us for further proceedings, and directed us to proceed "expeditiously." A.A.R.P. v. Trump, 605 U.S. _, _ (2025). Accordingly, this matter is expedited to the next available randomly designated regular oral argument panel. (Attachments: # 1 USCA Letter) (skh) |

| | | |
|---|---|---|
| | | Modified filing date on 5/21/2025 (skh). (Entered: 05/21/2025) |
| 05/23/2025 | 75 | ORDER. Because the grant of certiorari automatically resulted in vacatur of the Court's order denying class certification (Dkt. No. 67 ), and the Fifth Circuit now has jurisdiction over the issue of class certification, the Court denies as moot the motion for reconsideration (Dkt. No. 68 ). (Ordered by Judge James Wesley Hendrix on 5/23/2025) (skh) (Entered: 05/23/2025) |
| 06/02/2025 | | Record on Appeal for USCA5 25-10534 (related to 36 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (skh) (Entered: 06/02/2025) |
| 06/03/2025 | 76 (p.726) | ORDER of USCA as to 36 Notice of Appeal filed by A.R.P, W.M.M. IT IS ORDERED that the joint stipulation filed by the parties to supplement the record on appeal with relevant documents from other Alien Enemies Act cases is GRANTED. IT IS FURTHER ORDERED that the Appellants' unopposed motion for leave to file record excerpts in excess pages, not to exceed 59 pages is GRANTED. (Attachments: # 1 USCA Motion to Supplement, # 2 Supplemental Forms, # 3 USCA Letter) (skh) (Entered: 06/03/2025) |

**TAB 2**

APPEAL

# U.S. District Court
# Northern District of Texas (Abilene)
# CIVIL DOCKET FOR CASE #: 1:25-cv-00059-H

W.M.M., et al. v. Donald J. Trump, et. al
Assigned to: Judge James Wesley Hendrix
Case in other court:  U.S. Supreme Court, 24-01177
Cause: 28:2241 Petition for Writ of Habeas Corpus

Date Filed: 04/16/2025
Jury Demand: None
Nature of Suit: 530 Prisoner Pet/Habeas
Corpus: General
Jurisdiction: U.S. Government Defendant

**Petitioner**

**A.R.P**                                     represented by **Brian Klosterboer**
ACLU of Texas
PO Box 8306
Houston, TX 77288
713-942-8146 x1035
Fax: 713-942-8966
Email: bklosterboer@aclutx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Adriana Cecilia Pinon**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: apinon@aclutx.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Gorski**
ACLU-American Civil Liberties Union
Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-284-7305
Email: agorski@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: aharris@aclutx.org

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
ACLU Foundation of Texas
PO Box 8306
Houston, TX 77288
713-942-8146
Email: clett@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Galindo**
American Civil Liberties Union Foundation
125 Broad Street
Ste 18th Floor
New York, NY 10004
646-905-8907
Email: dgalindo@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2616
Fax: 212-549-2654
Email: lgelernt@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
American Civil Liberties Union Foundation
425 California Street
San Francisco, CA 94104
718-483-5885
Email: mngo@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
ACLU-American Civil Liberties Union
Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7816

Email: ptoomey@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
1018 Preston Road
Houston, TX 77002
713-942-8146
Fax: 713-942-8966
Email: skumar@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: tbuser-clancy@aclutx.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Petitioner**

**W.M.M.**
*on their own behalf and on behalf of others similarly-situated*

represented by **Brian Klosterboer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Adriana Cecilia Pinon**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Gorski**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Daniel Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Petitioner**</u>

**F.G.M**                          represented by   **Brian Klosterboer**
*on their own behalf and on behalf of others*      (See above for address)
*similarly-situated*                               *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Bar Status: Admitted/In Good Standing*

                                                   **Adriana Cecilia Pinon**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*
                                                   *Bar Status: Not Admitted*

                                                   **Ashley Gorski**
                                                   (See above for address)
                                                   *PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ashley Alcantara Harris**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Charelle Lett**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lee Gelernt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**My Khanh Ngo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Patrick Toomey**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Savannah Kumar**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Thomas Paul Buser-Clancy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Respondent**

**Donald J. Trump**
*in his official capacity as President of the*
*United States*

represented by **Nancy Naseem Safavi**
Department of Justice - Civil
Office of Immigration Litigation, Appellate
Section
PO Box 878, Ben Franklin Station
Washington, DC 20044
202-514-9875
Email: nancy.safavi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
US Attorney's Office
1205 Texas Ave
7th Floor
Lubbock, TX 79401
806-472-7397
Fax: 806-472-7394
Email: ann.haag@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
United States Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, TX 75242
214-659-8645
Fax: 214-659-8811
Email: george.padis@usdoj.gov
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Pamela Bondi**
*Attorney General of the United States, in*
*her official capacity*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

| | | |
|---|---|---|
| **Kristi Noem**<br>*Secretary of the U.S. Department of*<br>*Homeland Security, in her official capacity* | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **U.S. Department of Homeland Security** | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **Todd Lyons**<br>*Acting Director of the Director of U.S.*<br>*Immigration and Customs Enforcement, in*<br>*his official capacity* | represented by | **Nancy Naseem Safavi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ**<br>(See above for address)<br>*TERMINATED: 05/15/2025*<br>*Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **U.S. Immigration and Customs Enforcement** | represented by | **Nancy Naseem Safavi** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ** (See above for address) *ATTORNEY TO BE NOTICED* *Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ** (See above for address) *TERMINATED: 05/15/2025* *Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **Marco Rubio** *Secretary of State, in his official capacity* | represented by | **Nancy Naseem Safavi** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ** (See above for address) *ATTORNEY TO BE NOTICED* *Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ** (See above for address) *TERMINATED: 05/15/2025* *Bar Status: Admitted/In Good Standing* |

**Respondent**

| | | |
|---|---|---|
| **U.S. State Department** | represented by | **Nancy Naseem Safavi** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* *Bar Status: Not Admitted* |
| | | **Ann Cruce-Haag-DOJ** (See above for address) *ATTORNEY TO BE NOTICED* *Bar Status: Admitted/In Good Standing* |
| | | **George M Padis-DOJ** (See above for address) *TERMINATED: 05/15/2025* *Bar Status: Admitted/In Good Standing* |

**Respondent**

represented by

**Josh Johnson**
*in his official capacity as acting Dallas*
*Field Office Director for U.S. Immigration*
*and Customs Enforcement;*

**Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Marcello Villegas**
*in his official capacity as the Facility*
*Administrator of the Bluebonnet Detention*
*Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Phillip Valdez**
*in his official capacity as Facility*
*Administrator of the Eden Detention Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

represented by

25-10534.9

**Jimmy Johnson**
*in his/her official capacity as Facility*
*Administrator of the Prairieland Detention*
*Center*

**Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

**Respondent**

**Judith Bennett**
*in her official capacity as Warden of the*
*Rolling Plains Detention Center*

represented by **Nancy Naseem Safavi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ann Cruce-Haag-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**George M Padis-DOJ**
(See above for address)
*TERMINATED: 05/15/2025*
*Bar Status: Admitted/In Good Standing*

V.

**Movant**

**AARP**
*Party and atty are active (atty has been*
*terminated to restrict access to sealed*
*filings)*
*TERMINATED: 04/22/2025*

represented by **Devanshi Somaya**
Jackson Walker LLP
2323 Ross Avenue
Suite 600
Dallas, TX 75201
214-953-6000
Fax: 214-953-5822
Email: dsomaya@jw.com
*TERMINATED: 04/19/2025*
*LEAD ATTORNEY*
*Bar Status: Admitted/In Good Standing*

**Brian Farkas**
Arent Fox Schiff LLP
1301 Avenue of the Americas
42nd Floor

New York, NY 10019
917-573-0089
Email: brian.farkas@afslaw.com
*TERMINATED: 04/19/2025*
*Bar Status: Not Admitted*

**Jennifer S Freel**
Jackson Walker
100 Congress Ave.
Suite 1100
Austin, TX 78701
512-236-2330
Email: jfreel@jw.com
*TERMINATED: 04/19/2025*
*Bar Status: Admitted/In Good Standing*

**Amicus**

**Professor Amici**
*Party and atty are active (atty has been terminated to restrict access to sealed filings)*
*TERMINATED: 05/13/2025*

represented by  **Anne Marie Johnson**
Tillotson Johnson & Patton
1201 Main Street
Suite 1300
Dallas, TX 75202
214-382-3047
Fax: 214-292-6564
Email: ajohnson@tillotsonlaw.com
*TERMINATED: 05/13/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Lee Kovarsky**
Bryant Smith Chair in Law
The University of Texas School of Law
727 E. Dean Keeton Street
Austin, TX 78705
512-232-1504
*TERMINATED: 05/13/2025*
*Bar Status: Not Admitted*

**Stephani Alesha Michel**
Tillotson Johnson & Patton
1201 Main Street
Suite 1300
Dallas, TX 75202
713-250-5031
Email: smichel@tillotsonlaw.com
*TERMINATED: 05/13/2025*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| | | |
|---|---|---|
| 04/16/2025 | 1 (p.21) | PETITION for Writ of Habeas Corpus filed by W.M.M., A.A.R.P.. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. (Filing fee $5; receipt number ATXNDC-15425267) Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.21) Cover Sheet) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 2 (p.46) | MOTION for Temporary Restraining Order filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Memorandum of Law In Support of Temporary Restraining Order, # 2 (p.46) Declaration(s) of Victoria Blakeborough, # 3 (p.84) Declaration(s) of Kathryn D'Adamo, # 4 (p.110) Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 3 (p.84) | MOTION to Certify Class filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Memorandum of Law In Support of Class Certification, # 2 (p.46) Declaration(s) of Daniel Galindo, # 3 (p.84) Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 4 (p.110) | MOTION To Proceed Under Pseudonyms filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Memorandum of Law In Support to Proceed Under Pseudonyms, # 2 (p.46) Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 5 (p.124) | MOTION For Leave To Appear Without Local Counsel filed by A.A.R.P., W.M.M. with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Memorandum of Law In Support of Leave to Appear Without Local Counsel, # 2 (p.46) Proposed Order) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 6 (p.132) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by A.A.R.P., W.M.M.. (Clerk QC note: No affiliate entered in ECF). (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 7 | New Case Notes: A filing fee has been paid. (skh) (Entered: 04/16/2025) |
| 04/16/2025 | 8 (p.134) | ORDER. To enable the Court to adequately consider any argument the government has, the petitioners are ORDERED to, by no later than 11:30 a.m. CT on April 16, 2025, either: (1) File a brief explaining why the petitioners believe an exception has been met to the notice required under Rule 65, if the petitioners wish to proceed without notice to the defendants; or (2) Provide the Acting United States Attorney for the Northern District of Texas, Chad Meacham, a copy of their habeas petition (Dkt. No. 1 (p.21) ), motion for a temporary restraining order (Dkt. No. 2 (p.46) ), motion to certify a class dkt. No. 3 (p.84) ), and this Order. The petitioners must also file, as soon as possible after serving the government, a notice on the docket in this case informing the Court that they have provided these pleadings and documents as ordered. The government must file its response to the petitioners' motion for a temporary restraining order by no later than 4:00 p.m. CT on April 16, 2025. See Order for additional instruction. (Ordered by Judge James Wesley Hendrix on 4/16/2025) (skh) (Entered: 04/16/2025) |
| 04/16/2025 | | |

| | 9 (p.137) | ORDER. Before the Court is the petitioners' motion to proceed under pseudonyms. Dkt. No. 4 (p.110) . Given the sensitive and personal information about their immigration status and histories in this case, the Court grants the motion. The petitioners may proceed under the pseudonyms A.A.R.P. and W.M.M. (Ordered by Judge James Wesley Hendrix on 4/16/2025) (skh) (Entered: 04/16/2025) |
|---|---|---|
| 04/16/2025 | 10 | ELECTRONIC ORDER granting 5 (p.124) Motion for Leave to Appear Without Local Counsel (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 11 (p.138) | NOTICE of *Service* filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 12 (p.139) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Ashley Harris (Filing fee $100; Receipt number ATXNDC-15427035) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 13 (p.143) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Charelle Lett (Filing fee $100; Receipt number ATXNDC-15427061) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | 14 | ELECTRONIC ORDER granting 12 (p.139) Application for Admission Pro Hac Vice of Ashley Harris. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 15 | ELECTRONIC ORDER granting 13 (p.143) Application for Admission Pro Hac Vice of Charelle Lett. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 16 (p.147) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Thomas Buser-Clancy (Filing fee $100; Receipt number ATXNDC-15427559) filed by A.A.R.P. (Klosterboer, Brian) (Main Document 16 replaced with flattend version on 4/16/2025) (skh). . (Entered: 04/16/2025) |
| 04/16/2025 | 17 | ELECTRONIC ORDER granting 16 (p.147) Application for Admission Pro Hac Vice of Thomas Buser-Clancy. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/16/2025) (chmb) (Entered: 04/16/2025) |
| 04/16/2025 | 18 (p.151) | NOTICE of Attorney Appearance by George M Padis-DOJ on behalf of Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (Filer confirms contact info in ECF is current.) (Padis-DOJ, George) (Entered: 04/16/2025) |
| 04/16/2025 | 19 (p.153) | RESPONSE filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re: 3 (p.84) MOTION to Certify Class , 2 (p.46) MOTION for Temporary Restraining Order (Padis-DOJ, George) (Entered: |

| | | |
|---|---|---|
| | | 04/16/2025) |
| 04/16/2025 | **20** (p.189) | NOTICE of Attorney Appearance by Ann Cruce-Haag-DOJ on behalf of Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez. (Filer confirms contact info in ECF is current.) (Cruce-Haag-DOJ, Ann) (Entered: 04/16/2025) |
| 04/16/2025 | **21** (p.191) | Appendix in Support filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re 19 (p.153) Response/Objection, (Padis-DOJ, George) (Entered: 04/16/2025) |
| 04/16/2025 | **22** (p.226) | REPLY filed by A.A.R.P. re: 2 (p.46) MOTION for Temporary Restraining Order (Attachments: # 1 (p.21) Declaration(s) Attorney Declaration) (Klosterboer, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | **23** (p.235) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15429208) filed by A.A.R.P., W.M.M. (Attachments: # 1 (p.21) Proposed Order) (Gelernt, Lee) (Entered: 04/16/2025) |
| 04/16/2025 | **24** (p.243) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15429212) filed by A.A.R.P., W.M.M. (Attachments: # 1 (p.21) Proposed Order)Attorney Daniel Galindo added to party A.A.R.P.(pty:pet), Attorney Daniel Galindo added to party W.M.M.(pty:pet) (Galindo, Daniel) (Entered: 04/16/2025) |
| 04/17/2025 | 25 | ELECTRONIC ORDER granting 23 (p.235) Application for Admission Pro Hac Vice of Lee Gelernt. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/17/2025 | 26 | ELECTRONIC ORDER granting 24 (p.243) Application for Admission Pro Hac Vice of Daniel Galindo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/17/2025 | **27** (p.250) | ORDER denying Motion for Temporary Restraining Order (Dkt. No. 2 (p.46) ). (Ordered by Judge James Wesley Hendrix on 4/17/2025) (skh) (Entered: 04/17/2025) |
| 04/17/2025 | **28** (p.260) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Savannah Kumar (Filing fee $100; Receipt number ATXNDC-15432874) filed by A.A.R.P. (Klosterboer, Brian) (Entered: 04/17/2025) |
| 04/17/2025 | 29 | ELECTRONIC ORDER: The parties are admonished not to seek ex parte communications with the judge in this pending matter. To the extent either party seeks emergency relief, it may file a motion to do so. If an emergency motion is filed, the opposing party shall have 24 hours to file a response. (Ordered by Judge James Wesley Hendrix on 4/17/2025) (chmb) (Entered: 04/17/2025) |
| 04/18/2025 | **30** (p.264) | Emergency MOTION for Temporary Restraining Order filed by A.A.R.P., W.M.M. (Attachments: # 1 (p.21) Exhibit(s) Declaration of Karene Brown, # 2 (p.46) Exhibit(s) Declaration of Michelle Brane, # 3 (p.84) Exhibit(s) Declaration of Travis John Collins, # 4 (p.110) Exhibit(s) Declaration of Kevin Siegel) (Gelernt, Lee) |

| | | (Entered: 04/18/2025) |
|---|---|---|
| 04/18/2025 | 31 (p.276) | ***VACATED PER ORDER - DOC. NO. 41*** ORDER. Before the Court is the petitioners' motion for class certification and appointment of class counsel (Dkt. No. 3 (p.84) ). The Court orders the respondents to respond to the motion by no later than Wednesday, April 23, 2025. The Court further orders the petitioners to file their reply by no later than Friday, April 25, 2025. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) Modified on 4/18/2025 (bdg). (Entered: 04/18/2025) |
| 04/18/2025 | 32 (p.277) | NOTICE of Attorney Appearance by Nancy Naseem Safavi on behalf of Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (Filer confirms contact info in ECF is current.) (Safavi, Nancy) (Entered: 04/18/2025) |
| 04/18/2025 | 33 (p.278) | ORDER. Before the Court is the petitioners' renewed emergency motion for a temporary restraining order. Dkt. No. 30 (p.264) . The motion states that the petitioners move to add F.G.M.[] as a named plaintiff. *Id.* at 3. The request to add F.G.M. as a named plaintiff is denied without prejudice for failure to comply with Federal Rule of Civil Procedure 15. See Order for additional instructions. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 34 (p.280) | MOTION Emergency Status Conference filed by A.A.R.P., W.M.M. (Attachments: # 1 (p.21) SMR Notice, # 2 (p.46) RJRS Notice, # 3 (p.84) Declaration(s) : Collins, # 4 (p.110) Declaration(s) : Petty, # 5 (p.124) Declaration(s) : RJRS) (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 35 (p.291) | MOTION for Leave to File AMENDED CLASS PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF CERTIFICATION MOTION filed by A.A.R.P., W.M.M., F.G.M. (Attachments: # 1 (p.21) Amended Habeas Petition, # 2 (p.46) Amended Motion for Class Certification, # 3 (p.84) Amended Brief ISO Motion for Class Certification, # 4 (p.110) Proposed Order). Party F.G.M. added.Attorney Lee Gelernt added to party F.G.M.(pty:pet) (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 36 (p.339) | NOTICE OF INTERLOCUTORY APPEAL as to 27 (p.250) Order on Motion for TRO to the Fifth Circuit by A.A.R.P., W.M.M.. Filing fee $605, receipt number ATXNDC-15435368. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 37 (p.341) | ORDER. Before the Court is the petitioners' unopposed motion for leave to file an amended class petition for writ of habeas corpus and complaint for declaratory and injunctive relief and amended class-certification motion (Dkt. No. 35 (p.291) ). The motion is granted. The Clerk of Court is directed to file the amended petition and complaint (Dkt. No. 35-1) as a separate docket entry, the amended motion for class certification (Dkt. No. 35-2) as a separate docket entry, and the petitioners' |

| | | |
|---|---|---|
| | | memorandum of law in support of the motion for class certification (Dkt. No. 35-3) as a separate docket entry. The Court denies as moot the petitioners' original motion for class certification (Dkt. No. 3 (p.84) ). The Court's scheduling deadlines set forth in its scheduling order regarding class certification (Dkt. No. 31 (p.276) ) remain in effect as applied to the amended motion. (Ordered by Judge James Wesley Hendrix on 4/18/2025) (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 38 (p.342) | Amended PETITION for Writ of Habeas Corpus filed by W.M.M., A.A.R.P., F.G.M. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. **Per 37 (p.341) Order. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 39 (p.366) | Amended MOTION to Certify Class and Appointment of Class Counsel filed by A.A.R.P., F.G.M., W.M.M. with Brief/Memorandum in Support. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 40 (p.370) | Brief/Memorandum in Support filed by A.A.R.P., F.G.M, W.M.M. re 39 (p.366) MOTION to Certify Class. (amg) (Entered: 04/18/2025) |
| 04/18/2025 | 41 (p.387) | ORDER. The Court thus denies the motion for an emergency status conference (Dkt. No. 34 (p.280) ). Further, and in light of the notice of appeal (Dkt. No. 36 (p.339) ), the Court vacates its scheduling order regarding the motion for class certification (Dkt. No. 31 (p.276) ), as reiterated in its subsequent order (Dkt. No. 37 (p.341) ). The Court further orders that its previous order directing the parties to file responses to emergency motions within 24 hours (Dkt. No. 29 ) no longer applies to the government as to the second motion for an emergency temporary restraining order (Dkt. No. 30 (p.264) ). (Ordered by Judge James Wesley Hendrix on 4/18/2025) (bdg) (Entered: 04/18/2025) |
| 04/19/2025 | 42 (p.392) | Unopposed MOTION to Intervene *for the Limited Purpose of Seeking Amendment to the Order Granting the Pseudonym Motion* filed by A.A.R.P. (Attachments: # 1 (p.21) Proposed Order)Attorney Devanshi Somaya added to party A.A.R.P.(pty:pet) (Somaya, Devanshi) (Entered: 04/19/2025) |
| 04/21/2025 | 43 (p.400) | JUDGMENT/MANDATE of USCA as to 36 (p.339) Notice of Appeal, filed by A.A.R.P., W.M.M.. Petitioners' opposed motion for a temporary administrative stay and an injunction pending appeal is DENIED as premature. The appeal is DISMISSED for lack of subject matter jurisdiction under 28 U.S.C. § 1291(a)(1), for substantially the reasons stated in Judge Ramirez's concurrence. (Attachments: # 1 (p.21) USCA Letter) (skh) (Entered: 04/21/2025) |
| 04/21/2025 | 44 (p.405) | ORDER. The Court construes the motion to intervene as an agreement by the existing parties to amend the styling of the case caption. Accordingly, the Court amends its prior order granting the motion to proceed under pseudonyms (dkt. No. 9) and orders that the petitioners are permitted to proceed under the pseudonyms A.R.P., W.M.M., and F.G.M. In addition, the Court orders that this case will hereafter proceed under the case caption W.M.M., et al. v. Donald J. Trump, et. al The motion to intervene by the AARP (dkt. No. 42) is denied as moot. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (skh) (Entered: 04/21/2025) |
| 04/21/2025 | 45 (p.407) | ORDER. The Court orders the government to respond to the petitioners' amended motion for certification of a class and appointment of class counsel (Dkt. No. 39 |

| | | |
|---|---|---|
| | | (p.366) ) by no later than 5:00 p.m. CT on Friday, April 25, 2025. To the extent possible, the government should explain in its response the notice and the notice process as it applied to petitioner F.G.M. The petitioners may file a reply brief by no later than 5:00 p.m. CT on Tuesday, April 29, 2025. This Order shall be vacated automatically if, before either deadline in this Order expires, the Supreme Court grants the petitioners' request to treat their application as a petition for a writ of certiorari and grants certiorari. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (skh) (Entered: 04/21/2025) |
| 04/21/2025 | 46 | ELECTRONIC ORDER granting 28 (p.260) Application for Admission Pro Hac Vice of Savannah Kumar. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/21/2025) (chmb) (Entered: 04/21/2025) |
| 04/21/2025 | 47 (p.410) | ORDER. As the Court has mentioned, see Dkt. No. 41 (p.387) at 2, it received an ex parte communication from an attorney representing the petitioners on the evening of April 17, 2025. Consistent with the Code of Conduct for Federal Judges and relevant case law regarding ex parte communications, the Court enters this Order to provide all parties with the contents of the ex parte communication that the Court received. Should any of the parties believe that a response is necessary, they may move for leave to respond. (Ordered by Judge James Wesley Hendrix on 4/21/2025) (Attachments: # 1 (p.21) TRANSCRIPTION FROM VOICEMAIL- APRIL 17, 2025) (skh) Modified attachment title on 4/21/2025 (skh). (Entered: 04/21/2025) |
| 04/25/2025 | 48 (p.417) | Unopposed MOTION to Unseal Case filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Proposed Order) (Klosterboer, Brian) (Entered: 04/25/2025) |
| 04/25/2025 | 49 (p.420) | RESPONSE filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas re: 39 (p.366) MOTION to Certify Class (Attachments: # 1 (p.21) Declaration(s)) (Safavi, Nancy) (Attachment 1 replaced on 4/28/2025 (amg). Modified on 4/28/2025: per T/C with filer, attachment 1 replaced with redacted version (amg). (Entered: 04/25/2025) |
| 04/28/2025 | 50 (p.437) | **VACATED per 61 (p.503) Order** Order Setting Hearing. The Court calls an evidentiary hearing at 3:00 p.m. CT on Thursday, May 1, 2025, at the United States District Court, 1205 Texas Ave., Room C-216, Lubbock, Texas, 79401. (Ordered by Judge James Wesley Hendrix on 4/28/2025) (skh) Modified on 4/30/2025 (skh). (Entered: 04/28/2025) |
| 04/28/2025 | 51 (p.440) | MOTION for Leave to File Materials Pursuant to the Court April 21 Order filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Declaration(s) Declaration of Daniel Galindo, # 2 (p.46) Exhibit(s)) (Gelernt, Lee) (Entered: 04/28/2025) |
| 04/28/2025 | 52 (p.449) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15458459) filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Proposed Order)Attorney My Khanh Ngo added to party A.R.P(pty:pet), Attorney My Khanh Ngo added to party F.G.M(pty:pet), Attorney My Khanh Ngo added to party W.M.M.(pty:pet) (Ngo, My Khanh) (Entered: 04/28/2025) |
| 04/29/2025 | 53 (p.455) | ORDER. Before the Court is the petitioners' unopposed motion to lift the current viewing restrictions on the docket (dkt. No. 48 (p.417) ). The Court grants the motion. See Fed. R. Civ. P. 5.2(c). Accordingly, the Court directs the Clerk of Court to lift all |

| | | viewing restrictions on the docket- i.e., to make all prior filings electronically available to the public. All future filings shall be publicly available unless the Court grants leave to file under seal or in redacted form, other than redactions made pursuant to Federal Rule of Civil Procedure 5.2(a). (Ordered by Judge James Wesley Hendrix on 4/29/2025) (skh) (Entered: 04/29/2025) |
|---|---|---|
| 04/29/2025 | | Nature of suit code changed to No. 530, "Habeas Corpus," thereby lifting the viewing restrictions on future filings in this docket and all previously sealed filings unsealed per 53 (p.455) Order. (skh) (Entered: 04/29/2025) |
| 04/29/2025 | 54 | ELECTRONIC ORDER granting 52 (p.449) Application for Admission Pro Hac Vice of My Khanh Ngo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/29/2025) (chmb) (Entered: 04/29/2025) |
| 04/29/2025 | 55 (p.456) | REPLY filed by A.R.P, F.G.M, W.M.M. re: 39 (p.366) Amended MOTION to Certify Class (Attachments: # 1 (p.21) Declaration(s) Declaration of Assistant Field Office Director Carlos Cisneros, # 2 (p.46) Declaration(s) Declaration of Sarah Corning, # 3 (p.84) Declaration(s) Declaration of F.G.M, # 4 (p.110) Declaration(s) Declaration of Karene Brown) (Klosterboer, Brian) Modified on 4/30/2025: per T/C with filer, corrected link to proper motion (amg). (Entered: 04/29/2025) |
| 04/30/2025 | 56 (p.485) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15462615) filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Proposed Order) (Toomey, Patrick) (Entered: 04/30/2025) |
| 04/30/2025 | 57 (p.492) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15463038) filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Proposed Order) (Gorski, Ashley) (Entered: 04/30/2025) |
| 04/30/2025 | 58 | ELECTRONIC ORDER granting 56 (p.485) Application for Admission Pro Hac Vice of Patrick Toomey. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/30/2025) (chmb) (Entered: 04/30/2025) |
| 04/30/2025 | 59 | ELECTRONIC ORDER granting 57 (p.492) Application for Admission Pro Hac Vice of Ashley Gorski. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge James Wesley Hendrix on 4/30/2025) (chmb) (Entered: 04/30/2025) |
| 04/30/2025 | 60 (p.499) | STIPULATION by A.R.P, F.G.M, W.M.M.. (Gelernt, Lee) (Entered: 04/30/2025) |
| 04/30/2025 | 61 (p.503) | ORDER. The Court agrees with the parties that a hearing is no longer necessary. The Court therefore vacates its previous order setting a hearing (Dkt. No. 50 (p.437) ). No hearing will take place tomorrow. (Ordered by Judge James Wesley Hendrix on 4/30/2025) (skh) (Entered: 04/30/2025) |
| 05/07/2025 | 62 (p.504) | Request for Clerk to issue Summons filed by W.M.M.. (Klosterboer, Brian) (Entered: 05/07/2025) |
| 05/07/2025 | 63 (p.530) | Summons Issued as to Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of |

| | | |
|---|---|---|
| | | Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas. (skh) (Entered: 05/07/2025) |
| 05/08/2025 | 64 (p.556) | ORDER. Before the Court is the petitioners' motion for leave to file materials in response to the Court's previous order regarding ex parte communications (dkt. No. 47 (p.410) ). Dkt. No. 51 (p.440) . The motion is granted. The Clerk of Court is instructed to file the response(dkt. No. 51-1) and its attachment (dkt. No. 5l-2) as a separate docket entry. (Ordered by Judge James Wesley Hendrix on 5/8/2025) (skh) (Entered: 05/08/2025) |
| 05/08/2025 | 65 (p.557) | RESPONSE filed by A.R.P, F.G.M, W.M.M. re: 47 (p.410) Order. **Clerk's Note: Docketed per instruction at 64 (p.556) Order. (Attachments: # 1 (p.21) Exhibit(s)) (skh) (Entered: 05/08/2025) |
| 05/08/2025 | 66 (p.563) | Unopposed MOTION to Withdraw as Attorney filed by Judith Bennett, Pamela Bondi, Jimmy Johnson, Josh Johnson, Todd Lyons, Kristi Noem, Marco Rubio, Donald J. Trump, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, U.S. State Department, Phillip Valdez, Marcello Villegas (Padis-DOJ, George) (Entered: 05/08/2025) |
| 05/09/2025 | 67 (p.565) | Order denying Amended Motion to Certify Class and Appointment of Class Counsel. Dkt. No. 39 (p.366) . (Ordered by Judge James Wesley Hendrix on 5/9/2025) (mms) (Entered: 05/09/2025) |
| 05/13/2025 | 68 (p.613) | MOTION for Reconsideration re 67 (p.565) Order on Motion to Certify Class *Or, In The Alternative, Certify A Class Under Rule 23(c)(4)* filed by A.R.P, F.G.M, W.M.M. (Attachments: # 1 (p.21) Memorandum in Support of Petitioners-Plaintiffs' Mxn for Reconsideration, # 2 (p.46) Exhibit(s) A LAS Declaration, # 3 (p.84) Exhibit(s) B Oscar Declaration)(Gelernt, Lee) Modified to remove AARP as a filer on 5/13/2025 (skh). (Entered: 05/13/2025) |
| 05/13/2025 | 69 (p.645) | MOTION for Leave to File Amicus Brief of Professor Amici filed by Professor Amici (Attachments: # 1 (p.21) Proposed Order)Attorney Anne Marie Johnson added to party Professor Amici(pty:am) (Johnson, Anne) (Entered: 05/13/2025) |
| 05/13/2025 | 70 (p.650) | Brief/Memorandum in Support filed by Professor Amici re 68 (p.613) MOTION for Reconsideration re 67 (p.565) Order on Motion to Certify Class *Or, In The Alternative, Certify A Class Under Rule 23(c)(4)*, 69 (p.645) MOTION for Leave to File Amicus Brief of Professor Amici (Johnson, Anne) (Entered: 05/13/2025) |
| 05/15/2025 | 71 (p.671) | ORDER granting 66 (p.563) Motion to Withdraw as Attorney. Attorney George M Padis-DOJ terminated. (Ordered by Judge James Wesley Hendrix on 5/15/2025) (amg) (Entered: 05/15/2025) |
| 05/15/2025 | 72 (p.672) | ORDER. Before the Court is a motion for leave to file an amicus-curiae brief. Dkt. No. 69 (p.645) . The motion (Dkt. No. 69) is granted. The amicus brief, Dkt. No. 70 (p.650) , is permitted. (Ordered by Judge James Wesley Hendrix on 5/15/2025) (amg) (Entered: 05/15/2025) |
| 05/20/2025 | 73 (p.673) | ORDER. The Court is advised by the Clerk of Court that Adriana Pinon (Counsel), whose name appears on a pleading in this case, is not a member of the Bar of the Northern District of Texas. Accordingly, within 14 days of the date of this Order, Counsel shall either (1) provide satisfactory documentation of Bar membership to the Court and Clerk of Court or (2) apply for membership in the Bar of this Court or for admission pro hac vice for this case. (Ordered by Judge James Wesley Hendrix on 5/20/2025) (skh) (Entered: 05/20/2025) |

| 05/21/2025 | 74 (p.674) | ORDER of USCA as to 36 (p.339) Notice of Appeal filed by A.R.P, W.M.M. Last Friday, the Supreme Court vacated the judgment of our court, which had dismissed this appeal for lack of jurisdiction. The Court remanded the case back to us for further proceedings, and directed us to proceed "expeditiously." A.A.R.P. v. Trump, 605 U.S. _, _ (2025). Accordingly, this matter is expedited to the next available randomly designated regular oral argument panel. (Attachments: # 1 (p.21) USCA Letter) (skh) Modified filing date on 5/21/2025 (skh). (Entered: 05/21/2025) |
| --- | --- | --- |
| 05/23/2025 | 75 (p.684) | ORDER. Because the grant of certiorari automatically resulted in vacatur of the Court's order denying class certification (Dkt. No. 67 (p.565) ), and the Fifth Circuit now has jurisdiction over the issue of class certification, the Court denies as moot the motion for reconsideration (Dkt. No. 68 (p.613) ). (Ordered by Judge James Wesley Hendrix on 5/23/2025) (skh) (Entered: 05/23/2025) |

**TAB 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| A.A.R.P., W.M.M., and F.G.M., *et al.*,<br><br>  *Petitioners–Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as<br>President of the United States, *et al.*,<br><br>  *Respondents–Defendants*. | Case No. 1:25-cv-59-H |

## NOTICE OF APPEAL OF TRO AND CLASS CERTIFICATION

PLEASE TAKE NOTICE that Petitioners hereby appeal to the United States Court of Appeal for the Fifth Circuit from the Court's April 17, 2025 Order denying Motion for Temporary Restraining Order (ECF No. 27), as well as the constructive denials of Petitioners' Motions for Class Certification (ECF Nos. 27, 31) and Renewed Motion for Temporary Restraining Order (ECF No. 30). Petitioners intend to file Petitioners' Opposed Emergency Motion for a Temporary Administrative Injunction and an Injunction Pending Appeal or a Writ of Mandamus. Petitioners request immediate transmission of this request to the Fifth Circuit.

Dated: April 18, 2025

Respectfully submitted,

/s/Lee Gelernt
Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org

Brian Klosterboer

Tx Bar No.  24107833
Thomas Buser-Clancy*
TX Bar No. 24078344
Savannah Kumar*
TX Bar No. 24120098
Charelle Lett*
TX Bar No. 24138899
Ashley Harris*
TX Bar No. 24123238
Adriana Piñon*
TX Bar No. 24089768
Adriana Piñon*
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
bklosterboer@aclutx.org
tbuser-clancy@aclutx.org
skumar@aclutx.org
clett@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

E: smahfooz@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org


Attorneys for Petitioners-Plaintiffs
*Pro hac vice applications
forthcoming

**TAB 4**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

A.A.R.P., *et al.*, on their own behalf and on
behalf of all others similarly situated,

*Petitioners–Plaintiffs,*

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Respondents–Defendants.*

CIVIL ACTION NO. <u>1:25-cv-0059</u>

## PETITIONERS-PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF A TRO

25-10534.51

## INTRODUCTION

Petitioners-Plaintiffs ("Petitioners") respectfully request an immediate Temporary Restraining Order ("TRO") to avoid irreparable harm to Petitioners and the proposed class—and to ensure that this Court is not potentially deprived, permanently, of jurisdiction.

In a Proclamation signed on March 14 but not made public until March 15 (after the government had already attempted to use it), the President invoked a war power, the Alien Enemies Act of 1798 ("AEA"), to summarily remove noncitizens from the U.S. and bypass the immigration laws Congress has enacted. *See* Invocation of the Alien Enemies Act (Mar. 15, 2025) ("Proclamation").[1] The AEA permits the President to invoke the AEA only where the United States is in a "declared war" with a "foreign government or nation" or a 'foreign government or nation" is threatening to, or has engaged in, an "invasion or predatory incursion" against the "territory of the United States." The Proclamation targets Venezuelan noncitizens accused of being part of Tren de Aragua ("TdA"), a criminal gang, and claims that the gang is engaged in an "invasion and predatory incursion" within the meaning of the AEA.

On the evening of March 15, a D.C. District Court issued an order temporarily pausing removals pursuant to the Proclamation for a provisionally certified nationwide class. *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *2 (D.C. Cir. Mar. 26, 2025). The D.C. Circuit denied the government's motion to vacate that TRO. On April 7, in a 5-4 decision, the Supreme Court granted the government's application to vacate the TRO order on the basis that Plaintiffs had to proceed through habeas, without reaching the merits of whether the Proclamation exceeds the President's power under the AEA. In doing so, however, the Court emphasized that individuals who are designated under the AEA Proclamation are "entitle[d] to due process" and notice "within

---

[1] https://perma.cc/ZS8M-ZQHJ.

a reasonable time and in such manner as will allow them to actually seek habeas relief" before removal. *Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *2 (U.S. Apr. 7, 2025).

To date, the government has not indicated the type of notice they intend to provide or how much time they will give individuals before seeking to remove them under the AEA. However, in a hearing in the Southern District of Texas on Friday, April 11, **the government said they had not ruled out the possibility that individuals will receive no more than 24 hours' notice; the government did not say whether it was considering providing even less than 24 hours**. **And in the last 24 to 48 hours, Venezuelan men from all over the country—including Louisiana and Minnesota—have been transferred to the Bluebonnet Detention Center in this District and are at imminent risk of summary removal.**

In light of the Supreme Court's ruling, Petitioners and a putative class have filed this habeas action. All five of the original petitioners in the D.C. litigation have likewise filed class habeas petitions in the district where they are detained, along with motions for temporary restraining orders for the putative classes. The first one was filed on April 8, 2025, in the Southern District of New York on behalf of two of the five, and the second on April 9, 2025, in the Southern District of Texas on behalf of the other three. Within hours, both district courts granted *ex parte* requests for TROs, ordering that the named petitioners and putative class members may not be removed from the United States or transferred out of their respective districts. *See G.F.F. v. Trump*, No. 25-cv-2886 (S.D.N.Y. Apr. 9, 2025), ECF No. 31, *as amended*, ECF No. 35 (S.D.N.Y. Apr. 11, 2025); *J.A.V. v. Trump*, No. 25-cv-72 (S.D. Tex Apr. 9, 2025), ECF No. 12, *as amended*, ECF No. 34 (S.D. Tex. Apr. 11, 2025). Both courts subsequently held TRO hearings, extended the TROs, and scheduled preliminary injunction hearings, S.D.N.Y on April 22 and S.D. Tex. on April 24. Within days, two other district courts in Colorado and Pennsylvania followed suit, issuing TROs

25-10534.53

for petitioners and putative classes in the District of Colorado and Western District of Pennsylvania. *See D.B.U. v. Trump*, No. 25-cv-1163-CNS (D. Co. Apr. 14, 2025), ECF No. 10, *as amended*, ECF No. 14; *A.S.R. v. Trump*, No. 25-cv-113-SLH (W.D. Pa. Apr. 15, 2025), ECF No. 8.

Petitioners contend that the Proclamation is invalid under the AEA for several reasons. *First*, the Proclamation fails to the AEA's statutory predicates because TdA is not a "foreign nation or government," nor is TdA is engaged in an "invasion" or "predatory incursions" within the meaning of the AEA. Thus, the government's attempt to summarily remove Venezuelan noncitizens exceeds the wartime authority that Congress delegated in the AEA. *Second,* the Proclamation violates both the Act and due process by failing to provide notice and a meaningful opportunity for individuals to challenge their designation as alien enemies. *Third*, the Proclamation violates the process and protections that Congress has prescribed for the removal of noncitizens in the immigration laws, including protection against being sent to a country where they will be tortured.

**Accordingly, Petitioners move the Court for a TRO for themselves and the putative class barring their summary removal under the AEA.**[2] Immediate intervention by this Court is required given that the vacatur of the D.C. district court's TRO no longer protects them and the government's failure to specify how much notice they intend to provide individuals. And if there is an unlawful removal, the government has taken the position that the courts would lose jurisdiction and there would be no way to correct any erroneous removal. Indeed**,** in the government's rush to transfer individuals to El Salvador, the government has mistakenly deported

---

[2] Petitioners do not seek to enjoin the President but the President remains a proper respondent because, at a minimum, Petitioners may obtain declaratory relief against him. *See, e.g.*, *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974) (concluding that court had jurisdiction to issue writ of mandamus against the President but "opt[ing] instead" to issue declaration).

at least one Salvadoran man without legal basis and claims that individual cannot be returned.[3] *See Noem v. Abrego Garcia*, No. 24A949, 2025 WL 1077101, at *1 (U.S. Apr. 10, 2025). And declarations and news accounts suggest that many of the alleged Venezuelan TdA members sent to El Salvador pursuant to the Proclamation at issue here were not in fact TdA members. *See* Pls.' Mot. for Prelim. Inj., *J.G.G.*, No. 25-cv-766-JEB (D.D.C. Mar. 28, 2025), EF No. 67-1 at 3–7 (describing accounts and evidence of individuals without ties to TdA).[4]

The TRO sought here does *not* seek to prohibit the government from prosecuting any individual who has committed a crime. Nor does it seek release from immigration detention or to prohibit the government from removing any individual who may lawfully be removed under the immigration laws.

## LEGAL AND FACTUAL BACKGROUND

### I.      The Alien Enemies Act

The AEA is a wartime authority that grants the President specific powers with respect to the regulation, detention, and deportation of enemy aliens. Passed in 1798, the AEA, as codified today at 50 U.S.C. § 21, provides:

> Whenever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies.

---

[3] Petitioners do not object to a transfer out of this District to a different part of the U.S. if it is to bring them back to where they were originally detained and closer to counsel. However, Petitioners seek advance notice in the event the transfer may impede attorney access or appear to bring them closer to a removal staging facility given the mistakes the government has already made in its rush to transfer individuals to stage AEA removals. *See supra.*
[4] With this TRO, Petitioners are filing a motion for class certification.

This Act has been used only three times in the country's history and each time in a period of war—the War of 1812, World War I, and World War II.

The Act also provides that individuals designated as enemy aliens will generally have time to "settle affairs" before removal and the option to voluntarily "depart."[5] *See, e.g.*, *United States ex rel. Dorfler v. Watkins*, 171 F.2d 431, 432 (2d Cir. 1948) ("An alien must be afforded the privilege of voluntary departure before the [AG] can lawfully remove him against his will.").

## II.    Congress's Comprehensive Reform of Immigration Law

Following World War II, Congress consolidated U.S. immigration laws into a single text under the Immigration and Nationality Act of 1952 ("INA"). The INA, and its subsequent amendments, provide a comprehensive system of procedures that the government must follow before removing a noncitizen from the U.S. *See* 8 U.S.C. § 1229a(a)(3) (INA provides "sole and exclusive procedure" for determining whether noncitizen may be removed).

As part of that reform and other subsequent amendments, Congress prescribed safeguards for noncitizens seeking protection from persecution and torture. These protections codify the humanitarian framework adopted by the United Nations in response to the humanitarian failures of World War II. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 439-40 (1987); *Aliyev v. Mukasey*, 549 F.3d 111, 118 n.8 (2d Cir. 2008) ("It is no accident that many of our asylum laws sprang forth as a result of events in 1930s Europe."). First, the asylum statute, 8 U.S.C. § 1158, provides that any noncitizen in the U.S. has a right to apply for asylum. Second, the withholding of removal statute, 8 U.S.C. § 1231(b)(3), provides that noncitizens "may not" be removed to a country where

---

[5] 50 U.S.C. § 21 (providing for removal of only those "alien enemies" who "refuse or neglect to depart" from the U.S.); *id.* § 22 (granting time for departure in accordance with treaty stipulation or "where no such treaty exists, or is in force," a "reasonable time as may be consistent with the public safety, and according to the dictates of humanity and national hospitality").

their "life or freedom" would be threatened based on a protected ground. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 420 (1999) (withholding is mandatory upon meeting statutory criteria). Third, protections under the Convention Against Torture ("CAT") prohibit returning noncitizens to a country where it is more likely than not that they would face torture. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") § 2242(a), Pub. L. No. 105-207, Div. G. Title XXI, 112 Stat. 2681 (codified at 8 U.S.C. § 1231 note); 8 C.F.R. § 1208.16-.18.

## III.    The AEA Proclamation and the Unlawful Removals

On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See* Proclamation. Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15. As set forth more fully in Judge Boasberg's opinion, even prior to the Proclamation's publication the government sought to remove individuals. *J.G.G. v. Trump*, No. 1:25-cv-766-JEB (D.D.C. Mar. 18, 2025),  ECF No. 28-1 (Cerna Decl.) ¶ 5; *J.G.G.*, 2025 WL 890401, at *3 (D.D.C. Mar. 24, 2025) (noting that prior to publication of Proclamation, and after a lawsuit was filed against the summary removals, it appeared that "the Government . . . was nonetheless moving forward with its summary-deportation plans.")

In addition to claiming that a *criminal gang* during *peacetime* satisfies the AEA's statutory predicates, the Proclamation does not provide any process for individuals to contest that they are members of the TdA and do not therefore fall within the terms of the Proclamation. The Proclamation also supplants the removal process under the congressionally enacted immigration

laws, which, among other things, provide a right to seek protection from persecution and torture. *See, e.g.*, 8 U.S.C. §§ 1158, 1231(b)(3), 1231 note.

To date, at least 137 Venezuelan men have been removed under the Proclamation and are now in El Salvador in one of the most notorious prisons in the world, possibly for the rest of their lives. Whether most (or perhaps all) of the class lacks ties to TdA remains to be seen, because Respondents secretly rushed the men out of the country and have provided no information about them. But evidence since these individuals were sent to El Salvador flights on March 15 increasingly shows that many were not "members" of TdA. *See J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 67-21 (Sarabia Roman Decl., Exhs. 4-20) (media reports regarding evidence contradicting gang allegations). Such false accusations are particularly devastating given Petitioner's strong claims for relief under our immigration laws. Exh. A (Gian-Grosso Decl.) ¶ 6.

The government's errors are unsurprising, given the methods it is employing to identify members of TdA. The "Alien Enemy Validation Guide" that the government has used to ascertain alien enemy status, requires ICE officers to tally points for different categories of alleged TdA membership characteristics. *J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 67-21 (Sarabia Roman Decl., Exh. 1). The guide relies on a number of dubious criteria, including physical attributes like "tattoos denoting membership/loyalty to TDA" and hand gestures, symbols, logos, graffiti, or manner of dress. But experts who study the TdA have explained how none of these physical attributes are reliable ways of identifying gang members. *Id.* at 67-3 (Hanson Decl.) ¶¶ 22-24, 27; *id.* at 67-4 (Antillano Decl.) ¶ 14; *id.* at 67-12 (Dudley Decl.) ¶ 25.

Experts on El Salvador have also explained how those removed there face grave harm and torture at the Salvadoran Terrorism Confinement Center ("CECOT"), including electric shocks, beating, waterboarding, and use of implements of torture on detainees' fingers. *See J.G.G.*, 2025

WL 1024097, at *9 (U.S. Apr. 7, 2025) (Sotomayor, J., dissenting); *see also J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 44-4 (Bishop Decl.) ¶¶ 21, 33, 37, 39, 41; *id.* at 44-3 (Goebertus Decl.) ¶¶ 8, 10, 17. These abusive conditions are life threatening, as demonstrated by the hundreds of people who have died in Salvadoran prisons. *J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 44-3 (Goebertus Decl.) ¶ 5; *id.* at 44-4 (Bishop Decl.) ¶¶ 43–50. Worse, those removed and detained at CECOT face indefinite detention. *Id.* at 44-3 (Goebertus Decl.) ¶ 3 (quoting the Salvadoran government that people held in CECOT "will never leave"); Nayib Bukele, X.com post (Mar. 16, 2025, 5:13AM ET) (detainees "were immediately transferred to CECOT . . . for a period of one year (renewable)").[6]

## IV.    Petitioners

Petitioner A.A.R.P. is a Venezuelan national who is detained at Bluebonnet Detention Center in Anson, Texas. *See* Ex. A, Blakeborough Decl. ¶ 2. A.A.R.P. fled Venezuela because he and his family were persecuted there in the past for their political beliefs and for publicly protesting against the current Venezuelan government. *Id.* ¶ 8. He came to the United States in 2023 with his wife and their son. *Id.* ¶ 3. He is currently seeking asylum, withholding, and protection under the Convention Against Torture. *Id.* ¶ 8. His next hearing is scheduled for April 28, 2025, at the Fort Snelling Minnesota Immigration Court. *Id.* A.A.R.P. was detained while carpooling to work with his wife on March 26, 2025. *Id.* ¶ 5. ICE has accused A.A.R.P. of having "tattoos and associates that indicate membership in the Tren de Aragua gang" in an I-213. *Id.* ¶ 6. A.A.R.P. has a number of tattoos including a clock that shows the date and time of his son's birth, a cross, and the Virgin Mary. *Id.* ¶ 7. None of these tattoos are related to TdA and A.A.R.P. vehemently denies any connection to TdA. *Id.* ¶¶ 7-8. Early on April 14, A.A.R.P. was suddenly transferred from the

---

[6] https://perma.cc/52PT-DWMR.

Sherburne County Jail in Minnesota to the Bluebonnet Detention Center despite his upcoming April 28 hearing in immigration court in Minnesota. *Id.* ¶ 8. A.A.R.P. is at risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador. *Id.* ¶¶ 8, 10.

Petitioner W.M.M. is a Venezuelan national who is also detained at Bluebonnet Detention Center in Anson, Texas. Ex. B, D'Adamo Decl. ¶ 3. W.M.M. fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the Maduro regime. *Id.* ¶ 4. W.M.M. arrived in the United States in 2023, was released on his own recognizance, and filed an asylum application. *Id.* ¶ 9. Several months later, federal authorities arrested W.M.M. on a misdemeanor warrant for alleged illegal entry into the United States. *Id.* ¶ 10.  At his hearing on the warrant, the government alleged that W.M.M. is affiliated with TdA based on emojis used in W.M.M.'s social media feed, and a comment left by another individual on a social media post. *Id.* ¶ 11. The government also alleged that W.M.M. was arrested at a residence where an alleged TdA associate was present. *Id.* W.M.M. denies any connection with TdA. *Id.* The magistrate judge ordered W.M.M. released from federal criminal custody because the government had not met its threshold burden to show a serious risk that W.M.M. would flee. *Id.* ¶ 12. The judge noted that the illegal entry case was W.M.M.'s only interaction with a court. *Id.* The U.S. Marshals released W.M.M. into ICE's custody on March 17 and subsequently detained for about a month at the Winn Correctional Center in Louisiana. *Id.* ¶¶ 13-14.

On April 14, W.M.M. was abruptly transferred along with several other Venezuelans to the Bluebonnet Detention Center, where he is now currently detained with Venezuelans transferred from other facilities. *Id.* ¶ 15. Even though W.M.M. has an individual hearing scheduled in immigration court for August 22, his phone access was abruptly cut off the afternoon of April 15

and he was told he would be imminently transferred again. *Id*. ¶ 18. W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador. *Id*. ¶ 19.

Upon information and belief, the government has over the past 24-48 hours transferred Venezuelan men from detention centers around the country—including Louisiana, Minnesota, and California—to the Bluebonnet Detention Center in this District despite their pending removal proceedings in immigration court in other regions. Upon information and belief, people have been transferred in groups of Venezuelan men, and been told that they appear to be on a list with other Venezuelans. Thus, many individuals in this District are at imminent risk of summary removal pursuant to the Proclamation.

## LEGAL STANDARD

To obtain a TRO, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *see Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

## ARGUMENT

**I.    Petitioners Are Likely to Succeed on the Merits.**

**A.    The Proclamation Does Not Satisfy the AEA.**

The Proclamation is unprecedented, exceeding the President's statutory authority in three critical respects: there is no invasion or predatory incursion; no foreign government or nation; and no process to contest whether an individual falls within the Proclamation. When the government asserts "an unheralded power" in a "long-extant statute," courts "greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014).

25-10534.61

That skepticism is well warranted here. As Judge Henderson stressed in denying the government's request for a stay of a TRO, a gang's criminal activities do not constitute an "invasion or predatory incursion" under the AEA and the Act is a wartime authority meant to address "military" attacks. *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *1-13 (D.D.C. Mar. 26, 2025).

### 1. There Is No "Invasion" or "Predatory Incursion" upon the United States.

The Proclamation fails, on its face, to satisfy an essential statutory requirement: that there be an "invasion or predatory incursion" directed "against the territory of the United States." The text and history of the AEA make clear that it uses these terms to refer to military actions indicative of an actual or impending war. At the time of enactment, an "invasion" was a large-scale military action by an army intent on territorial conquest. *See* Webster's Dict., *Invasion* (1828) ("invasion" is a "hostile entrance into the possession of another; particularly, the entrance of a hostile army into a country for purpose of conquest or plunder, or the attack of a military force"); *see also J.G.G.*, 2025 WL 914682, at *20 (in the Constitution, "invasion" "is used in a military sense" "*in every instance*"). And "predatory incursion" referred to smaller-scale military raids aimed to destroy military structures or supplies, or to otherwise sabotage the enemy, often as a precursor to invasion and war. *See* Webster's Dict., *Incursion* (1828) ("incursion . . . applies to the expeditions of small parties or detachments of an enemy's army, entering a territory for attack, plunder, or destruction of a post or magazine"); *J.G.G.*, 2025 WL 914682, at *10 ("predatory incursion" is "a form of hostilities against the United States by another nation-state, a form of attack short of war"). The interpretive canon of *noscitur a sociis* confirms that the AEA's powers extended beyond an existing war only when war was imminent. *Ludecke*, 335 U.S. at 169 n.13 ("the life of [the AEA] is defined by the existence of a war"). Reading "invasion" and "predatory incursion" in light of

the neighboring term, "declared war," highlights the express military nature of their usage here. *See Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961).

The historical context in which the AEA was passed reinforces what Congress meant by "predatory incursion" and "invasion." At the time of passage, French ships were already attacking U.S. merchant ships in U.S. *See, e.g.*, 7 Annals of Cong. 58 (May 1797) (promoting creation of a Navy to "diminish the probability of . . . predatory incursions" by French ships while recognizing that distance from Europe lessened the chance of "invasion"); Act of July 9, 1798, ch. 68, 1 Stat. 578, 578 (authorizing US ships to seize "any armed French vessel" "found within the jurisdictional limits of the United States"). Congress worried that these attacks against the territory of U.S. were the precursor to all-out war with France. *J.G.G.*, 2025 WL 914682, at *1 ("In 1798, our fledgling Republic was consumed with fear . . . of external war with France."). This "predatory violence" by a sovereign nation led, in part, to the AEA. *See* Act of July 7, 1798, ch. 67, 1 Stat. 578, 578 ("[W]hereas, under authority of the French government, there is yet pursued against the United States, a system of predatory violence").[7]

"Mass illegal migration" or criminal activities, as described in the Proclamation, plainly do not fall within the statutory boundaries. On its face, the Proclamation makes no findings that TdA is acting as an army or military force. Nor does the Proclamation assert that TdA is acting with an intent to gain a territorial foothold in the U.S. for military purposes. And the Proclamation makes no suggestion that the U.S. will imminently be at war with Venezuela. The oblique references to

---

[7] At the same time, the 1798 Congress authorized the President to raise troops "in the event of a declaration of war against the U.S., or of an actual invasion of their territory, by a foreign power, or of imminent danger of such invasion." Act of May 28, 1798, ch. 47, 1 Stat. 558. As Judge Henderson noted, "[t]his language bears more than a passing resemblance to the language of the AEA, which Congress enacted a mere thirty-nine days later. *J.G.G.*, 2025 WL 914682, at *9. As such, the historical context makes plain that Congress was concerned about *military* incursions by the armed forces of a foreign nation that constitute or imminently precede acts of war.

13

the TdA's ongoing "irregular warfare" within the U.S. do not suffice because the Proclamation makes clear that that term is referring to "mass illegal migration" and "crimes"—neither of which constitute war within the Founding Era understanding. It asserts that TdA "commits brutal crimes" with the goal of "harming United States citizens, undermining public safety, and . . . destabilizing democratic nations." But these actions are not "against the territory" of the U.S. Indeed, if mass migration or criminal activities by some members of a particular nationality could qualify as an "invasion," then virtually any group, hailing from any country, could be deemed enemy aliens. *See J.G.G.*, 2025 WL 914682, at *10 (observing that "[m]igration alone [does] not suffice" to establish an "invasion" or "predatory incursion under the AEA).

### 2.  The Purported Invasion Is Not by a "Foreign Nation or Government."

The Proclamation also fails to assert that any "foreign nation or government" within the meaning of the Act is invading the United States. Put simply, the Proclamation never finds that TdA is a foreign "nation" or "government." Instead, the Proclamation asserts that "[o]ver the years," the Venezuelan government has "ceded ever-greater control over their territories to transnational criminal organizations." But the Proclamation notably does *not* say that TdA operates as a government in those regions. In fact, the Proclamation does not even specify that TdA currently controls *any* territory in Venezuela.

Moreover, when a "nation or government" is designated under the AEA, the statute unlocks power over that nation or government's "natives, citizens, denizens, or subjects." 50 U.S.C. § 21. *Countries* have "natives, citizens, denizens, or subjects." By contrast, criminal organizations, in the Proclamation's own words, have "members." Proclamation § 1 ("members of TdA"). And it designates TdA "members" as subject to AEA enforcement—but "members" are not "natives, citizens, denizens, or subjects." That glaring mismatch underscores that Respondents are

14

attempting not only to use the AEA in an unprecedented way, but also in a way that Congress never permitted—as a mechanism to address, in the government's own words, a *non*-state actor. *Venezuela* has natives, citizens, and subjects, but TdA (not Venezuela) is designated under the Proclamation.[8] Even as the Proclamation singles out certain Venezuelan nationals, it does not claim that *Venezuela* is invading the United States. And, as the President's own CIA Director recently testified, the intelligence community has no assessment that says the U.S. is at war with or being invaded by Venezuela. Ryan Goodman, Bluesky (Mar. 26, 2025).[9] The AEA requires the President to identify a "foreign nation or government" that is invading or engaging in an invasion or incursion. Because it does not, the Proclamation fails on its face.

Further, the AEA's historical record confirms that it was intended to address conflicts with foreign sovereigns, not criminal gangs like TdA. *See* 5 Annals of Cong. 1453 (Apr. 1798) ("[W]e may very shortly be involved in war[.]"); John Lord O'Brian, Special Ass't to the Att'y Gen. for War Work, Civil Liberty in War Time, at 8 (Jan. 17, 1919) ("The [AEA] was passed by Congress . . . at a time when it was supposed that war with France was imminent."); Jennifer K. Elsea & Matthew C. Weed, Cong. Rsch. Serv., RL3113, Declarations of War and Authorizations for the Use of Military Force 1 (2014) (Congress has never issued a declaration of war against a nonstate actor). If Respondents were allowed to designate any group with ties to officials as a

---

[8] Moreover, the AEA presumes that a designated nation possesses treaty-making powers. *See* 50 U.S.C. § 22 ("stipulated by any treaty . . . between the United States and the hostile nation or government"). Nations—not criminal organizations—are the entities that enter into treaties. *See, e.g.*, *Medellin v. Texas*, 552 U.S. 491, 505, 508 (2008) (treaty is "a compact between independent nations" and "agreement among sovereign powers"); *Holmes v. Jennison*, 39 U.S. 540, 570-72 (1840) (similar).

[9] https://bsky.app/profile/rgoodlaw.bsky.social/post/3llc4wzbkr22k (Q: "Does the intelligence community assess that we are currently at war or being invaded by the nation of Venezuela?" A: "We have no assessment that says that.").

25-10534.65

foreign government, and courts were powerless to review that designation, any group could be deemed a government, leading to an untenable and overbroad application of the AEA.

The Proclamation half-heartedly attempts to link TdA to Venezuela by suggesting only that TdA is "supporting," "closely aligned with," or "has infiltrated" the Maduro regime. *See* Proclamation. But those characterizations, even if accepted, are insufficient to establish that a "foreign government or nation" is itself invading the United States. Thus, this court need not go beyond the face of the Proclamation to find that it fails to satisfy the statutory preconditions of the AEA. In any event, experts are in accord that it is "absolutely implausible that the Maduro regime controls TdA or that the Maduro government and TdA are intertwined." *J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 67-3 (Hanson Decl.) ¶17; *id.* at 67-4 (Antillano Decl.) ¶ 13; *id.* at 67-12 (Dudley Decl.) ¶¶ 2, 21. As one expert who has done numerous projects for the U.S. government, including on the topic of TdA, explained, the Proclamation's characterization of the relationship between the Venezuelan state and TdA with respect to TdA's activities in the United States is "simply incorrect." *Id.* at 67-12 (Dudley Decl.) ¶¶ 5, 17-18. The President's own intelligence agencies reached that same conclusion prior to his invocation of the AEA. *See id.* at 67-21 (Sarabia Roman Decl., Exh. 19) ("shared judgment of the nation's spy agencies" is "that [TdA] was not controlled by the Venezuelan government").

**B.      Summary Removals Without Notice, a Meaningful Opportunity to Challenge "Alien Enemy" Designations, or the Right of Voluntary Departure Violate the AEA and Due Process.**

As the Supreme Court has now made clear, the government must provide Petitioners notice "within a reasonable time and in such a manner as will allow them to actually seek" relief from summary removals under the Proclamation. *J.G.G.*, 2025 WL 102409, at *2 ("detainees subject to removal orders under the AEA are entitled to notice and an opportunity to challenge their

removal."). Because the government has not stated whether or how it will comply with the Supreme Court's recent order) a TRO is warranted to ensure that the government provides the Court with protocol for how it will provide notice. *See J.G.G.*, 2025 WL 102409, at *2 ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings."). At a minimum, the notice must be translated into a language that individuals can understand, for Venezuelans Spanish and English. Most importantly, there must be sufficient time for individuals to seek review. As during World War II, that notice must be at least 30 days in advance of any attempted removal. And it must be provided to undersigned counsel so that no individual is mistakenly removed. *See*, *e.g.*, *Noem v. Abrego Garcia*, No. 24A949, 2025 WL 1077101 (U.S. Apr. 10, 2025)

C.    **The Proclamation Violates the Specific Protections that Congress Established for Noncitizens Seeking Humanitarian Protection.**

The Proclamation is unlawful for an independent reason: it overrides statutory protections for noncitizens seeking relief from torture by subjecting them to removal without meaningful consideration of their claims. Congress codified the U.N. Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") to ensure that noncitizens have meaningful opportunities to seek protection from torture. *See* 8 U.S.C. § 1231 note; C.F.R. §§ 208.16-.18. CAT categorically prohibits returning a noncitizen to any country where they would more likely than not face torture. 8 U.S.C. §1231 note. CAT applies regardless of the mechanism for removal. The D.C. Circuit recently addressed a similar issue in *Huisha-Huisha v. Mayorkas*, reconciling the Executive's authority under a public-health statute, 42 U.S.C. § 265, with CAT's protections. 27 F.4th 718 (D.C. Cir. 2022). Because § 265 was silent about where noncitizens could be expelled, and CAT explicitly addressed that question, the court held no conflict existed. *Id*. Both statutes could—and therefore must—be given effect. *Id.* at 721, 731-32. This case is on all

fours with *Huisha-Huisha,* because the AEA and CAT must be harmonized by applying CAT's protections to AEA removals. Despite this clear statutory framework, the Proclamation overrides all of the INA's protections and deprives those designated under the Proclamation with any opportunity to seek protection against being sent to a place where they will be tortured. *See J.G.G.*, 2025 WL 890401, at *15 ("CAT could stand as an independent obstacle" to "potential torture should Plaintiffs be removed to El Salvador and incarcerated there.")

The AEA can similarly be harmonized with other subsequently enacted statutes specifically designed to protect noncitizens seeking asylum and withholding. *See* Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 (1980) (asylum and withholding); 8 U.S.C. §§ 1158 (asylum), 1231(b)(3) (withholding of removal). Congress has unequivocally declared that "[a]ny alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). Likewise, the withholding of removal statute explicitly bars returning a noncitizen to a country where their "life or freedom" would be threatened based on a protected ground. *Id.* § 1231(b)(3)(A). These humanitarian protections were enacted in the aftermath of World War II, when the United States joined other countries in committing to never again turn our backs on people fleeing persecution and torture. Sadako Ogata, U.N. High Comm'r for Refugees, Address at the Holocaust Memorial Museum (Apr. 30, 1997).[10] A President invoking the AEA cannot simply sweep away these protections.

**D.     The Proclamation Violates the Procedural Requirements of the INA**

Since the last invocation of the AEA more than 80 years ago, Congress has carefully specified the procedures by which noncitizens may be removed. The INA leaves little doubt that its procedures must apply to every removal, unless otherwise specified by that statute. It directs:

---

[10] https://perma.cc/X5YF-K6EU.

25-10534.68

"Unless otherwise specified in this chapter," the INA's comprehensive scheme provides "the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3); *see also United States v. Tinoso*, 327 F.3d 864, 867 (9th Cir. 2003) ("Deportation and removal must be achieved through the procedures provided in the INA."). Indeed, Congress intended for the INA to "supersede all previous laws with regard to deportability." S. Rep. No. 82-1137, at 30 (Jan. 29, 1952).[11]

Congress was aware that alien enemies were subject to removal in times of war or invasion when it enacted the INA. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (courts presume Congress drafts statutes with full knowledge of existing law). Indeed, the AEA was invoked just a few years before passage of the 1952 INA. With this awareness, Congress provided that the INA contains the "sole and exclusive" procedures for removal and declined to carve out AEA removals from standard immigration procedures, even as it expressly excepted other groups of noncitizens, including those who pose security risks. *See, e.g.*, 8 U.S.C. § 1531 *et seq.* (establishing fast-track proceedings for noncitizens posing national security risks). By ignoring the INA's role as the "sole and exclusive" procedure for determining whether a noncitizen may be removed, the Proclamation unlawfully bypasses the mandated congressional scheme and usurps Congress's Article I power in the process.

## II.   Petitioners and the Class Face Imminent Irreparable Harm.

In the absence of a TRO, Petitioners and the class are at imminent risk of summary removal to places, such as El Salvador, where they face life-threatening conditions, persecution, and torture.

---

[11] One of the processes otherwise specified in the INA is the Alien Terrorist Removal Procedure at 8 U.S.C. § 1531 *et seq.* The Attorney General may opt to use this when she has classified information that a noncitizen is an "alien terrorist." *Id.* § 1533(a)(1). But even that process requires notice, a public hearing, provision of counsel for indigents, opportunity to present evidence, and individualized review by an Article III judge. *Id.* §§ 1532(a), 1534(a)(2), (b), (c)(1)-(2).

25-10534.69

*See supra*; *J.G.G.*, 2025 WL 1024097, at *5 ("[I]nmates in Salvadoran prisons are 'highly likely to face immediate and intentional life-threatening harm at the hands of state actors.'"). That easily constitutes irreparable harm. *See Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (irreparable harm" where petitioners face "forced separation and likely persecution" "if deported") (; *Huisha-Huisha*, 27 F.4th at 733 (irreparable harm exists where petitioners "expelled to places where they will be persecuted or tortured"); *Patel v. Barr*, No. 20-3856, 2020 WL 4700636, at *8 (E.D. Pa. Aug. 13, 2020); *see also J.G.G.*, 2025 WL 890401, at *16 ("[T]he risk of torture, beatings, and even death clearly and unequivocally supports a finding of irreparable harm" if Venezuelans are removed under the AEA Proclamation to El Salvador). And Petitioners and the class may never get out of these prisons. *See J.G.G.*, 2025 WL 1024097, at *5; *see also supra*.

Even if the government instead removes Petitioners or the class to Venezuela, they face serious harm there, too. Many fled Venezuela for the very purpose of escaping persecution there, and have pending asylum cases on that basis. For example, A.A.R.P. and his family were persecuted for their political beliefs and actions protesting against the current Venezuelan government, and he fears persecution if returned. Ex. A (Blackeborough Decl.) ¶ 8. Likewise, W.M.M. fled Venezuela because he was harassed and assaulted by the Venezuelan military for his perceived opposition to the Maduro regime, and he is seeking asylum on that basis. Ex. B (D'Adamo Decl.) ¶ 4. And returning to Venezuela labeled as a gang member by the U.S. government only increases the danger, as they will face heightened scrutiny from Venezuela's security agency, and possibly even violence from rivals of TdA. *J.G.G.*, No. 1:25-cv-766-JEB, ECF No. 67-3 (Hanson Decl.) ¶ 28.

Not only do Petitioners and the class face grave harm, thus far the government has tried to execute removals without any due process. *See Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146,

172 (D.D.C. 2021) (irreparable harm where plaintiffs "face the threat of removal prior to receiving any of the protections the immigration laws provide"). Although the Supreme Court has now made clear that meaningful notice is required under the AEA, *J.G.G.*, 2025 WL 102409, at *2, Respondents have yet to concede that they will provide meaningful notice, much less any sense of when that notice will be provided to individuals or what form it will take. As such, there remains an unacceptably high risk that the government will deport class members who are not in fact members of TdA.

### III. The Balance of Equities and Public Interest Weigh Decidedly in Favor of a Temporary Restraining Order.

The balance of equities and public interest merge in cases against the government. *See Nken v. Holder*, 556 U.S. 418, 436 (2009). Here, the balance overwhelmingly favors Petitioners. The public has a critical interest in preventing wrongful removals, especially where it could mean a lifetime sentence in a notorious foreign prison. *See Nken*, 556 U.S. at 436; *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) (protecting people who face persecution abroad "goes to the very heart of the principles and moral precepts upon which this country and its Constitution were founded"). That is especially so given the government's position that it will not obtain the release of individuals mistakenly sent to the notorious Salvadoran prison.

Petitioners and the class, moreover, do not contest Respondents' ability to prosecute criminal offenses, detain noncitizens, and remove noncitizens under the immigration laws. *Cf. J.G.G.*, 2025 WL 914682, at *30 ("The Executive remains free to take TdA members off the streets and keep them in detention. The Executive can also deport alleged members of TdA under the INA[.]"). Thus, Respondents cannot show how the government's interests "overcome the irreparable injury to [petitioner] absent a stay, or justify denial of a short stay *pendente lite*." *Ragbir v. United States*, No. 2:17-CV-1256-KM, 2018 WL 1446407, at *18 (D.N.J. Mar. 23, 2018),

25-10534.71

*appeal dismissed*, No. 18-2142, 2018 WL 6133744 (3d Cir. Nov. 15, 2018); *see also Patel*, 2020 WL 4700636, at \*9 (noting "any inconvenience to the Government from the brief delay is far outweighed by the threat of irreparable harm to [plaintiff]" and that "[t]he public interest is also better served by an orderly court process that assures that [the plaintiff's] invocation of federal court relief is considered before the removal process continues."). Conversely, the government can make no comparable claim to harm from an injunction. S*ee Wages & White Lion Inv., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021 ("There is generally no public interest in the perpetuation of unlawful agency action.").

## IV.   The All Writs Act Confers Broad Power to Preserve the Integrity of Court Proceedings.

In addition to this Court's equitable powers, this is a textbook case for use of the All Writs Act ("AWA"), which provides courts a powerful tool to "maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966); 28 U.S.C. § 1651(a); *California v. M&P Inv.*, 46 F. App'x 876, 878 (9th Cir. 2002) (finding Act should be broadly construed to "achieve all rational ends of law") (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)); *J.A.V. v. Trump*, No. 1:25-CV-072, 2025 WL 1064009, at \*1 (S.D. Tex. Apr. 9, 2025) ("A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established."). If Petitioners and the class are illegally sent to a foreign country, and El Salvador assumes jurisdiction, the government will argue, as it already has, that this Court will no longer has jurisdiction to remedy the unlawful use of the AEA. *See* Resp. to Order to Show Cause, *J.G.G.*, No. 25-cv-766-JEB (D.D.C. Mar. 25, 2025), ECF No. 58 at 12 (government asserting "once the flights were outside the United States, the President did not need to rely on that Proclamation or Act to justify transferring members of a designated foreign terrorist group to a foreign country");

Resp. to Plfs.' Mot. for Additional Relief, *Abrego Garcia v. Noem*, No. 8:25-cv-951-PX (D. Md. Apr. 13, 2025), ECF No. 65 at 3-4 (government arguing that "[t]he federal courts have no authority to direct the Executive Branch to . . . engage with a foreign sovereign in a given manner," to facilitate return of wrongfully deported individual).

Whereas a traditional TRO requires a party to state a claim, an injunction based on the AWA requires only that a party identify a threat to the integrity of an ongoing or prospective proceeding, or of a past order or judgment. *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (court may enjoin "conduct which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion"); *In Re: Nat'l Football League Players Concussion Injury Litigation*, 923 F.3d 96, 109 (3d Cir. 2019) ("[U]nder the All Writs Act, action is authorized to the extent it is 'necessary or appropriate' to enforce a Court's prior orders. . . Or, as this Court has explained it, there is authority under the Act to issue an injunction where such relief is 'necessary, or perhaps merely helpful.'") (citing 28 U.S.C. § 1651 and *Pittsburgh-Des Moines Steel Co. v. United Steelworkers of Am., AFL-CIO*, 633 F.2d 302, 307 (3d Cir. 1980)). Courts have explicitly relied upon the AWA in order to prevent even a risk that a respondent's actions will diminish the court's capacity to adjudicate claims before it. *See Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (staying an order of deportation "in order to safeguard the court's appellate jurisdiction" and preserve its ability to hear subsequent appeals by the petitioner).

## V.    The Court Should Not Require Petitioners to Provide Security.

The Court should not require a bond under Fed. R. Civ. P. 65. That "is a matter for the discretion of the trial court," and a district court "may elect to require no security at all." *Kaepa, Inc. v Achilles Corp.*, 76 F.3d 626, 628 (5th Cir. 1996). The Fifth Circuit has approved the exercise

25-10534.73

of this discretion to require no security in cases brought by indigent people and/or public-interest litigation. *See, e.g., City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981); *Steward v. West,* 449 F.2d 324, 325 (5th Cir. 1971). Alternatively, the Court should impose a nominal bond of $1.

## CONCLUSION

The Court should grant a TRO as to the named Petitioners and the class.

Dated: April 16, 2025

Respectfully submitted,

/s/Brian Klosterboer
Brian Klosterboer
Tx Bar No.  24107833

Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org
E: smahfooz@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org

Thomas Buser-Clancy*
TX Bar No. 24078344
Savannah Kumar*
TX Bar No. 24120098
Charelle Lett*
TX Bar No. 24138899
Ashley Harris*
TX Bar No. 24123238
Adriana Piñon*
TX Bar No. 24089768
Adriana Piñon*
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS,
INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
bklosterboer@aclutx.org
tbuser-clancy@aclutx.org
skumar@aclutx.org
clett@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

Attorneys for Petitioners-Plaintiffs
*Pro hac vice applications forthcoming

25-10534.75

**TAB 5**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

A.A.R.P., *et al.*, on their own behalf and on
behalf of all others similarly situated,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Respondents–Defendants.*

CIVIL ACTION NO. <u>1:25-cv-0059</u>

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Upon consideration of Petitioners-Plaintiffs' Motion for a Temporary Restraining Order:

Having determined that Petitioners-Plaintiffs ("Petitioners") and the proposed class are likely to succeed on the merits of their claims that the Proclamation violates the Alien Enemies Act ("AEA"), 50 U.S.C. § 21 *et seq.*; that the AEA does not authorize Respondents-Defendants ("Respondents") to summarily remove them from the United States; that Respondents' actions implementing removals under the AEA violate due process, the Immigration and Nationality Act, and statutes providing protection for those seeking humanitarian relief; that in the absence of injunctive relief Petitioner and the proposed class will suffer irreparable injury in the form of unlawful removal that may be irreversible,; and that the balance of hardships and public interest favor temporary relief, it is, therefore,

**ORDERED** that Petitioners' Motion for a Temporary Restraining Order is hereby GRANTED without notice, due to the extreme speed at which removal from this District may occur and the irreparable consequences of the Court's potential loss of jurisdiction; that the proposed class is provisionally certified; and that Respondents (excluding the President with

1

25-10534.82

respect to any injunctive relief), their agents, representatives, and all persons or entities acting in concert with them are hereby:

1. **ORDERED**, pending further order of this Court, not to remove Petitioners, or any members of the putative class, from the United States under the Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua";

2. **ORDERED**, pending further order of this Court, not to transfer Petitioners, or any members of the putative class, from the District without notice to counsel;

3. **ORDERED**, pending further order of this Court, to provide Petitioners and members of the putative class, as well as provisional class counsel, with notice of any designation as an Alien Enemy under the Proclamation, and at least 30 days' notice prior to any removal pursuant to the Proclamation;

4. **ORDERED**, pending further order of this Court, to provide provision class counsel with notice of the transfer of any individual designated an Alien Enemy under the Proclamation into the District.

It is further **ORDERED** that Petitioners shall not be required to furnish security for costs.

Entered on _____, of April 2025, at _____ a.m./p.m.

_____
United States District Court Judge

2

25-10534.83

**TAB 6**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

A.A.R.P., on his own behalf and on behalf
of all others similarly situated, et al.,

     Petitioners-Plaintiffs,

v.                                                                      No. 1:25-CV-059-H

DONALD J. TRUMP, in his official
capacity as President of the United States, et
al.,

     Respondents-Defendants.

## ORDER

Before the Court are the petitioners' emergency application for a temporary

restraining order (Dkt. No. 2) and motion for class certification and appointment of class

counsel (Dkt. No. 3).  The petitioners A.A.R.P and W.M.M. assert that they "are at

imminent risk of summary removal" from the United States.  Dkt. No. 2 at 2.  To avoid

alleged irreparable harm, the petitioners ask the Court, among other things, to enjoin the

government from removing them—or any similarly situated detainee in the Northern

District of Texas—from the country.  *Id.*  The Court asked the government whether it would

remove A.A.R.P or W.M.M. pending resolution of their habeas petition.  Dkt. No. 8.  The

United States answered unequivocally, stating that "the government does not presently

expect to remove A.A.R.P. or W.M.M. under the [Aliens Enemies Act] until after the

pending habeas petition is resolved" and that "[i]f that changes, we will update the Court."

Dkt. No. 19 at 13.  As a result, the petitioners are not at "imminent risk of summary

removal," and they cannot show a substantial threat of irreparable harm.  Thus, the motion

is denied.  The Court reserves decision as to the motion for class certification (Dkt. No. 3).

1.      **Factual and Procedural History**

On March 14, 2025, President Donald J. Trump signed a proclamation under the

Alien Enemies Act of 1798 providing that "all Venezuelan citizens 14 years of age or older

who are members of TdA [Tren de Aragua], are within the United States, and are not

actually naturalized or lawful permanent residents of the United States are liable to be

apprehended, restrained, secured, and removed as Alien Enemies."  Dkt. No. 1 at 13

(brackets in original).

A.A.R.P., a Venezuelan national, entered the United States in 2023.  Dkt. No. 1 at

5–6.  He sought asylum and has a hearing scheduled on April 28, 2025, at the Fort Snelling,

Minnesota Immigration Court.  *Id.* at 5.  ICE detained A.A.R.P. on March 26, 2025.  *Id.* at

5–6.  On April 14, 2025, authorities transferred A.A.R.P. from a jail in Minnesota to the

Bluebonnet Detention Center in Texas.  *Id.* at 6.  According to the petition, ICE contends

that A.A.R.P. is a member of TdA.  *Id.*

W.M.M., also a Venezuelan national, was detained when he entered the United

States in 2023, but he was later released on his own recognizance.  *Id.* at 6.  He later filed an

asylum application.  *Id.*  Subsequently, federal authorities arrested W.M.M. for illegal entry

into the United States.  *Id.*  After his arrest, authorities released W.M.M. into ICE custody

at the Winn Correctional Center in Louisiana.  *Id.*  Authorities transferred him to the

Bluebonnet Detention Center on April 14, 2025.  *Id.* at 6–7.  W.M.M. has a court hearing

scheduled for August 22, 2025.  *Id.* at 7.  The petition alleges that ICE believes W.M.M. is

affiliated with TdA.  *Id.* at 6.

A.A.R.P. and W.M.M. assert that they may be imminently deported to El Salvador

or Venezuela.  *Id.* at 6–7; Dkt. No. 2-1 at 20.  They filed their joint petition for a writ of

25-10534.251

habeas corpus on April 16, 2025.  *See generally* Dkt. No. 1.  Neither A.A.R.P. nor W.M.M. has been issued a notice of intent to remove them under the Act.  *See* Dkt. No. 21 at 35.

Contemporaneously with their petition, the petitioners moved for an emergency, ex-parte restraining order against the respondents.[1]  Dkt. No. 2; *see* Dkt. No. 1 at 1.  The petitioners claim in their motion that the government may remove Venezuelan nationals, such as the petitioners, to El Salvador or Venezuela with less than 24 hours' notice in a summary proceeding without due process or the opportunity for judicial review, potentially depriving the Court of jurisdiction to hear the petitioners' habeas claims.  Dkt. No. 2-1 at 3–4, 19–20.  Once the Court is deprived of jurisdiction, the petitioners assert, they will risk torture, abuse, persecution, and the inability to obtain relief.  *Id.* at 19–20.

The Court ordered the petitioners to provide notice to Chad Meacham, the Acting United States Attorney for the Northern District of Texas or to file a brief explaining why they did not need to provide notice to the respondents of the request for a restraining order.  Dkt. No. 8.  The petitioners then filed a notice of service as to Acting United States Attorney Meacham.  Dkt. No. 11.

The Court further instructed the government to respond to the motion for a temporary restraining order by 4:00 p.m. CT on April 16, 2025.  Dkt. No. 8 at 3.  The government timely filed its response, Dkt. No. 19, and the petitioners replied, Dkt. No. 22.  In addition to various substantive arguments, the government represents that the petitioners' removal is not imminent.  *See* Dkt. No. 19 at 31–33.  The government states that authorities

---

[1] The petitioners do not seek a temporary restraining order against President Donald J. Trump.  Dkt. No. 2 at 4 n.2.

25-10534.252

will not remove the petitioners during this litigation, and it will alert the Court if that

changes. *Id.* at 12–13.

**2.    Analysis**

The Court denies the motion because three points undermine the petitioners'

assertion of imminent, irreparable harm.  First, the Supreme Court's recent opinion in

*Trump v. J.G.G.*, 2025 WL 1024097 (U.S. Apr. 7, 2025), leaves no doubt that detainees, like

the petitioners, are entitled to some level of due process and judicial review.  Second, the

government's representations to this Court make manifest that the petitioners will not be

removed pending this litigation and that the government will alert the Court if that

expectation changes.  And third, the petitioners' desire for more concessions or specific

timetables from the government does not sufficiently show imminent, irreparable injury.

Movants seeking preliminary injunctive relief must establish (1) "a substantial

likelihood that they will prevail on the merits," (2) a "substantial threat that they will suffer

irreparable injury if the injunction is not granted," (3) that "their substantial injury

outweighs the threatened harm to the party whom they seek to enjoin" and (4) that

"granting the preliminary injunction will not disserve the public interest."  *City of El Cenizo v.*

*Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion*

*Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).  A temporary restraining order is "simply

a highly accelerated and temporary form of preliminary injunctive relief," which requires

the party seeking such relief to establish the same four elements for obtaining a preliminary

injunction.  *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex.

July 15, 2009).  Therefore, the same criteria are applicable to temporary restraining orders.

*See May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013).

Preliminary injunctive relief is "an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (stating that a movant must "clearly carr[y] the burden of persuasion").

The petitioners ask the Court to decide, "as soon as possible," *see* Dkt. No. 2 at 3, whether to restrain the federal government from exercising its immigration powers—a realm in which the political branches, not the judiciary, enjoy substantial power and responsibility. *See, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (noting that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government" and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference"). And in this context especially, the Supreme Court has recently noted that the Alien Enemies Act largely precludes judicial review. *J.G.G.*, 2025 WL 1024097, at *1. The Court must tread carefully when making such a hasty decision, especially one of significant magnitude. These considerations are why preliminary relief is an exception rather than the rule. And although temporary restraining orders against the government are sometimes justified, the movant must show that there is a substantial threat of irreparable harm without such relief. *See City of El Cenizo*, 890 F.3d at 176.

25-10534.254

The petitioners have not met this burden. First, Supreme Court precedent undermines the petitioners' assertion of imminent and summary removal without process. Just last week, the Supreme Court outlined the requirements and procedures for these cases. *See J.G.G.*, 2025 WL 1024097, at *2. The Supreme Court noted that, even under the Alien Enemies Act, "an individual subject to detention and removal . . . is entitled to judicial review as to questions of interpretation and constitutionality of the Act as well as whether he or she is in fact an alien enemy fourteen years of age or older." *Id.* at *2 (internal quotation marks omitted) (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163–64 (1948)).

Moreover, the Supreme Court noted that "[t]he detainees' rights against summary removal . . . [were] not currently in dispute," as the government "expressly agree[d] that TdA members subject to removal under the Alien Enemies Act get judicial review." *Id.* (internal quotation marks omitted). And the Supreme Court further reiterated that "the detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). "More specifically, in this context, AEA detainees must receive notice after [April 7, 2025] that they are subject to removal under the Act." *Id.* The notice must "be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.* Lest it not already be completely clear, the Supreme Court stated that "[f]or all the rhetoric of the dissents, . . . the detainees subject to removal orders under the AEA are entitled to notice and an opportunity to challenge their removal." *Id.*

Thus, the Supreme Court has already made clear that the alleged immediate removals prior to notice and the opportunity for judicial review, which form the basis of the

25-10534.255

petitioners' motion, are illegal. *See id.* And the government recognized this reality in the Supreme Court. *Id.*

Second, the government's own representations in this case preclude a finding of imminent, irreparable harm. In an attempt to establish that *J.G.G.* is insufficient to safeguard the rights of the petitioners, they assert that the "[r]espondents have yet to concede that they will provide meaningful notice, much less any sense of when that notice will be provided to individuals or what form it will take." Dkt. No. 2-1 at 21. As such, the petitioners contend that "there remains an unacceptably high risk that the government will deport [putative] class members who are not in fact members of TdA." *Id.*

But the government's response confirms that it has no present plans to remove either petitioner until the habeas petition is resolved and that it will notify the Court if that changes. Dkt. No. 19 at 12–13. The government once again confirmed its continued belief that "the requirement for judicial review includes a process for affording notice and opportunity to be heard prior to being removed under AEA authority" and that once "that opportunity to be heard has been satisfied, removal may proceed unless a court orders otherwise." *Id.* at 13. The government further provided a declaration from Yousef Khan, Assistant Field Office Director for the United States Department of Homeland Security, Immigration and Customs Enforcement, who stated that "ICE does not intend to remove A.A.R.P. or W.M.M. under the AEA while their habeas petitions are pending." Dkt. No. 21 at 35. The petitioners, in contrast, have pointed to no instances of the government attempting to remove individuals under the Act without sufficient notice or process after the Supreme Court entered its order and opinion in *J.G.G.*, and neither have they pointed to affirmative representations by the government that it will do so in the immediate future.

Given this record, the Court has no basis upon which to believe that the government is going to defy the Supreme Court's clear directives in *J.G.G.* or the government's own representations to the Supreme Court and to this Court. Thus, in light of *J.G.G.* and the government's representations in its response (Dkt. No. 19), the petitioners' conjecture is too speculative to support the exceptional remedy requested.

Third, the fact that the government has "yet to concede" its obligation to provide meaningful notice is insufficient to affirmatively show that the government is going to commit the acts feared. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2025) (noting that there must be a "likelihood that irreparable harm will occur" and that "[s]peculative injury is not sufficient"); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013) (noting that "speculative injury is not sufficient"); *see also* Dkt. No. 21 at 25–26. In any event, the petitioners asserted this argument before the government affirmed before this Court its agreement that it must provide notice that allows "a reasonable time to file" a habeas petition. *See* Dkt. No. 19 at 13

The petitioners' reply brief (Dkt. No. 22) likewise contends that the government's assurances are insufficient because the government is still not committing to provide substantially more than 24 hours' notice. Dkt. No. 22 at 4–5. The petitioners believe that 30 days' notice is necessary. *Id.* at 5. But the government's decision not to commit to a specific or longer period of notice does not support the petitioners' contention that they are at imminent risk of irreparable harm. The government has committed to allowing for due

– 8 –

process and judicial review, specifically stating that it has no intention to remove the petitioners before the Court resolves their habeas petition. Dkt. Nos. 19 at 12–13; 21 at 25–26. In addition, the Supreme Court's opinion in *J.G.G.*, along with the government's general representations about the procedures necessary in these cases, strongly suggest that the putative class is also not facing such an imminent threat as the petitioners allege. In any event, the petitioners cannot seek relief that is necessary only to class members but not to them as named petitioners. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (explaining the importance of named plaintiffs being representative of the members of the class). Moreover, despite the lack of a specific notice period, the government has agreed that it will provide meaningful notice. *See* Dkt. No. 19 at 13, 24–25. That the government has not provided a specific notice period does not mean the government will provide notice insufficient under *J.G.G.* in the immediate future to detainees.

Under these circumstances, the Court finds that the petitioners have failed to meet their "heavy burden" to show a substantial threat of irreparable harm. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of" injunctive relief of this sort. Wright & Miller, *supra* § 2948.1. Lacking a showing of "certainly impending" future injury, the Court cannot grant the temporary restraining order. *See Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

## 3.    Conclusion

The Supreme Court has already affirmed that petitioners are entitled to judicial review, including notice and a hearing, before removal. *See J.G.G.*, 2025 WL 1024097, at

25-10534.258

*2.  The government agreed with this statement of law before the Supreme Court, *see id.*,
and before this Court, *see* Dkt. No. 19 at 13.  The petitioners have not made a sufficient
showing at this stage to convince the Court that the government will violate its
representations to that effect or the instructions of the Supreme Court.  The petitioners have
therefore failed to meet their burden to show a substantial threat of imminent, irreparable
injury.  The Court denies the motion for a temporary restraining order (Dkt. No. 2).
Because the Court denies the emergency motion, it need not decide at this point whether to
certify a class or appoint class counsel.  The Court will issue a briefing order regarding the
motion for class certification and appointment of class counsel (Dkt. No. 3) in due course.

So ordered on April 17, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

– 10 –

25-10534.259

**TAB 7**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| W.M.M., on his own behalf and on behalf of all others similarly situated, et al., | | |
| Petitioners-Plaintiffs, | | |
| v. | | No. 1:25-CV-059-H |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | | |
| Respondents-Defendants. | | |

## ORDER

Three diverse petitioners bring this habeas-corpus action, which raises eight distinct

claims. The potential remedies vary widely depending on which claims, if any,

prevail. Nevertheless, the petitioners ask the Court to certify a class action so they can

represent all aliens in custody in the Northern District of Texas "who were, are, or will be"

subject to the President's invocation of the Alien Enemies Act. This request relies heavily

on the assumption that their first claim, which challenges the President's invocation of the

AEA, will prevail. But class certification is not the time to resolve the merits, and the Court

cannot presume that this claim will succeed. Rather, the Court must follow Rule 23's

mandates when determining whether class certification is appropriate. Here, Rule 23 is not

satisfied. The petitioners bring many independent claims driven by individual

circumstances, rendering them atypical from potential class members. Moreover, the

petitioners' varying circumstances prevent them from satisfying Rule 23(b)(2)'s

uniformity-of-relief requirement. Finally, even if the petitioners satisfied Rule 23, or the

Court could eschew it in favor of a habeas class under the All Writs Act, the Court would

not exercise its discretion to certify a class. Detainees should be able to pursue their own

habeas rights through their own arguments and not be swept up in broad challenges that

may remain in litigation for a lengthy period. Thus, the Court denies class certification.

25-10534.565

Recognizing that time is of the essence to both sides, the Court issues this order to further the litigation, provide clarity to the parties, and permit putative class members to adjust accordingly. The Court recognizes, of course, that the Supreme Court has granted temporary relief to the putative class pending further order from that Court. *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1034 (2025). Thus, the Court stays the effect of this Order pending further action from the Supreme Court. In the event that the Supreme Court grants the pending petition for a writ of certiorari, this Order is automatically vacated.

1.    **Factual and Procedural Background**

    A.    **Factual Allegations**

        i.    **The President's Proclamation and the Alien Enemies Act**

The AEA provides that "[w]henever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government," then the President may issue a public Proclamation of the event. 50 U.S.C. § 21. Once the President has made such a Proclamation, "all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies." *Id.* After the President issues such a Proclamation, the courts of the United States having criminal jurisdiction are authorized "after a full examination and hearing on such complaint, and sufficient cause appearing, to order such alien to be removed out of the territory of the United States." *Id.* § 23.

25-10534.566

On March 14, 2025, the President issued such a Proclamation.  *See* 90 Fed. Reg. 13033.  The President proclaimed that the "TdA has engaged in and continues to engage in mass illegal migration to the United States to further its objectives of harming United States citizens, undermining public safety, and supporting the Maduro regime's goal of destabilizing . . . the United States."  *Id.* at 13033.  Further, the President proclaimed that the "TdA is closely aligned with, and indeed has infiltrated, the Maduro regime, including its military and law enforcement apparatus."  *Id.*  The President thus found and declared that the "TdA is perpetrating, attempting, and threatening an invasion or predatory incursion against the territory of the United States."  *Id.* at 13034.  The President thus proclaimed that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies."  *Id.*  The President further found and declared that "all such members of TdA are, by virtue of their membership in that organization, chargeable with actual hostility against the United States and therefore ineligible for the benefits of 50 U.S.C. [§] 22" and are "a danger to the public peace or safety of the United States."  *Id.*

### ii.    The Petitioners

The petitioners are Venezuelan nationals detained at the Bluebonnet Detention Center.  Dkt. No. 38 at 5–7.  A.R.P. is "currently seeking asylum, withholding, and protection under the Convention Against Torture."  *Id.* at 5.  In late March, authorities detained A.R.P., and Immigration and Customs Enforcement (ICE) has accused him of having "tattoos and associates that indicate membership in the Tren de Aragua gang," though he denies any connection to the TdA.  *Id.* at 5–6.  On April 14, 2025, authorities

– 3 –

transferred A.R.P. from a county jail to Bluebonnet. *Id.* at 6. A.R.P. believes that he "is at grave risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador." *Id.*

W.M.M. arrived in the United States in 2023, "was released on his own recognizance, and subsequently filed an asylum application." *Id.* Authorities later arrested W.M.M. for illegal entry into the United States, and the government "alleged that W.M.M. is affiliated with TdA," though W.M.M. denies any connection with the TdA. *Id.* A magistrate judge ordered W.M.M.'s release from criminal custody, and U.S. Marshals released W.M.M. into ICE custody. *Id.* On April 14, 2025, authorities transferred W.M.M. to Bluebonnet. *Id.* at 6–7. Like A.R.P., "W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador. *Id.* at 7.

F.G.M. "has a pending asylum application and no final removal order." *Id.* He is currently held at Bluebonnet. *Id.* "F.G.M. has said that ICE accused him of being a member of TdA and provided documentation labeling him as such, and as an alien enemy." *Id.* F.G.M. did not sign this document, and no authority signed the certificate of service. Dkt. No. 60. The respondents now stipulate that F.G.M. received an AEA-designation notice. Dkt. No. 60. Although the respondents claim that F.G.M. may be subject to removal under the INA, they leave open the possibility that they may remove him or the other petitioners under the AEA. *Id.*

**B.   Procedural Background**

A.R.P. and W.M.M. filed their joint petition for a writ of habeas corpus on April 16, 2025. Dkt. No. 1. They bring eight claims: (1) the Proclamation is ultra vires under the

– 4 –

AEA; (2) the AEA process is inconsistent with Immigration and Nationality Act (INA) procedure; (3) the AEA process prevents detainees from filing for asylum; (4) the AEA process violates the withholding-of-removal statute; (5) the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998; (6) the Proclamation's categorical declaration that every person subject to the Proclamation is chargeable with actual hostility violates the AEA; (7) the Proclamation violates the petitioners' due process rights under the Fifth Amendment; and (8) summary removal violates the petitioners' rights to habeas corpus.  Dkt. No. 38 at 18–22.

Contemporaneously with their petition, A.R.P. and W.M.M. moved for a temporary restraining order (Dkt. No. 2) and class certification and appointment of class counsel (Dkt. No. 3).  The next day, the Court denied the motion for a temporary restraining order (Dkt. No. 2) and reserved decision on the motion for class certification and appointment of class counsel (Dkt. No. 3).  Dkt. No. 27.  In the earliest hour of the following day, April 18, 2025, A.R.P. and W.M.M. again moved for a temporary restraining order.  Dkt. No. 30.  The Court ordered the respondents to respond within 24 hours.  Dkt. No. 29.

While the second motion for a temporary restraining order was being considered in the morning and early afternoon of April 18, 2025, Dkt. No. 30, the petitioners moved at 12:48 p.m. CT for an immediate status conference or grant of the second motion.  Dkt. No. 34.  The motion for a status conference informed the Court that if it did not set a hearing or grant the emergency motion by 1:30 p.m. CT, then A.R.P. and W.M.M. intended to seek emergency relief from the Fifth Circuit.  *Id.* at 2.  Before the Court could enter an order on the motion for a status conference or resolve the second motion for a temporary restraining order, the petitioners filed a notice of appeal, divesting the Court of jurisdiction over the

matters involved in that appeal.  *See* Dkt. Nos. 36; 41 at 4.  The Court thus denied the motion for a hearing.  Dkt. No. 41.

The same afternoon that the petitioners filed their notice of appeal, they filed an emergency application for an emergency injunction or writ of mandamus, stay of removal, and request for an immediate administrative injunction with the Supreme Court of the United States.  *See A.A.R.P.*, 145 S. Ct. at 1034.  In the earliest hours of Saturday, April 19, 2025, the Fifth Circuit denied as premature the appeal under 28 U.S.C. § 1291(a)(1), concluding that it lacked subject-matter jurisdiction because the petitioner did not give this Court enough time to resolve the second motion for a temporary restraining order.  *See* Dkt. No. 43 at 2.  Almost simultaneously, the Supreme Court issued emergency relief ordering "the government . . . not to remove any member of the putative class of detainees from the United States until further order of" the Supreme Court.  *See A.A.R.P*, 145 S. Ct. at 1034.

The Solicitor General later responded to the petitioners' application.  *A.A.R.P. v. Trump*, No. 24A1007, Response to application from respondents Donald J. Trump, et. al. (Apr. 19. 2025).  In their reply brief, A.R.P. and W.M.M. asked the Supreme Court to construe its application as a petition for a writ of certiorari.  *A.A.R.P. v. Trump*, No. 24A1007, Reply of applicants A.A.R.P., et al. (Apr. 21, 2025).  The Supreme Court has yet to act further on the application.[1]

---

[1] As the Court has previously explained, Dkt. No. 45 at 2, the pending petition for a writ of certiorari does not divest the Court of jurisdiction.  *See, e.g.*, *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 106 n.1 (1st Cir. 2016) ("[T]he mere act of filing a petition for certiorari does not deprive the district court of jurisdiction over the case.") (citing *United States v. Sears*, 411 F.3d 1240, 1241–42 (11th Cir. 2005)); *cf.* Fed. R. App. P. 41(d)(1) ("A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.").

– 6 –

After the Fifth Circuit issued its mandate and the Court obtained jurisdiction over these matters in full once again, the Court entered an order changing the caption in this case to make W.M.M. the listed petitioner and changed A.A.R.P.'s pseudonym to A.R.P.  Dkt. No. 44.

### C.    The Pending Motion

A.R.P. and W.M.M. filed their first motion for class certification on April 16, 2025. Dkt. No. 3.  The petitioners later moved for leave to file an amended motion for class certification with their amended habeas petition that added F.G.M.  *See* Dkt. No. 35.  The Court signed an order granting the motion for leave (Dkt. No. 35) and denying as moot the original motion for class certification (Dkt. No. 3).  However, before the Clerk of Court docketed the order, the petitioners filed their notice of appeal (Dkt. No. 36).  To avoid any confusion as to the operative petition, and to the extent that the Court's previous order granting the motion for leave to file an amended motion for class certification and denying as moot the previous motion for class certification (Dkt. No. 37) is invalid in light of the notice of appeal, the Court again grants the motion for leave to file the amended motion for class certification and appointment of class counsel (Dkt. No. 35) (now docketed at Dkt. No. 39).  The Court also denies as moot the original motion for class certification (Dkt. No. 3).[2]

---

[2] Because a notice of interlocutory appeal deprives the Court only of those issues that are the subject of the appeal, *see Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007), the Court does not believe that it would have been without jurisdiction to grant the other portions of Dkt. No. 35 that sought leave to amend the petition.  But to avoid any confusion, the Court again grants the motion for leave to file the amended habeas petition (Dkt. No. 35) and recognizes the amended petition docketed at Dkt. No. 38 as the operative petition.

25-10534.571

The Court now considers the amended motion for class certification and appointment of class counsel (Dkt. No. 39). The petitioners seek to certify the following as a class: "[a]ll noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua' and/or its implementation." Dkt. No. 40 at 2.

The respondents filed their response, Dkt. No. 49, and the petitioners replied, Dkt. No. 55. The motion is thus ripe.

### 2.    Legal Standard for Class Certification

The general rule in litigation is that named parties sue on their own behalf and may represent only their own interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). But Federal Rule of Civil Procedure 23 provides a limited exception, stating that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). There are four prerequisites under Rule 23(a).

The first requirement is numerosity. A class action is appropriate only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has suggested that a class of more than 40 members should raise a presumption that joinder is impracticable, and a class of over 100 members will generally satisfy the requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

The second requirement is commonality. There must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has cautioned courts

not to read this requirement too broadly, as almost any class complaint can raise common questions. *Wal-Mart Stores,* 564 U.S. at 349. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 349–50 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). And the same violation of the same law is insufficient. *Id.* at 350. For commonality, the "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The third requirement is typicality. "[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Adv. Ins.*, 67 F.4th 727, 736 (5th Cir. 2023) (internal quotation marks omitted) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). The "critical inquiry is whether the [named plaintiff's] claims have the same essential characteristics of those of the putative class." *Id.* (brackets in original) (quoting *Stirman*, 280 F.3d at 562). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *Stirman*, 280 F.3d 562).

The fourth requirement is adequacy of representation. The Court must be assured that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). The proposed "representative[s] must have common interests with the

unnamed members of the class," and "it must appear that the [proposed] representative[s] will vigorously prosecute the interests of the class through qualified counsel." *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973).

The party seeking class certification bears the burden of establishing all of these prerequisites. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). In reviewing a motion for class certification to determine whether these prerequisites are met, the Court must understand and analyze the "relevant claims, defenses, facts, and substantive law presented in the case." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012); *see also Rodriguez v. Countrywise Home Loans, Inc.* (*In re Rodriguez*), 695 F.3d 360, 365 (5th Cir. 2012). Compliance with these rules must be actual, not presumed. *Wal-Mart Stores*, 564 U.S. at 350–51. And the Court must be mindful of the practicalities of trying the particular case as a class action. *See Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 556 (5th Cir. 2011).

If and only if the petitioners satisfy the four prerequisites under Rule 23(a), the petitioners must show that class certification meets one of the requirements laid out in Rule 23(b). *See* Fed. R. Civ. P. 23(b). The petitioners make arguments only as to Rule 23(b)(2). *See* Dkt. Nos. 39 at 1; 40 at 13–14. Rule 23(b)(2) provides that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"[Rule 23(b)(2)'s] focus on injunctive and declaratory relief presumes a class best described as a homogenous and cohesive group with few conflicting interests among its members." *In re Rodriguez*, 695 F.3d at 365 (brackets in original) (internal quotation marks

omitted) (quoting *Bratcher v. Nat'l Standard Life Ins.* (*In re Monumental Life Ins.*), 654 F.3d 408, 415 (5th Cir. 2004)).  This provision of the rule requires that "(1) the defendant's actions or refusal to act are generally applicable to the class as a whole and (2) injunctive relief predominates over damages sought."  *Id.*

And even if the petitioners meet their burden to show that they meet the standards of Rule 23, "[t]he district court maintains substantial discretion in determining whether to certify a class action."  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). The certification inquiry is fact-driven, and the Court has an "inherent power to manage and control pending litigation."  *Id.*  But the Court must exercise that discretion within the framework of Rule 23, meaning that the Court does not have discretion to certify a class under Rule 23 if the party seeking class certification does not meet the requirements of Rule 23.  *Angell v. GEICO Adv. Ins.*, 67 F.4th 727, 736 (5th Cir. 2023).

The petitioners contend that a plaintiff who satisfies the requirements of Rule 23 has a "categorical right to pursue his claim as a class action."  Dkt. No. 40 at 6 (internal quotation marks omitted) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010)).  To the extent that the petitioners are suggesting that the district court lacks discretion to deny class certification if the petitioners make the requisite showing under Rule 23, the Court rejects this reading of *Shady Grove*.  *Shady Grove* is a case about federal preemption, where the Court struck down a state law that provided requirements for class actions that the Second Circuit had considered substantive and applied in federal court.  *See* 559 U.S. at 397–98.  The Supreme Court held that parties in federal courts have a right to pursue class certification in accordance with Rule 23 and that state laws cannot restrain that right.  *See id.* at 399–400.  *Shady Grove* thus holds that state laws may not limit

25-10534.575

what sorts of claims are certifiable, but it does not abrogate the long-recognized discretion of district courts to decide whether to certify a class that is technically certifiable. *See, e.g.*, *Benavides v. Chicago Title Ins.*, 636 F.3d 699, 701 (5th Cir. 2011) (noting the district court's wide discretion in determining whether to certify a class); *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (1995) ("The district court has wide discretion in deciding whether to certify a class action.").

Multiple members of the Supreme Court seem to agree. Justice Thomas in dissent in *TransUnion v. Ramirez*, 594 U.S. 413 (2021), joined by Justices Breyer, Sotomayor, and Kagan, noted, eleven years after *Shady Grove*, his view that "the District Court did not abuse its discretion in certifying the class given the similarities among the claims and defenses at issue." *Id.* at 446 n.1 (Thomas, J., dissenting). And the Fifth Circuit continues to review class certification for abuse of discretion after *Shady Grove*. *See, e.g.*, *Seeligson v. Devon Energy Prod. Co.*, 753 F. App'x 225, 229 (5th Cir. 2018) ("We review a district court's class certification for abuse of discretion."); *Benavides*, 636 F.3d at 701 (noting that the Fifth Circuit "review[s] the denial of class certification for abuse of discretion" and that "the district court has substantial discretion to grant or deny certification"). This conclusion makes sense especially in light of the district court's "inherent power to manage and control pending litigation." *Angell*, 67 F.4th at 736 (quoting *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 20 F.4th 171, 176 (5th Cir. 2021)).

**3.      The Court has jurisdiction to resolve the motion for class certification.**

Before resolving the petitioners' motion for class certification, the Court must determine whether it has jurisdiction to do so. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). The respondents have raised multiple jurisdictional arguments, *see* Dkt. No.

49 at 3–5, and the Court identifies—in accordance with its independent duty to ensure that it has jurisdiction, *see Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)—standing, mootness, and ripeness issues.

In light of the Court's concerns, the Court originally scheduled an evidentiary hearing in this case to determine whether the petitioners had standing to challenge the Proclamation and AEA procedures. Dkt. No. 50. The respondents represented to the Court that none of the petitioners had received notice and provided a declaration to that effect. *See* Dkt. Nos. 49 at 8; 49-1. The petition, in contrast, stated that F.G.M. had received notice, and the petitioners provided a declaration to support that contention. Dkt. Nos. 38 at 7; 30-1. After the Court scheduled a hearing to resolve this factual dispute, the parties stipulated that "a designation notice was prepared and given to FGM," but "[d]ue to a litigation hold, the certificate of service was not executed," and "FGM did not sign the certificate of service on FGM's notice." Dkt. No. 60 at 1. The petition does not allege that A.R.P. or W.M.M. have received AEA notice. *See* Dkt. No. 38 at 5–7.

The respondents also represented to the Court that "the named Petitioners are all currently detained for removal proceedings consistent with the INA under processes and procedures that are not at issue in this case." Dkt. No. 49 at 8. The Court thus asked the respondents whether they "have decided not to remove or attempt to remove the named plaintiffs, including F.G.M., under any circumstances, pursuant to the Alien Enemies Act." Dkt. No. 60 at 1–2. The respondents informed the Court that they were "not prepared to" make such a representation but could state only that the "named petitioners will not be removed pursuant to the AEA while their habeas petition is pending." *Id.* at 2. The Court cancelled the hearing at the parties' request because the stipulations and documentation that

– 13 –

the parties provided gave the Court the necessary information to make these jurisdictional determinations.  Dkt. No. 61.

### A.    The Court must determine whether the named petitioners have standing before resolving the motion for class certification.

There are three required elements of Article III standing: injury in fact, causality, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations omitted) (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.

While "[o]rdinarily, of course, . . . any . . . Article III court must be sure of its own jurisdiction before getting to the merits," the Supreme Court has recognized an exception to this rule.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that where issues of class certification are dispositive and "logically antecedent to the existence of any Article III issues, it is appropriate to reach them first."  *Id.* at 612.  In *Amchem* and *Ortiz*, the parties were attempting to settle asbestos-related personal-injury cases through a settlement class action, but there was a concern that the "future plaintiffs" included in the settlement lacked standing because they did not yet have an injury in fact.  *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 2.2 (2024).  But because the Court could reject the settlement based on Rule 23 and the concern was with the class rather than the named plaintiffs themselves, the Rule 23 issues were logically antecedent.  *See id.*

25-10534.578

Since *Amchem* and *Ortiz*, the Fifth Circuit has made clear that when "it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification." *Flecha*, 946 F.3d at 769. "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Id.* Similarly put, when "the standing question would exist whether [the plaintiff] filed [its] claim alone or as part of a class; certification did not create the jurisdictional issue." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002). Conversely, where "it is only the unnamed class members who present a standing problem, then" *Amchem* and *Ortiz* apply. *Flecha*, 946 F.3d at 769. In essence, if rejecting the class under Rule 23 would moot the standing issue, the issues under Rule 23 are logically antecedent. *See id.*

Related to the concept of standing are the doctrines of ripeness and mootness. The ripeness doctrine states that "[a] case is generally ripe if any remaining questions are purely legal ones; conversely a case is not ripe if further factual development is required." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *New Orleans Pub. Serv., Inc. v. Coun. of City of New Orleans*, 833 F.2d 5836, 587 (5th Cir. 1987)). And "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Id.* (quoting *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)). "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . .'" *Nat'l Park Hosp. Ass'n v. Dep't of Int.*, 538 U.S. 803, 808 (2003). Conversely, "a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S.

25-10534.579

486, 496 (1969) (internal quotation marks omitted).  But "[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy."  *Id.* at 497.

### B. Assuming the petition's allegations are true, as the Court must at this stage, the named petitioners' claims are ripe.

Because F.G.M. has been given notice, even if neither he nor an authority signed the notice, the contents of that notice show that F.G.M.'s case is ripe.  F.G.M. received a document, with his name written on it, that stated that "[t]he President has found that Tren de Aragua is perpetrating, attempting, or threatening an invasion or predatory incursion against the territory of the United States, and that Tren de Aragua members are thus Alien Enemies removable under" the AEA.  Dkt. No. 60 at 4.  The notice further stated that F.G.M. had been determined to be eligible for removal under the AEA and "shall be apprehended, restrained, and removed from the United States pursuant to this Warrant of Apprehension and Removal."  *Id.*  Though F.G.M. did not sign the notice, and no official signed the certificate of service on the document, *see id.*, the fact that F.G.M. received this document with his name on it—and which stated that he was eligible for and would be facing removal under the AEA—presents clear evidence at this stage that F.G.M. was facing an imminent injury in fact.

But because the petitioners have not alleged that A.R.P. and W.M.M. have received a notice, the Court must consider whether the claims of A.R.P. and W.M.M. are ripe. Although A.R.P. and W.M.M. have not alleged that they have received any notice of the sort that F.G.M. received, the Court concludes that A.R.P. and W.M.M. have met their burden to show an imminent injury in fact at this stage.  The petition states that "officers at Bluebonnet have issued notices to many men" saying that they are removable under the

25-10534.580

AEA. Dkt. No. 38 at 4. And their particular allegations specific to A.R.P. and W.M.M. also support this inference. According to the petition, "ICE has accused [A.R.P.] of having 'tattoos and associates that indicate membership in the Tren de Aragua gang' in an I-213." *Id.* at 6. Thus, the petition alleges, A.R.P. "is at grave risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador." *Id.* at 6. These allegations support an inference that, like the others around him, A.R.P. is at imminent risk of being removed under the AEA or provided allegedly insufficient process.

The petition makes similar allegations regarding W.M.M. The petition states that authorities arrested W.M.M. for illegal entry into the United States, and at "his hearing on the warrant, the government alleged that W.M.M. is affiliated with TdA" and that "W.M.M. was arrested at a residence where an alleged TdA associate was present." *Id.* Like A.R.P., "W.M.M. was abruptly transferred along with several other Venezuelans to the Bluebonnet Detention Center, where he is now currently detained with Venezuelans transferred from other facilities." *Id.* at 6–7. "W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador." *Id.* at 7.

Again, the respondents say that A.R.P. and W.M.M. are currently being held pursuant to the INA and have not been given notice under the AEA, Dkt. No. 49 at 8, but the respondents' declaration does not refute the specific factual allegations in the petition, *see* Dkt. No. 49-1. And the declaration suggests that the AEA process stopped only due to a litigation hold. Dkt. No. 60 at 1.

At this stage in the proceedings and without any evidence to rebut the petition and its supporting evidence, the Court concludes that A.R.P. and W.M.M. have met their burden to show that they are at imminent risk of being given notice of removal under the AEA and being denied what they contend to be sufficient due process. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). It is a reasonable inference from the statements and factual allegations in the petition at this stage to conclude that A.R.P. and W.M.M. will imminently, but for the various stays and litigation holds in these proceedings, be given notice of removal under the AEA under a procedure that they allege violates their due-process rights.

### C.    The respondents' representations that the named petitioners are currently being held under the INA do not moot the case.

Since the respondents have now stated in their briefing that the petitioners are being held pursuant to the INA, not the AEA, Dkt. No. 49 at 8, the Court must also decide whether the petitioners' claims are moot. Because the respondents' declaration does not verify this assertion, the Court accepts as true the well-pled allegations in the petition. Dkt. No. 49-1. When a defendant presents evidence in the form of declarations that attack a party's standing to sue, the party with the burden to show standing "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990)). But here the respondents

– 18 –

presented no evidence at this stage to suggest that they will not remove F.G.M. or the other petitioners under the AEA, so the heightened standard does not apply to the petitioners.

Moreover, an exception to mootness is the voluntary cessation doctrine.  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).  The party asserting mootness ordinarily bears a heavy burden to show that the case is moot when its voluntary cessation arguably caused the mootness, though courts are justified in giving the government some solicitude based on voluntary governmental cessation. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009).

Here, even giving solicitude to the respondents, the Court cannot conclude at this stage that the case is moot in light of the totality of the respondents' representations.  For voluntary cessation to moot a case, it normally must be absolutely clear that the injury cannot reasonably be expected to recur.  *Id.*  In this case, the respondents say only that the petitioners are "currently" being detained for removal under the INA, Dkt. No. 49 at 8, and their representation is that an official did not execute the notice to F.G.M. because of a "litigation hold," Dkt. No. 60 at 1.  Further, the respondents could not represent to the Court that they would not remove the petitioners under the AEA.  *See id.* at 2.  These representations show that, at this stage in the proceedings, the respondents have not shown that the injury cannot reasonably be expected to recur.  There has been no permanent change in policy or unequivocal representation of a change that would render the case moot, such as in *Sossamon* when a governmental entity revised a policy.  560 F.3d at 325. The Court therefore concludes that, at this stage in the proceedings, the petitioners' claims are not moot.

### D.     The Court need not resolve the respondents' jurisdictional challenges at this stage in the proceedings.

The Court now turns to the respondents' jurisdictional challenges.  There is no doubt that the Court has subject-matter jurisdiction over this case because it is a habeas petition, and the United States is a defendant.  *See* 28 U.S.C. §§ 1346, 2241 *et seq.*  But the respondents argue that the Court lacks jurisdiction to review certain issues and claims in this case.  Dkt. Nos. 19 at 13–19; 49 at 3–5.

Even assuming without deciding that the respondents are correct that certain aspects of the Proclamation are unreviewable, that would not deprive the Court of subject-matter jurisdiction over these claims, and it does not mean that the petitioners lack standing to bring those claims.  A nonjusticiable claim is not the same as a claim over which the Court lacks jurisdiction.  *See Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (Ginsburg, J., concurring) (citing *Joo v. Japan*, 413 F.3d 45, 48 (2005)).  Thus, "[t]hat a plaintiff makes a claim that is not justiciable because committed to executive discretion does not mean that the court lacks subject[-]matter jurisdiction."  *Id.* at 527.  Instead, when faced with a nonjusticiable claim, a court "should dismiss the case for failure to state a claim."  *Id.*  If the respondents are correct that the Court cannot review certain aspects of the Proclamation, then the petitioners may lose on the merits of those related claims, but the Court still possesses jurisdiction over the case and thus does not have to reach these questions before deciding whether to certify a class action.

Further, the respondents' arguments pertaining to this Court's ability to review certain aspects of the case do not deprive the Court of jurisdiction over the case as a whole.  For example, the Court would still have jurisdiction to review the relationship between the AEA and the INA.  And several of the petitioners' claims relate to that relationship, rather

– 20 –

than the President's Proclamation. The petitioners' second claim, for example, asserts that the INA sets the exclusive procedure and statutory protections for any removals, including those authorized under the AEA. *See* Dkt. No. 38 at 19. Whether INA procedures apply to removals under the AEA requires no consideration of the President's Proclamation, such as whether there is an invasion or predatory incursion or whether such invasion or predatory incursion is done by a foreign nation or government. *See* 50 U.S.C. § 21. Similarly, the third claim alleges that the AEA process violates the INA's procedures for applying for asylum. *See* Dkt. No. 38 at 20. And the fifth claim for relief asserts that the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998, which "prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture." *Id.* at 20–21; *see* 8 U.S.C. § 1231.[3]

The Court therefore concludes that it is not necessary at this stage to decide the respondents' jurisdictional arguments because resolving them in favor of the respondents would not result in dismissal of the entire case. Therefore, it cannot be said that the Court has no jurisdiction at all to certify a class. And because the Court declines to certify a class on the basis of Rule 23 and the Court's own discretion, the Court is not exercising jurisdiction in any form that is inconsistent with precedent. *See, e.g.*, *Flecha*, 946 F.3d at 769. The Court thus continues to its analysis under Rule 23.

---

[3] These three claims may not be the only ones that survive if the respondents were correct that the Court lacks jurisdiction over the issues and claims that it alleges. *See* Dkt. No. 49. But the Court provides these examples to show that the respondents' jurisdictional challenges, even if correct, are not dispositive to the entire case and do not prevent the Court from resolving the motion for class certification.

25-10534.585

4.    **The Court denies class certification.**[4]

A.    **Jurists dispute whether class actions are ever appropriate for habeas petitions, but the Court need not resolve that broad question.**

As a preliminary matter, the Court recognizes that there is a significant question whether class certification is ever appropriate for habeas proceedings. To be sure, some circuits have held that class actions in habeas are permissible, though none are binding on this Court. Dkt. No. 55 at 11 (collecting cases). But recent writings have shed doubt on this proposition. Judge Walker noted in his dissent in *J.G.G. v. Trump*, 2025 WL 914682 (D.C. Cir. 2025), that the government had not conceded that the plaintiffs could certify a habeas class. *Id.* at *39 (Walker, J., dissenting). Judge Walker further proposed that class action is perhaps a poor vehicle for the more individualized challenges, such as whether a petitioner is a member of the TdA. *Id.* at *35 n.34. Justice Alito made a similar observation in his dissent to the Supreme Court's order in this very case. *See A.A.R.P.*, 145 S. Ct. at 1036 (noting that the Supreme "Court has never held that class relief may be sought in a habeas proceeding").

Moreover, Justice Thomas recently noted that the Supreme Court "has never addressed whether habeas relief can be pursued in a class action." *Jennings v. Rodriguez*, 583 U.S. 281, 324 (2018) (Thomas, J., concurring). The Fifth Circuit has similarly yet to resolve on this question. *See St. Jules v. Savage*, 512 F.2d 881, 882 n.2 (5th Cir. 1975) (noting that the

---

[4] As this petition, like the many cases around the country, raises numerous questions of first impression, the Court notes that many questions remain unanswered, such as what exactly is reviewable, what relief is available in a habeas petition of this nature, and which questions this Court will decide. The Court assumes for the purpose of deciding this motion alone the answers to some of these questions. Specifically, the Court assumes without deciding at this stage that a permanent injunction and a declaratory judgment are available remedies in habeas and that the Court is the proper body to decide some of these questions rather than an immigration judge or an administrative body that the Attorney General designates.

– 22 –

court's remand was "not to be taken as expressing any view as to the merits of any individual claim or the propriety of the [habeas] class action").

The Court need not decide this broad issue because it can resolve the pending motion on much narrower grounds. For the reasons explained below, class certification is not appropriate in this case, even assuming without deciding that class certification could be appropriate in a habeas proceeding.

**B.    Even if class certification is available in habeas, it is not justified here.**

**i.    W.M.M., A.R.P., and F.G.M.'s amended petition seeks individualized habeas relief.**

Determining whether class certification is appropriate here depends on the nature of this case, the claims asserted, and the relief requested. On their face, many of the petitioners' claims and requests for relief seek only the opportunity to make certain arguments, alleging that the AEA process deprives them of an opportunity to make such arguments and claims. *See* Dkt. No. 38 at 18–23. For example, the third claim for relief concerns the process of applying for asylum and alleges that the current AEA process prevents putative class members from applying for asylum. *Id.* at 19–20. Similarly, the fourth claim for relief provides that the AEA process "does not provide adequate safeguards to ensure that Petitioners and the class are not returned to a country where it is more likely than not that they would face persecution." *Id.* The fifth claim for relief makes a similar procedural argument, *id.* at 20–21, as does the sixth and seventh, *id.* at 20–22. While the named petitioners do mention that they have pending asylum petitions, *id.* at 5–7, the petition does not particularly state that the petitioners are challenging their potential removal on the grounds that they would face persecution for similar reasons or make similar challenges that the petition alleges cannot be asserted under the current AEA process. The

– 23 –

Court must preliminarily determine whether the petition fairly includes such individualized claims before deciding whether to certify a class.

For multiple reasons, the Court understands the petitioners to assert, in addition to their structural and procedural arguments, individualized habeas claims. First, the Supreme Court has made clear that the core of these actions is habeas. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025). And it is widely recognized that habeas actions are highly individualized. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008). This action is not an APA suit or general civil suit to *effectuate* habeas. And the petition in this case recognizes this reality. The eighth claim for relief alleges a violation of habeas corpus rights and seeks a writ of habeas corpus, though the petitioners call it "a writ of habeas corpus to Petitioners and the Petitioner Class that enjoins Respondents from removing them pursuant to the Proclamation." Dkt. No. 38 at 22–23. To be sure, the petition also includes a request "for such further relief as the Court deems just, equitable, and appropriate," but that catch-all request does not make the suit any less individualized. *Id.* at 23.

Second, if the Court were to construe the petition as not bringing the actual, individual challenges that the petitioners allegedly lack sufficient notice and process, then they would likely not have standing to make these due-process arguments. The technical language of their claims is procedural, and "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). If the petitioners are right that they are deprived the opportunity to challenge their removal on these grounds, but they have no intention of pursuing those claims, then they

25-10534.588

are at no risk of an injury in fact.  And in light of the Supreme Court's instructions, *J.G.G.*, 145 S. Ct. at 1005–06, this proceeding is where they must challenge their removal.

Third, serious adverse consequences could result to the petitioners if the Court construed the claims as not individualized.  In light of the fact that the core of this case is a habeas petition and not a traditional civil suit, and the fact that a petition need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, the Court construes the petition as the petitioners' request to challenge their removal based on the grounds that they may face persecution, that they are not eligible for removal under the AEA because they are not members of TdA, and the other individualized claims that the petitioners are seeking.  The Court does this for the petitioners' benefit.  Since this is a habeas petition, the petitioners have an obligation to bring all of their claims in one proceeding—this one.  *See Infra* Analysis § 4.B.iv.  There is no bifurcation of proceedings where the petitioner may bring broad claims about AEA procedure and then file another habeas petition to challenge the merits of his removal under the AEA.  Were the petitioners not to bring these claims regarding the merits of their personal removal, they would be at serious risk of waiving them under the doctrine of collateral estoppel because they could have brought these claims in the instant habeas petition.

Finally, the petitioners' allegations are individualized and assert claims unique to the petitioners.  The petitioners seek habeas relief and make plain statements of fact that suggest that the petitioners are making individualized challenges to seek relief based on facts specific to each petitioner.  For example, W.M.M. asserts that he "fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the Maduro regime."  Dkt. No. 38 at 6.  Further, the petition includes a request for

relief to enjoin the respondents from removing the petitioners pursuant to the Proclamation, which can fairly be interpreted as reaching the merits of their habeas claims.  These statements, combined with the nature of the petition and the claims and requests for relief, lead the Court when construing the petition as a whole to interpret the petition in this manner.  The Court thus analyzes the class petition under this framework.  And if it did not, then the Court would be forced to dismiss many of the claims for lack of standing and still deny the motion for class certification because the failure to pursue these claims could have tremendous and devastating impacts on the putative class members.  *See infra* Analysis § 4.B.iv.  Thus, although many of the claims and requested relief appear on their face to be broad, procedural arguments that may be appropriate for classwide resolution, the Court cannot ignore the fact that this case is a habeas case and not a civil case under the APA to effectuate their ability to seek habeas relief.

### ii.    Class certification must fail because the named petitioners are not typical of the claims or defenses of the class.

The Court finds that the putative class representatives in this case are not sufficiently typical of the putative class members.  "[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  *Angell*, 67 F.4th at 736 (internal quotation marks omitted) (quoting *Stirman*, 280 F.3d at 562).  The "critical inquiry is whether the [named petitioners'] claims have the same essential characteristics of those of the putative class."  *Id.* (brackets original) (quoting *Stirman*, 280 F.3d at 562).  "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."  *Id.* (quoting *Stirman*, 280 F.3d at 562).

25-10534.590

Here, the petitioners cannot meet this standard because they bring many independent claims that individual circumstances will drive.  Ignoring this reality, the petitioners focus almost exclusively on their first claim that the Proclamation is invalid.  But the Court cannot assume that this argument will prevail and ignore the several additional claims.  And those claims are highly individualized and would prove unworkable as a class due to atypicality.

Specifically, there are numerous meaningful differences between the petitioners and the putative class.  First, while the three petitioners have filed asylum applications, *see* Dkt. No. 38 at 5–6, the Court has no way of knowing how many putative class members have pending asylum applications or intend to file asylum applications.  This distinction is material.  If the petitioners do not prevail on their first claim regarding the President's Proclamation, *see id.* at 18–19, but do prevail on their third claim for relief regarding the application of the INA's asylum provisions, then the due process required for members of the class would differ depending on whether the member of the putative class seeks to file or has already filed an asylum application.  In other words, while those putative class members who have filed asylum applications would share the same legal theory as to why the Proclamation is invalid as applied to them, only some members of the class—right now, an unknown portion—would be able to assert such a theory.  A petitioner's claim asserting that his asylum application protects him from removal under the AEA is not typical of a member of the putative class who cannot assert that legal theory.  *See Angell*, 67 F.4th at 736.  Thus, the fact that not all putative class members have filed asylum applications and may choose not to file such applications creates meaningful atypicality.

Other claims in the petition are also necessarily fact-specific regardless of the petitioners' legal theory.  And while "factual differences will not defeat typicality," *Stirman*, 280 F.3d at 562, these factual differences are fatal to typicality because they render the remedial theory distinct for all but one claim.  For example, if the Court were to agree with the petitioners on their fourth claim that they are entitled to seek withholding under the INA because they are "more likely than not [to] . . . face persecution" where they are to be removed, then individual analysis would be paramount, and no one petitioner could be meaningfully typical with another.  Dkt. No. 38 at 20.  Such analysis would require a fact-intensive determination as to whether each member of the putative class could be removed depending on the individual claims and circumstances, including the country to which he would be removed.  *See Manjee v. Holder*, 544 F. App'x 571, 575 (5th Cir. 2013) ("Whether a petition has shown eligibility for withholding of removal is a factual determination.") (citing *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)).  As a result, these factual differences mean that the named petitioners and putative class members do not share the same "essential characteristics."  *Stirman*, 280 F.3d at 562.

The petitioners' fifth claim results in similar atypicality.  That claim alleges that the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998 because that Act "prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture."  Dkt. No. 38 at 20–21.  Should the petitioners prevail on this claim, the Court would then have to consider whether it is more likely than not that each petitioner would face torture.  These questions are necessarily fact-intensive.  W.M.M., for example, asserts that he "fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the

25-10534.592

Maduro regime." *Id.* at 6.  Situations like this will be particular to each petitioner, and the Court would have to assess individually the potential for torture.  No named petitioner can be meaningfully typical to the putative class members when each petitioner's story is likely unique.

The petitioners' sixth claim for relief likewise shows the individualized nature of habeas and these proceedings.  The sixth claim states that the AEA process is ultra vires because it categorically declares that all persons subject to the Proclamation are chargeable with actual hostility or other crime against public safety.  Dkt. No. 38 at 21.  If the petitioners prevail on this claim, then the Court will have to decide whether each individual member of the putative class is chargeable with actual hostility or other crime against the public safety.  *Id.*; *see* 50 U.S.C. § 22.  As the petitioners suggest, this approach would require "individualized assessments."  Dkt. No. 38 at 21.  It may very well be possible that some but not all of the putative class members are properly chargeable with actual hostility or other crime against the public safety.  When conducting these individualized assessments, factual differences between the parties will be paramount.  The Court will have to determine based on evidence that the respondents present whether each individual is chargeable with such offenses.

Similarly, the petitioners' seventh claim bolsters the Court's conclusion.  The seventh claim is for a violation of due process under the Fifth Amendment.  Dkt. No. 21–22.  But each petitioner, with perhaps different pending immigration or criminal proceedings, may need different relief to effectuate due process.  The named petitioners alone are meaningfully distinct on this matter.  A.R.P. currently has claims outside of this Court where he "is currently seeking asylum, withholding, and protecting under the Convention

– 29 –

Against Torture." *Id.* at 5. W.M.M. has criminal proceedings pending for illegal entry into the United States. *Id.* at 6. Other putative class members may have Temporary Protected Status. *See infra* Analysis § 4.B.iii. Some, like the petitioners, may already have counsel. *See generally* Dkt. No. 38. Others do not. *See* Dkt. No. 40 at 14. And it must be emphasized that "[t]he process sufficient to satisfy the due process requirement depends on the facts and circumstances of an individual case." *Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245 (5th Cir. 1975). Simply declaring that due process has been violated is only the beginning of the inquiry, not the end. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). And "interpretation and application of the Due Process Clause are intensely practical matters[;] . . the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Goss v. Lopez*, 419 U.S. 565, 577 (1975) (cleaned up) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Certain individuals or classes of individuals may be entitled to more process than others in light of their circumstances.

The First Circuit's opinion in *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021), supports this conclusion. In that case, the district court certified a "class of noncitizens who have been detained by . . . [ICE] pursuant to 8 U.S.C. § 1226(c) for more than six months without a bond hearing." *Id.* at 4. The court determined that since "six months of detention did not on its own necessarily trigger a constitutional right to a reasonableness hearing or bond hearing" for certain persons, "any such relief must be adjudicated on an individual basis." *Id.* at 9. Because of the individual analysis necessary, the court concluded that there was no authority to support "using a properly certified class as a bootstrap to adjudicate, on a

class-wide basis, claims that hinge on the individual circumstances of each class member."
*Id.* at 11.  The court thus reversed the relief that the district court granted for those claims
that hinged on the individual circumstances of each class member.  *Id.* at 12.  This reasoning
shows that similar treatment—being detained and awaiting a hearing in accordance with
due process—is insufficient to support class-wide adjudication because what process is
actually due is individualized.[5]

    And the eighth claim—violation of habeas corpus—may present the most
individualized claims in this case where there will likely be no meaningful similarity among
class members.  If the petitioners do not prevail on their first claim, then the Court will have
to determine for each petitioner whether they are "Venezuelan citizens 14 years of age or
older who are members of TdA, are within the United States, and are not actually
naturalized or lawful permanent residents of the United States."  90 Fed. Reg. at 13034.
The petition shows that the respondents have different evidence and theories for why each
petitioner is a member of TdA, and the respondents will need to present particularized
evidence for each detainee to determine their citizenship, age, and affiliation with the TdA.
*See* Dkt. No. 38 at 5–7.  No petitioner is typical for these highly individualized arguments,
yet these arguments may very well turn out to be dispositive.  And as the Supreme Court
has explained, habeas is the core of these proceedings, so it would be unusual to permit
atypical petitioners to seek classwide representation.  *See J.G.G.*, 145 S. Ct. at 1005.

    The Supreme Court's decision in *Falcon* is instructive here.  In that case, the named
plaintiff worked for the petitioners and was refused multiple promotions.  *Falcon*, 457 U.S.

---

[5] The district court had certified the class under Rule 23(b)(2).  *Reid*, 17 F.4th at 10.  The reasoning
in that case thus supports the Court's conclusion as to the Rule 23(b)(2) requirements as well as
typicality.

at 149.  The named plaintiff alleged that the defendant passed him "over for promotion because of his national origin and that [the defendant's] promotion policy operated against Mexican-Americans as a class."  *Id.*  He brought suit under this theory under Federal Rule of Civil Procedure 23(b)(2) on behalf of a class of other persons similarly situated.  *Id.* at 150.  The putative class was comprised of Mexican-Americans who were or may be employed by the defendant and who had or would continue to be adversely affected by the defendant's practices.  *Id.* at 150–51.  The district court held a trial on the liability issues and entered separate findings of fact and conclusions of law for the named plaintiff and the class. *Id.* at 152.

The Supreme Court held that class certification was inappropriate.  *Id.* at 161.  The Supreme Court explained that "suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs" and that typicality was typically present.  *Id.* at 157 (internal quotation marks omitted) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977)).  But nonetheless, the Supreme Court explained, "careful attention to the requirements of [Rule] 23 remains nonetheless indispensable."  *Id.* (internal quotation marks omitted) (quoting *E. Tex. Motor Freight Sys.*, 431 U.S. at 405).  The Supreme Court noted that "there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds . . . and (b) the existence of a class of persons who have suffered the same injury as that individual, such that . . . the individual's claim will be typical of the class claims."  *Id.*  To bridge that gap, the named petitioner needed to justify additional inferences.  *Id.*

*Falcon* thus makes clear that the allegation of similar treatment is insufficient to establish typicality.  The injuries themselves must also be typical.  *Id.* at 156–57.  And the

Court must pay "careful attention" to this requirement. *Id.* at 157 (quoting *E. Tex. Motor Freight Sys.*, 431 U.S. at 405). As the above analysis shows, the injuries here vary wildly between the petitioners themselves and between the petitioners and the putative class members.

Thus, the fact that the named petitioners and the class may be denied due process in the abstract is insufficient to create meaningful typicality when due process is by its very nature individualized. It thus cannot be said that there is typicality among the named petitioners themselves or among the named petitioners and the putative class members because they lack the same essential characteristics.[6]

### iii. Class certification here does not meet the requirements of Rule 23(b)(2).

Even if the petitioners had met their burden to satisfy Rule 23(a)'s requirements, class certification remains inappropriate because they fail to meet the requirements of Rule 23(b)(2). Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has explained that "Rule 23(b)(2) applies only when a single injunction or a declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. It "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory

---

[6] As the Supreme Court has recognized, the commonality and typicality requirements of Rule 23(a) "tend to merge." *Wal-Mart Stores*, 465 U.S. at 349 n.5. While the Court does not independently assess the commonality requirement in this Order, the Court notes that for the same reasons that the named petitioners are not typical, the lack of essential characteristics similarly undermines the petitioners' contention that their claims are common.

25-10534.597

judgment against the defendant." *Id.* Here, the petitioners fail to meet this requirement because declaratory relief may not be appropriate for the class as a whole.

The Court first notes what is not relevant to its analysis. The petitioners sought class certification and appointment of class counsel in tandem with their first emergency motion for a temporary restraining order. They did so in an effort to prevent the respondents from removing all members of the class, perhaps especially those who had not filed habeas petitions. *See* Dkt. Nos. 2; 3. A temporary restraining order or a preliminary injunction is neither "final injunctive relief [n]or corresponding declaratory relief." *See* Fed. R. Civ. P. 23(b)(2). Because Rule 23(b)(2) focuses on these two forms of relief, both final, the Court cannot and does not consider any efficiencies or justifications that relate only to preliminary, temporary relief. Class certification is a tool to promote the efficiency and economy of litigation throughout the entire litigation, and the Court must be satisfied that the certification of a class is appropriate for the entire litigation, not just because it may be an effective or useful tool for preliminary relief. *See, e.g.*, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983) (noting that "the principal purpose of the class action procedure" is the "promotion of efficiency and economy of litigation"); *Madison*, 637 F.3d at 556 (explaining that the Court must be mindful of the practicalities of trying the particular case as a class action).

Next, the fact that the petitioners are seeking individualized habeas relief, Dkt. No. 38 at 28–29, makes certification under Rule 23(b)(2) inappropriate. As the Supreme Court explained in *Wal-Mart Stores*, "[p]ermitting the combination of individualized and classwide relief in a (b)(2) class is . . . inconsistent with the structure of Rule 23(b)." 564 U.S. at 361. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide

25-10534.598

relief to each member of the class," and "[i]t does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* at 360. Rule 23(b)(2) focuses on final injunctions and declaratory judgments, not other forms of relief that are individualized.

Here, cases challenging AEA removal sound in habeas. *J.G.G.*, 145 S. Ct. at 1005. And the specific form of habeas relief may be different for different petitioners. Some petitioners, like A.R.P., may not be entitled to a writ of habeas ordering their complete release if they are also detained pursuant to other provisions of law. *See* Dkt. No. 38 at 5–6. Other petitioners may not have been in custody pending other removal proceedings, perhaps by discretion of a court or perhaps by operation of law. For example, there may be putative class members who assert that they are entitled to a writ of habeas corpus to release them from custody because of temporary protected status. *See* 8 U.S.C. § 1254a ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."). If AEA detention is detention "on the basis of the alien's immigration status" and such a detainee were to prevail on the merits, then that writ of habeas corpus would be different than the writ provided to the named petitioners. As the Supreme Court explained in *J.G.G.*, "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." 145 S. Ct. at 1005 (brackets in original) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)).

Further, the scope of the class is overbroad. It includes individuals across the Northern District of Texas, which encompasses various facilities in which the detainees reside. Dkt. No. 39 at 1. But the proper respondent in a habeas petition is the person with

custody over the petitioner.  28 U.S.C. § 2422.  There is only one person with custody over a petitioner at a time, the immediate custodian.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  The petitioners here list administrators and wardens from four different facilities.  *See* Dkt. No. 38 at 1.  Under the immediate-custodian rule, the Court would thus have to fashion individual writs of habeas corpus for the putative class members or, assuming without deciding that the Court has the power to do so, issue writs to subgroups.  The petitioners do not seem to contest that the remedy of a writ of habeas corpus would need to be against the proper respondent.  *See* Dkt. No. 55 at 9–10.  They cite two cases from the Supreme Court involving broader habeas classes, but neither case involved the question of whether such certification was proper.  *See id.* at 10 (first citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021); then *Nielson v. Preap*, 586 U.S. 392, 400–01 (2019)).  And the Supreme Court has not resolved this question.  *See A.A.R.P.*, 145 S. Ct. at 1036 (Alito, J., dissenting).  In light of the immediate-custodian rule, it cannot be said that a single remedy would be appropriate for the class as Rule 23(b)(2) requires.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 360.

        And the fact that, like injunctions and declaratory judgments, habeas is an equitable remedy, *Schlup v. Delo*, 513 U.S. 298, 319 (1995), does not mean that it may be neatly folded into a Rule 23(b)(2) petition.  In *Wal-Mart Stores*, the additional remedy sought was also equitable in nature—backpay—but the Supreme Court still held that the requested individualized relief made the case improper for a Rule 23(b)(2) class.  564 U.S. at 365.  And while the Supreme Court may have left open the possibility for incidental individual relief to be consistent with a Rule 23(b)(2) class, *see id.* at 365–66, this potential exception

would not apply here.  Habeas relief is not incidental in this case.  It is the core of this case.
*See J.G.G.*, 145 S. Ct. at 1005–06.

Moreover, given the many claims asserted, a single injunction or declaratory judgment may not be appropriate here.  Of course, the first claim—that the Proclamation is ultra vires because there is neither a "declared war" nor a "perpetrated, attempted, or threatened invasion or predatory incursion against the . . . United States by a foreign nation or government," Dkt. No. 38 at 18 (internal quotation marks omitted) (quoting 50 U.S.C. § 21)—may render classwide relief appropriate, but that is only one of many possibilities.  As the Court previously explained, many of the other potential outcomes in this case would require individualized determinations and relief.  *See supra* Analysis § 4.B.ii.

The petitioners' sixth claim for relief, for example, demonstrates the individualized nature of habeas and these proceedings.  The sixth claim states that the AEA process is ultra vires because it categorically declares that all persons subject to the Proclamation are chargeable with actual hostility or other crime against public safety.  Dkt. No. 38 at 21.  If the petitioners prevail on the merits of this claim, then the Court will have to decide whether each individual class member is chargeable with actual hostility or other crime against the public safety.  *Id.*; *see* 50 U.S.C. § 22.  Individualized determinations would require different relief and due process because only those not so chargeable would be "allowed the full time by treaty to depart or a reasonable time in which to settle their affairs before departing." Dkt. No. 38 at 21.  For those given time to depart or settle their affairs, they may be entitled to a longer injunction, a habeas writ to release them from custody, or a writ that delays any removal.  Thus, this claim highlights why, were the petitioners to prevail on this claim, the Court would have to undergo individualized assessments and grant individualized relief.

25-10534.601

In light of the diverse questions that the Court may need to decide and the real potential for varying types of procedures and opportunities for each petitioner, the Court likewise finds that it would be inappropriate to certify a class relating to the seventh claim— violation of due process under the Fifth Amendment. *See* Dkt. No. 38 at 22. The Supreme Court has repeatedly stressed that due process is flexible and "calls for such procedural protections as the particular situation demands." *See Jennings*, 583 U.S. at 314 (quoting *Morrissey*, 480 U.S. at 481); *see also Landon v. Plascencia*, 459 U.S. 32, 34 (1982). There are numerous claims in this case. Some are broad and would likely result in the same relief to all class members if the petitioners prevail on the merits, such as the first claim. *See* Dkt. No. 38 at 18; 50 U.S.C. § 21. But many of the other claims, if successful on the merits, may result in different procedures and protections, and thus different remedies.

The potentially individualized nature of these habeas claims shows that the motion for class certification does not meet "[t]he key to the (b)(2) class"—"the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. This "key" applies in situations where, unlike those present here, the party against the class is acting in a way that is so structural or otherwise broad as to require single injunctive or declaratory relief if there is to be any effective relief, such as racial segregation. *See Wal-Mart Stores*, 564 U.S. at 361. Perhaps the respondents' conduct is unlawful as to all putative class members, such as if the petitioners are correct that the Proclamation is ultra vires. *See* Dkt. No. 38 at 18–19. But if the petitioners lose on the merits of that claim, then relief may be appropriate only to some members of the class. But the Court cannot say that the same relief is appropriate for every putative class member, and the Court could grant individual relief to particular petitioners.

Again, due process is individualized, *see Jennings*, 583 U.S. at 314, and there is no reason that the Court must grant relief to all or none.

In addition, injunctive and declaratory relief may make sense only insofar as the petitioners may prevail on their broad claims. In some cases, if the petitioners lose on the merits, then there may be few to no issues left to be resolved—the Court would enter judgment against the class members, and the case would come to a close. Here, however, if the petitioners do not prevail on the merits of the first claim, then there is much more to do. *See supra* Analysis § 4.B.ii; *infra* Analysis § 4.B.iv. And even after resolving the broad claims in the petition, the Court must decide the habeas petitions themselves, and whether a habeas writ is appropriate may turn on whether a petitioner is over the age of fourteen, not a naturalized citizen, and a member of the TdA. *See* 50 U.S.C. § 21. Classwide relief would not be appropriate for such individualized, fact-specific determinations. And either these fact-specific claims are part of the petition, and the Court must resolve them, or the petitioners are not challenging these facts, which will make them atypical with the putative class members and could cause grave harm to the unnamed class members, *see infra* Analysis § 4.B.iv.

Finally, the Court notes that the petitioners seek broad relief, such as an injunction enjoining respondents "from applying the Proclamation to Petitioners and the Petitioner Class without providing 30-day notice and an opportunity to respond to the designation prior to the removal date." Dkt. No. 38 at 23 (but not against the President, *see id.* at 18). But as a district court charged with the important, but limited, responsibility of resolving disputes between the parties before it, the Court is not a lawmaker or an administrative agency. It does not codify brightline rules for large swaths of people. The Court's role in

the separation of powers is limited to deciding issues between parties. *See* U.S. Const. Art. III. And although the Court may grant injunctive relief and declaratory judgments, it must do so only with respect to its duty to decide the issues before the Court. The Court in this case would, assuming the petitioners prevail on the merits in whole or in part, fashion a remedy that resolves the issues relating to the petitioners before the Court, rather than promulgate a general regulatory or administrative scheme to govern an entire area of immigration law. After all, due process is highly individualized, and the time or process that certain petitioners may need to satisfy the requirements of due process may be different than others. *See Jennings*, 583 U.S. at 314. The Court thus considers this motion for class certification and appointment of class counsel while keeping in mind its role in the separation of powers, recognizing with due respect for this separation and the Constitution that the Court must decide cases and fashion relief as necessary and no further.[7]

> ### iv. Even if Rule 23 were satisfied, the Court would not exercise its discretion to certify a class action.

Even if petitioners met the baseline requirements of Rule 23, the Court would still exercise its discretion to decline to certify a class. In considering the various possibilities of how this case would proceed on the merits, the Court has emphasized the many possible outcomes. The Court could be called on to decide numerous individual questions of fact and craft individual remedies based on the circumstances and preferences of the individual petitioners—a situation inconsistent with the design of class actions. The Court further concludes that a Rule 23(b)(2) class would be inequitable in this habeas context because

---

[7] Because the Court finds that the petitioners are not typical and that the petitioners have not met their burden to show that a Rule 23(b)(2) class is appropriate, the Court does not address the other prerequisites of Rule 23(a).

such a class is mandatory, preventing class members from opting out and obtaining the opportunity to pursue their habeas petitions with their own arguments. Additionally, the petitioners' atypicality and the Court's inability to satisfy Rule 23(b)(2)'s requirement of uniform relief equally warrant the Court's decision not to exercise its discretion to certify a class. Class certification is a tool to promote the efficiency and economy of litigation throughout the entire case. But the meaningfully atypical analysis and remedies that the Court may have to implement here make even a technically available class certification ill-advised. *See, e.g.*, *Crown, Cork & Seal Co.*, 462 U.S. at 349; *supra* Analysis § 4.ii–iii.

Given the equitable nature of class actions, the Court believes that it would be inappropriate to certify a class in this case under Rule 23(b)(2). *See Wal-Mart Stores*, 564 U.S. at 361; *Amchem*, 521 U.S. at 613. This type of class is a mandatory one—there would be no opportunity for members to opt out. *Wal-Mart Stores*, 465 U.S. at 362. As explained below, *infra* Analysis § 4.B.v, habeas is important and personal, and individuals should get the opportunity to decide whether they wish to file habeas petitions and how to pursue their liberty. For example, perhaps an individual currently in custody has a strong factual defense against deportation even if they were subject to the Proclamation and the AEA procedures were entirely appropriate. Consider, for example, a petitioner who is a citizen or only thirteen years old. That petitioner may seek to have the Court assume without deciding that the Proclamation is valid, sidestepping the complicated claims presented in this putative class petition and instead pursue an immediate hearing on the simple fact of their citizenship or age. In the event of a mandatory class, the petitioner may be forced to wait for these more complicated issues to be resolved. And if another interlocutory appeal took place in this case, those issues not strictly necessary to the resolution of this

– 41 –

hypothetical petitioner's claim would be further delayed.  There could be no carve-out for

that petitioner, since the class is mandatory, and "[p]ermitting the combination of

individualized and classwide relief in a (b)(2) class is also inconsistent with the structure of

Rule 23(b)(2)."  *Wal-Mart Stores*, 564 U.S. at 361.  In sum, the mandatory nature of this type

of class is unfair and inequitable to those who may wish to handle their habeas cases in a

different way, or perhaps have no habeas case at all.

    Concerns regarding res judicata also make class certification potentially harmful to

unnamed class members.  As the Court mentioned above, *see supra* Analysis § 4.B.ii–iii,

there are many potential differences between the named petitioners and the putative class

members because the putative class members may have additional claims to challenge their

AEA detention.  "Basic principles of res judicata (merger and bar or claim preclusion) and

collateral estoppel (issue preclusion) apply" to class members in subsequent litigation.

*Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).  And "a final judgment

forecloses successive litigation of the very same claim, whether or not relitigation of the

claim raises the same issues as the earlier suit."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)

(internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748

(2001)).  Claim preclusion applies to all issues that "could have been raised and decided in a

prior action," meaning all claims arising from the same transaction or involving a common

nucleus of operative facts.  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S.

405, 412 (2020).  And these broad claims against removal arise under the same transaction

and group of facts as any other conceivable claims and defenses regarding putative class

members' detention or removal at this time.  So if the petitioners were to fail on their claims

and habeas were denied, class members could very well be barred under these principles

from challenging their confinement or removal on other grounds— like a hypothetical petitioner who has temporary protected status—that they could have pursued in individual petitions.  This potential harm to class members further warrants prudential denial of the motion for class certification and appointment of class counsel.

Additionally, while the class-certification stage is not "a dress rehearsal for the merits," "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (brackets original) (quoting *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).  The potential for a Rule 23(b)(2) class action depends entirely upon the Court's ability to enter a declaratory judgment or injunctive relief in this case.  And the Court has serious concerns about its ability to do so.  "[T]he sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979).  Here, the petitioners may bring their claims only in habeas. *J.G.G.*, 145 S. Ct. at 1005–06.  And the Supreme Court has previously held that injunctive and declaratory relief is not available in habeas cases.  In *Heikkila v. Barber*, 345 U.S. 229 (1953), an alien whom the Attorney General had ordered deported brought an action against an officer of the Immigration and Nationalization Service "seeking 'a review of agency action' as well as injunctive and declaratory relief." *Id.* at 230.  The Supreme Court explained that it was "clear that prior to the Administrative Procedure Act[,] habeas corpus was the only remedy by which deportation orders could be challenged in the courts" and that courts had "consistently rejected attempts to use injunctions, declaratory judgments and other types of relief for this purpose." *Id.*  The Supreme Court then rejected the

contention that the Administrative Procedure Act expanded the reviewability of agency action or the remedies available in habeas.  *See id.* at 235–36.  The Court reaffirmed the rule that "recognizes the legislative power to prescribe applicable procedures for those who would contest deportation orders."  *Id.* at 237.  "Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases in order to minimize opportunities for repetitious litigation and consequent delays as well as to avoid possible venue difficulties connected with any other type of action."  *Id.*

The Supreme Court has similarly suggested in other cases that a writ of habeas corpus is the sole remedy available here.  In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a prisoner attempts to bring a claim under 42 U.S.C. § 1983 to challenge "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id.* at 500.  And in *J.G.G.*, the Court explained that AEA petitioners seek relief that "necessarily implies the invalidity of their confinement and removal under the AEA, [so] their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas."  145 S. Ct. at 1005 (internal quotation marks omitted) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). Because here the claims fall within the core of the writ of habeas corpus, the Court is cognizant that individual writs of habeas corpus may be the only remedies available.  The Court of course does not decide the merits of this question at this stage; merits briefing will help to resolve this question.  And the Court would decline to certify a class for the other reasons explained in this portion of the Order even if the Court were certain that these

remedies were available.  But the Court sees the issue of what remedies are available as an

open question, and this uncertainty further warrants hesitation when deciding whether to

certify this class.

> **v.    The Court declines to use general equitable principles to certify a class outside of Rule 23.**

For the same reasons that the Court would decline to exercise its discretion to certify

a class action even if the petitioners did meet the requirements of Rule 23, the Court

declines to exercise its discretion to create a Rule 23-like class under equitable principles or

the All Writs Act even if it could do so.  And though the Court makes this generous

assumption, the Court nonetheless expresses its skepticism that it could "use Rule 23 as a

guidepost to certify a class under principles of habeas jurisdiction and equity."  Dkt. No. 40

at 4.  A chimerical Rule 23-equity-habeas hybrid of a class is inconsistent with the plain

language of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure are just that—rules of procedure, not

guideposts.  Rule 23(a)'s language is clear: "[o]ne or more members of a class may sue or be

sued as representative parties on behalf of a member only if" the four prerequisites are met.

Fed. R. Civ. P. 23(a).  It is well-established that the federal rules are just as binding as

statutes.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  As such, district

courts must follow the requirements of the federal rules and cannot use their inherent

powers to circumvent these requirements.  *See id.*  And Rule 23's use of the phrase "only if"

means that these prerequisites are necessary conditions, not "guideposts."  *See* Fed. R. Civ.

P. 23(a); *cf. United States v. Pulsifer*, 601 U.S. 124, 136–138 (interpreting similar "only if"

language in 18 U.S.C. § 3553(f)(1)).  The phrase "only if" has an understood, logical

meaning.  Only if the putative class meets the prerequisites is class certification appropriate.

Thus, if the putative class does not meet the prerequisites, then class certification is not appropriate.

The fact that habeas is an equitable remedy does not change this analysis. The Federal Rules of Civil Procedure apply equally when the Court is sitting in equity. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."). Rule 81 states that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). The petitioners have not identified, and the Court does not see, any special rule in these identified exceptions that would expand the Court's power to eschew the requirements of Rule 23(a).

Further, the petitioners may contend that the Court could certify a class, decide the broad claims, and then perhaps amend or decertify the class if resolution of those questions does not resolve the petitions. *See Amgen*, 568 U.S. at 457 n.9 ("[C]ertifications are not frozen once made."). But the fact that the Court could end up redefining, subclassifying, or even decertifying the class, *see Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983), does not mean that the Court should certify a class on the chance that the plaintiffs prevail on the one theory that would reasonably result in class-wide relief. The Court cannot certify a class on the chance that one theory is correct, and later decertify or redefine the class, because it must think carefully about how the case will be managed and potentially tried, keeping in mind the possible outcomes. *See Madison*, 637 F.3d at 555–56; *Falcon*, 457 U.S. at 161. The Court cannot and will not certify the class, see whether the Proclamation is facially valid,

and then decertify if that claim does not prevail or attempt to completely rework the class through further review and the creation of subclasses as the case progresses. Not only would this action be inconsistent with precedent, but it would also add unnecessary chaos, confusion, and delay to these proceedings. *See Madison*, 637 F.3d at 556. And in light of the complicated legal questions, the speed of these proceedings, and the fact that "members of the proposed class are in detention, often lack immigration counsel, and are indigent," Dkt. No. 40 at 14, the Court finds that creating and potentially destroying a class, or continuously tinkering with the class, has the real potential to confuse class members. The class members may be unable to follow the various procedural and technical maneuvers, and they may miss their opportunity to seek relief if the Court had to decertify a class.

Rather, the Court finds that a clear message to those putative class members will reduce the risks of confusion and delay. As one member of the Supreme Court has explained, the choice for how to proceed in these cases was between "individual habeas petitions filed in district courts across the country or a class action filed in the District of Columbia." *J.G.G.*, 145 S. Ct. at 1015 (Sotomayor, J., dissenting). The Supreme Court ruled out the latter, *id.* at 1005, and the Court today makes clear that cases in this Court will proceed as members of the Supreme Court suggested—individual habeas petitions filed in district courts. The Court is accustomed to a voluminous docket and has committed to resolving these individual cases with the balance of speed and care that they require, allowing individual detainees to decide whether to file habeas petitions and how they wish to proceed with their petitions. The Northern District of Texas has simplified forms for individuals to file these petitions, and the Supreme Court has made clear that detainees are entitled to notice and an opportunity to challenge their removal. *Id.* at 1006. The Court

25-10534.611

believes that this procedure is sufficient to afford the rights guaranteed to detainees while remaining faithful to the requirements of Rule 23, preventing confusion and delay, and preserving the rights of the putative class members to make their own decisions. With all of this in mind, the Court declines to certify the class.

5.    **Conclusion**

This litigation may very well require individualized analysis and remedies for each habeas petition. The interests of justice require the Court to allow individual detainees to decide for themselves whether to file habeas petitions, and, if so, what claims they wish to pursue. Only one possibility in this case could result in classwide relief—all of the others result in parsing out individual claims and facts. Class actions may never be appropriate in habeas proceedings, but they are certainly not appropriate in these proceedings where individual, fact-intensive questions may predominate the requested classwide relief. The Court, with respect for the importance of these issues and following the case law that requires it to consider these possibilities, denies the motion for class certification and appointment of class counsel (Dkt. No. 39). But because the Supreme Court has granted relief to the putative class pending further order from that Court, the Court stays the effect of this Order pending further action from the Supreme Court.

So ordered on May 9, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

25-10534.612

**TAB 8**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| W.M.M., on his own behalf and on behalf of all others similarly situated, et al., | |
| Petitioners-Plaintiffs, | |
| v. | No. 1:25-CV-059-H |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Respondents-Defendants. | |

## ORDER

Before the Court is the petitioners' motion for reconsideration of the Court's previous order denying class certification. Dkt. No. 68. In the Court's order denying class certification (Dkt. No. 67), the Court stated that "[i]n the event that the Supreme Court grants the [petitioners'] pending petition for a writ of certiorari, this Order is automatically vacated." Dkt. No. 67 at 2. The Supreme Court subsequently granted certiorari, thus vacating the Court's order. *See A.A.R.P. v. Trump*, No. 24A1007, 24-1177, 2025 WL 1417281, at *3 n.1 (U.S. May 16, 2025).

The Supreme Court also remanded the case to the Fifth Circuit. *Id.* at *4. The Fifth Circuit now has jurisdiction over the matters appealed. *See Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007) (noting that an interlocutory appeal divests a district court of jurisdiction over those aspects of the case on appeal). In their notice of appeal, the petitioners appealed the Court's order denying the first motion for a temporary restraining order (Dkt. No. 27), as well as the "constructive denials" of the petitioners' motions for class certification (Dkt.

Nos. 3; 35-2)[1] and second motion for a temporary restraining order (Dkt. No. 30). *See* Dkt. No. 36.

Because the grant of certiorari automatically resulted in vacatur of the Court's order denying class certification (Dkt. No. 67), and the Fifth Circuit now has jurisdiction over the issue of class certification, the Court denies as moot the motion for reconsideration (Dkt. No. 68).

So ordered on May 23, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[1] The latter is now Dkt. No. 39.

25-10534.685

**TAB 9**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

A.A.R.P.* and W.M.M.,* on their own behalf and
on behalf of others similarly-situated,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States; PAMELA BONDI,
Attorney General of the United States, in her
official capacity; KRISTI NOEM, Secretary of the
U.S. Department of Homeland Security, in her
official capacity; U.S. DEPARTMENT OF
HOMELAND SECURITY; TODD LYONS,
Acting Director of the Director of U.S.
Immigration and Customs Enforcement, in his
official capacity; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; MARCO RUBIO,
Secretary of State, in his official capacity; U.S.
STATE DEPARTMENT; JOSH JOHNSON, in his
official capacity as acting Dallas Field Office
Director for U.S. Immigration and Customs
Enforcement; MARCELLO VILLEGAS, in his
official capacity as the Facility Administrator of
the Bluebonnet Detention Center; PHILLIP
VALDEZ, in his official capacity as Facility
Administrator of the Eden Detention Center;
JIMMY JOHNSON, in his/her official capacity as
Facility Administrator of the Prairieland Detention
Center; and JUDITH BENNETT, in her official
capacity as Warden of the Rolling Plains Detention
Center;

*Respondents–Defendants*.

Case No. 1:25-cv-0059

**COMPLAINT-CLASS
ACTION: CLASS PETITION
FOR WRIT OF HABEAS
CORPUS AND COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

---

* Motion for the Petitioners to proceed under pseudonyms has been concurrently filed with this
class petition and complaint.

25-10534.21

**TAB 10**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| A.A.R.P., *et al.*, on their own behalf and on behalf of all others similarly situated., | |
| *Petitioners–Plaintiffs*, | Case No. <u>1:25-cv-0059</u> |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | **EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |
| *Respondents–Defendants.* | |

## EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER

25-10534.46

**Petitioners-Plaintiffs ("Petitioners") and the proposed class <u>are in imminent danger of being removed from the United States</u>—(with 24 hours or less notice) —and this Court could potentially permanently lose jurisdiction. Upon information and belief, the government has recently transferred Venezuelan men from detention centers all over the country to this District and they are at imminent risk of summary removal. Accordingly, Petitioners respectfully requests a temporary injunction for Petitioner and the putative class to preserve the status quo, enjoining (1) any removal outside the country pursuant to the Alien Enemies Act ("AEA"), (2) any transfer out of the Northern District of Texas without notice to counsel, (3) notice to Petitioner and the putative class, as well as undersigned counsel, of any designation as an Alien Enemy under the Proclamation, with at least 30 days' notice prior to any removal under the Proclamation, and (4) notice to undersigned counsel of the transfer of any individual designated an Alien Enemy under the Proclamation into the Western District of Texas.**

The request for a temporary restraining order against Respondents-Defendants ("Respondents") is made pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the All Writs Act. Petitioners and the proposed class are civil immigration detainees who are at substantial risk of immediate, summary removal from the United States pursuant to the use of the AEA, 50 U.S.C. § 21 *et seq.* against a *non*-state actor for the first time in the country's history.

As set forth in the accompanying Memorandum of Law, Respondents' invocation and application of the AEA patently violates the plain text of the statute and exceeds the limited authority granted to the President by Congress. Respondents' invocation and application of the AEA also violates the Immigration and Nationality Act, statutes providing protection for people seeking humanitarian relief, and due process. In the absence of a temporary restraining order,

25-10534.47

Petitioners and the class will suffer irreparable injury, and the balance of hardships and the public interest favor relief. Critically, moreover, if Petitioners and the class are removed to the custody of another country, <u>the government's position is that this Court will lose jurisdiction permanently</u>.

In support of this Motion, Petitioners rely upon the accompanying memorandum in support of a Temporary Restraining Order, motion and memorandum for class certification, and declarations in support of both motions. A proposed order is attached for the Court's convenience. Petitioners respectfully request that this Court grant this emergency application and issue a temporary restraining order as soon as possible for Petitioners and the class.

25-10534.48

CERTIFICATE OF CONFERENCE

I certify that pursuant to LR 7.1(a), Petitioners' counsel attempted to confer with counsel for Respondents prior to filing by emailing the Chad E. Meacham, the United States Attorney for the Northern District of Texas, and seeking the government's position. Petitioners' counsel was not able to obtain a response prior to filing.

Dated: April 16, 2025

/s/Brian Klosterboer
Brian Klosterboer

**TAB 11**

## DECLARATION OF VICTORIA BLAKEBOROUGH
## ATTORNEY FOR A.A.R.P.

I, Victoria Blakeborough, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am an immigration attorney at Heinz Law, PLLC, in St. Paul, Minnesota. My practice focuses on removal defense in both detained and non-detained context. I represent A.A.R.P. in his immigration proceedings.

2. A.A.R.P. is currently detained at the Immigration and Customs Enforcement ("ICE") Bluebonnet Detention Facility in Anson, TX, which is owned by Jones County, TX, and operated by MTC.

3. A.A.R.P. is a citizen of Venezuela who was born in 1987. He made an appointment to present at a port of entry using the CBP One app and presented with his wife and their son at the Paso Del Norte Port of Entry in El Paso, Texas in August 2023.

4. When A.A.R.P. was at Paso Del Norte, CBP officers asked him about his tattoos and whether he had any connection to a gang. A.A.R.P. denied any connection to a gang and explained that all his tattoos he had for personal reasons. A.A.R.P. and his family were released into the United States. They moved to Minnesota.

5. A.A.R.P. and his wife were leaving their home on March 26, 2025 to carpool to work when they noticed officers looking at the names on mailboxes in their apartment complex. ICE officers then followed them and stopped their car and arrested A.A.R.P.

6. In an I-213, ICE has accused A.A.R.P. of having "tattoos and associates that indicate membership in the Tren de Aragua gang." That statement is the only evidence provided by ICE for its allegation. A.A.R.P. strongly denies any connection to Tren de Aragua.

7. A.A.R.P. has a number of tattoos for personal reasons, including various decorative and religious tattoos, such as a cross and the Virgin Mary. CBP officers asked him specifically about a clock tattoo on his forearm—that clock appears under a tattoo of his son's face and shows the date and time of his son's birth. Because A.A.R.P.'s wife had had several miscarriages when they were trying to conceive, their son's birth was particularly important to A.A.R.P. to commemorate in a tattoo. None of his tattoos are related to Tren de Aragua.

25-10534.76

8. Following his arrest by ICE, A.A.R.P. had been detained at the Sherburne County Jail in Minnesota. A.A.R.P. is in pending immigration removal proceedings. A.A.R.P. fears returning to Venezuela and has sought asylum, withholding of removal, and protection under the Convention Against Torture. A.A.R.P. and his family were persecuted in the past for their political beliefs and for publicly protesting against the current Venezuelan government. A.A.R.P. fears further political persecution if removed to Venezuela. He is scheduled for an immigration hearing on April 28, 2025 with the Fort Snelling, Minnesota Immigration Court. Early on April 14, 2025, he was transferred to Bluebonnet despite his upcoming hearing in Minnesota.

9. I am unaware of any criminal history for A.A.R.P. in the United States and A.A.R.P. denies that he has any criminal history here. I am unaware of any criminal history in Venezuela and A.A.R.P. denies that he has any criminal history there. The I-213 filed by ICE on April 2, 2025 states that A.A.R.P. has no known criminal record.

10. I am aware from news reports that on March 15, 2025, ICE transferred a group of Venezuelan men and flew them to the Terrorism Confinement Center ("CECOT") in El Salvador. Based on knowledge and belief, there were people in that group who were similarly situated to A.A.R.P. It appears to me that A.A.R.P. is at grave risk of ICE alleging that he is removable under the Alien Enemies Act as a member of Tren de Aragua.

I, Victoria Blakeborough, swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge and recollection.

_____ /s/ Victoria Blakeborough

Executed this 15th day of April, 2025

25-10534.77

**TAB 12**

## DECLARATION OF KATHRYN D'ADAMO

### ASSISTANT FEDERAL DEFENDER

1. My name is Kathryn D'Adamo. I am an attorney licensed in Maryland and the District of Columbia.

2. I have been employed as an Assistant Federal Defender in the Office of the Federal Defender for Maryland since May 2024. This declaration is based on my personal knowledge, review of files, and information obtained during the course of my office's legal representation of W.M.M.

3. W.M.M. is currently in Bluebonnet Detention Center in Anson, TX.

4. W.M.M. was born in Venezuela in 2002. He was a soccer player in Venezuela and played for a local soccer club. In 2023, upon leaving a soccer stadium, soldiers with the Venezuelan military harassed and assaulted him because they believed he and his team members did not support the regime of Nicolas Maduro.

5. W.M.M. fled Venezuela after this incident in September 2023. In November 2023, W.M.M. entered the United States and was detained by immigration officials.

6. In December 2023, immigration officials released W.M.M. on his own recognizance and instructed him to report one month later to the ICE Chicago Field Office.

7. Immigration officials also issued W.M.M. a Notice to Appear in the Chicago Immigration Court for a hearing on April 22, 2027.

8. W.M.M. later relocated to Maryland.

9. On June 6, 2024, W.M.M. filed an asylum application with the Chicago Immigration Court. On the same date, W.M.M. filed a change of address form with the Chicago Immigration Court, changing his residence from Chicago to Hyattsville, Maryland.

10. In March 2025, federal authorities arrested W.M.M. on a misdemeanor warrant for his alleged illegal entry into the United States under 8 U.S.C. § 1325. The warrant was issued by a judge in the U.S. District Court for the Southern District of Texas, alleging that W.M.M. entered the United States unlawfully back in November 2023. He did not know any warrant had been issued until his arrest.

11. My office was appointed to represent him for a hearing on the unlawful entry warrant on March 14, 2025. At that hearing, a Magistrate Judge in the U.S. District Court for the District of Maryland conducted a federal detention hearing under 18 U.S.C. § 3142. The Government alleged that W.M.M. was affiliated with the Venezuelan gang "Tren de Aragua" based on emojis used in W.M.M's social media feed and a comment left by another individual on a social media post. The Government also alleged that W.M.M. was arrested at a residence where an alleged Tren de Aragua associate was present. W.M.M. strongly denies any connection to TdA.

12. Magistrate Judge Charles Austin ordered W.M.M released from federal criminal custody, finding that the Government had not met its threshold burden under § 3142(f)(2) to show a "serious risk that such person will flee." The Judge noted that W.M.M. "has no other pending criminal charges and no prior failures to appear when ordered by a court," and that "[h]is only apparent interaction with a court or criminal charges appears to be this case."

13. The U.S. Marshals held W.M.M. in their custody over the weekend, from Friday, March 14 to Monday, March 17. On March 17, the U.S. Marshals transferred him into the custody of ICE. W.M.M. was held at the ICE Baltimore Field Office for approximately

24 hours before being sent to Winn Correctional Center ("Winn"), an ICE facility in Louisiana.

14. W.M.M. remained at Winn for approximately one month. On April 11, 2025, he had his first Master Calendar Hearing in the immigration court. The Immigration Court scheduled an Individual Hearing for August 22, 2025.

15. Early in the morning on April 14, 2025, correctional officers notified W.M.M. that he was on a list to be transferred out of the facility. Later that day, ICE transferred W.M.M. from Winn to Bluebonnet Detention Facility ("Bluebonnet") in Anson, Texas. W.M.M. was transferred along with several other individuals who he understood were also Venezuelan.

16. W.M.M. reported that since his arrival at Bluebonnet, several other individuals from Venezuela have arrived from other facilities.

17. As of this signing, W.M.M. remains currently detained at the Immigration and Customs Enforcement ("ICE") Bluebonnet Detention Facility in Anson, TX.

18. In the late afternoon of April 15, 2025, W.M.M. relayed that his phone access was cut off, as was that of several other individuals with whom he arrived at Bluebonnet. W.M.M. understands this to mean that he will be imminently relocated.

19. W.M.M. fears he will be summarily removed under the AEA due to the Government's previous allegations of membership in Tren de Aragua and his location at Bluebonnet.

20. I am aware that on March 15, 2025, ICE transferred a group of Venezuelan men and flew them to the Terrorism Confinement Center ("CECOT") in El Salvador. Based on information and belief, there were people in that group who were similarly situated to W.M.M. I am concerned that W.M.M. is at grave risk of ICE alleging that he is removable under the Alien Enemies Act as a member of Tred de Aragua.

I, Kathryn D'Adamo, swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge.

_____/s/ Kathryn D'Adamo_____

Executed this 15th day of April, 2025

**TAB 13**

## MARGARET MIN ATTORNEY AFFIRMATION:
## ATTORNEY OF RECORD FOR H.I.D.R.

I, Margaret Min, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am an immigration attorney at The Legal Aid Society in New York, New York. I represent H.I.D.R. before the Executive Office for Immigration Review. H.I.D.R. has relayed the following information to me.

2. H.I.D.R. is currently detained at the Bluebonnet Detention Center in Anson, Texas. Since he was transferred there on April 14, each day he has seen more and more Venezuelans who are in ongoing immigration proceedings brought there from across the country--- including from Tennessee, Illinois, and Florida.  His detention pod currently has 28 Venezuelan men in it.  He estimates that at the very least, dozens and dozens more Venezuelan men have arrived recently and are in Bluebonnet with him.

3. H.I.D.R. has ongoing immigration proceedings in Oakdale, Louisiana, where he is pursuing asylum, withholding of removal, and protection under the Convention Against Torture.

4. Like other men moved to Bluebonnet, H.I.D.R. has been accused of being a Tren de Aragua member.  He has affirmed that he has never been a member of, or associated with, TdA in any way, that he has never been arrested for or convicted of any crime anywhere in the world, and that he has never been a member or associated with any other criminal organization.

5. H.I.D.R. had previously been detained at Winn Correctional Center. On April 13, 2025, officers there told him and a group of other detained Venezuelan men to pack their belongings for transfer.  On April 14, 2025, this group was chained at their hands, waist, and feet and taken to a plane bound for Texas. On the plane, officers accused the group of being members of Tren de Aragua.

6. After landing, H.I.D.R. and the individuals who traveled with him were put on a bus with approximately 50-55 other people from various detention centers from all over the United States. H.I.D.R. believes the majority of the individuals on the bus were Venezuelan, and they were all taken to Bluebonnet. When H.I.D.R. arrived at Bluebonnet, an officer stated that everyone in the group would be deported, though he did not indicate to where.

I declare under penalty of perjury that I am accurately relaying what my client told me and the foregoing is true and correct to the best of my knowledge.

**TAB 14**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| A.A.R.P., *et al.*, on their own behalf and on behalf of all others similarly situated, | |
| *Petitioners–Plaintiffs*, | Case No. 1:25-cv-59-H |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | **PETITIONERS-PLAINTIFFS' RENEWED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| *Respondents–Defendants*. | |

## PETITIONERS-PLAINTIFFS' RENEWED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER

Petitioners-Plaintiffs ("Petitioners") and the proposed class seek emergency relief in light of developing and alarming circumstances: since the Court's order denying a TRO this afternoon, Petitioners have learned that officers at Bluebonnet have distributed notices under the Alien Enemies Act, in English only, that designate Venezuelan men for removal under the AEA, and have told the men that the removals are imminent and will happen tonight or tomorrow. *See* Exh. A (Brown Decl.). These removals could therefore occur before this matter may be heard and before the government's response within 24 hours. *See* Order, ECF No. 29 (providing that if any emergency motion is filed, the opposing party shall have 24 hours to file a response).[1]

---

[1] Counsel for Petitioners contacted counsel for the government by email at 4:49pm CT, even before hearing about the distribution of notices at Bluebonnet, to ask if the government would make the same representations as to the putative class members as it did for the two named Petitioners. Counsel for the government did not respond to that correspondence. After then hearing that notices were being distributed at the Bluebonnet facility, we again contacted the government, at 6:23 pm CT, to ask whether it was accurate that the government had begun distributing AEA notices to Venezuelan men at the facility. At 6:36pm CT, counsel for the government said they would inquire and circle back. At 8:11pm CT, the government responded that the two named Petitioners had not been given notices. We immediately responded that we

25-10534.264

As detailed in the Brown Declaration, in the hours after this Court's order on the TRO, Attorney Brown's client, F.G.M., was approached by ICE officers, accused of being a member of Tren de Aragua, and told to sign papers in English. Exh. A (Brown Decl.) ¶ 3. F.G.M. understands only Spanish, and he refused to sign. ICE told him the papers "were coming from the President, and that he will be deported even if he did not sign it." *Id.* Another Venezuelan man who is detained at Bluebonnet and speaks English then read the notice to Attorney Brown, and the notice tracks the language of the Alien Enemies Act: "In the notice, it classified F.G.M. as a TdA gang member" who "must be removed" from the United States. *Id.* F.G.M., like other men against whom the Alien Enemies Act has already been used, does not have a final order of removal and is therefore not removable under the immigration laws. *See id.* The notice was not provided to counsel by the government, not did the government inform Attorney Brown that her client was being designated under the AEA.

In addition to Brown's client, immigration lawyers and family members of people detained at Bluebonnet are reporting that the forms are being passed out widely to the dozens of Venezuelan men who have been brought there over the past few days. Exh. B (Brane Declaration); *see also* Exh. C (Collins Decl.); Exh. D (Siegel Decl.). There is no indication that, as with past AEA removals, lawyers were being provided with the form or told that their clients were being designated under the AEA.[2]

---

were inquiring about putative class members. At 8:41pm CT, the government wrote: "We are not in a position at this time to share information about unknown detainees who are not currently parties to the pending litigation."

[2] On March 15, at least 137 Venezuelans were removed under the AEA to the CECOT prison in El Salvador. Those individuals were overwhelmingly, if not exclusively, detained at facilities in the S.D. Texas. On April 11, after a hearing, Judge Rodriguez entered a class wide TRO to preserve the status quo and prevent additional individuals from being removed under the AEA.

In its opinion today denying the initial TRO request, the Court relied on the government's representation, and the Supreme Court's decision in *J.G.G.*, that the two named Petitioners would not be removed pending the outcome of the habeas petition, and that if anything changed, the government would advise the Court. The Court did not at this time act on the motion for class certification, but it did state that "the Supreme Court's opinion in *J.G.G.,* along with the government's general representations about the procedures necessary in these cases, strongly suggest that the putative class is also not facing such an imminent threat …." Op. at 9.

Given that individuals are now in imminent danger of removal, with notice that appears to be *less* than 24 hours, Petitioners respectfully request that the Court provisionally certify a class and grant a class wide TRO so that it has time to consider these important issues. If the individuals are removed before the Court can act and the putative class members are removed from the country, this Court would be permanently divested of jurisdiction under the government's position that it need not return individuals, even those mistakenly erroneously removed. *See* All Writs Act, 28 U.S.C. 1651 (court can issue writs necessary to preserve its jurisdiction). And given the brutal nature of the Salvadoran prison where other Venezuelan men were sent under the AEA last month, the irreparable harm to them is manifest.

Accordingly, Petitioners respectfully request an immediate class wide TRO, and move to add F.G.M., as a named plaintiff. *Seeee* Exh. A (Brown Decl.) [3]

---

He then ordered expedited preliminary injunction briefing and set a hearing on the P.I. for April 23, 2025. *J.A.V. v. Trump*, No. 25-cv-72 (S.D. Tex 2025).

[3] In addition to filing electronically, Petitioner emailed a copy of this filing to counsel for the government.

**TAB 15**

**KARENE BROWN ATTORNEY AFFIRMATION:**

**ATTORNEY OF RECORD FOR F.G.M.**

I, Karene Brown, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. My name is Karene Brown. I am a Staff Attorney at The Legal Aid Society within the New York Immigrant Family Unity Project ("NYIFUP"). I represent F.G.M. in his removal proceeding. I first entered my appearance in his immigration case on April 29, 2024.

2. On the evening of April 17, 2025, F.G.M. called me while detained at Bluebonnet Detention Center. F.G.M. has a pending asylum application and no final removal order.

3. F.G.M. said that ICE accused him of being Tren de Aragua gang member as well as provided documentation labeling him as such. ICE told F.G.M. to sign some papers that were written in English but F.G.M., who speaks only Spanish, refused. ICE informed F.G.M. that these papers were coming from the President, and that he will be deported even if he did not sign it.

4. An English-speaking Venezuelan man then came on the phones and read the notice that ICE provided to F.G.M.  In the notice, it classified F.G.M. as a TdA gang member. It stated that he is an Alien Enemy, he was determined to be over 14 years old, and that he must be removed from the US. The English-speaking Venezuelan said that ICE had informed them that they will be deported either today or tomorrow to Venezuela.

5. F.G.M. said that he observed many Venezuelans signed the documents provided by ICE.

I, Karene Brown, affirm under penalty of perjury, that the foregoing is true and correct.

April 17, 2025                                    _____/s/_____
New York, NY                                     Karene Brown

1

**TAB 16**

**DECLARATION OF MICHELLE BRANÉ**

**EXECUTIVE DIRECTOR OF TOGETHER AND FREE**

1. I am Michelle Brané, Executive Director of Together and Free. Together and Free is a nonprofit organization that provides emergency and ongoing support services to asylum seeking families impacted by federal immigration policies.

2. I have more than 25 years of experience working on immigration and human rights issues. Prior to my work at Together and Free, I served for three years as the Executive Director for the Department of Homeland Security's Family Reunification Task Force, and then as DHS's Ombudsman for Immigration Detention. Before that, I was the Director of the Migrant Rights and Justice program at the Women's Refugee Commission for almost 15 years, where I worked on projects related to immigration custody, family detention and separation, and access to asylum at the U.S. border. I hold a JD from Georgetown University.

3. Together and Free has been hearing from family members of individuals in immigration detention at Bluebonnet Detention Center in Anson, TX, who fear being removed to El Salvador because officers have distributed notices of designation as Alien Enemies to individuals and told them they will be removed.

4. On April 17 one of our partners received a call from the wife of a man being detained at Bluebonnet.  The detainee told his wife that Venezuelans at Bluebonnet are receiving notices accusing them of being in Tren de Aragua and saying they will be deported. He sent her a tiktok with various detainees saying they were being accused of being enemies of the state and Tren de Aragua members, and that they were being asked to sign papers and were being removed but they did not know where. Several said that whether they

signed or not, they would be removed.

https://www.tiktok.com/@aviicrespo0/video/7494430422365965573?_r=1&_t=ZM-8vcgOxvfBnK

5. On April 17 at 10:36 I spoke to the sister of Luis Yoender Mercado. She informed me that she spoke to him this afternoon. Luis is detained at Bluebonnet. He has a master Calendar hearing scheduled on April 23, 2025. He told his sister that several people had received notices and were told by officers that they were being sent to El Salvador.

6. I also received messages on a listserv from several contacts indicating that people at Bluebonnet were receiving notices that they would be removed. The message says, "We just heard that it looks like more removals are being planned. We got this message from a member: "Hi, ICE moved a large group of Venezuelans to Bluebonnet earlier this week and some of them have alerted counsel that they received a notice minutes ago saying they would be removed under the AEA. The notice was in English and had a box for people to indicate they want to contest the designation. People should check on their Venezuelan clients if they've been moved to Bluebonnet and tell them to mark "I contest" in the notice."

Executed on 17th of April, 2025, in University Park, Maryland.

__*Michelle Brané*_____

Michelle Brané

25-10534.272

**TAB 17**

## DECLARATION OF TRAVIS JOHN COLLINS, ATTORNEY FOR Y.S.M.

I, Travis John Collins, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am an immigration attorney in Arlington, Virginia. My practice focuses on removal defense. I represent Y.S.M. in his immigration proceedings.

2. Y.S.M. is currently detained at the Immigration and Customs Enforcement ("ICE") Bluebonnet Detention Facility in Anson, TX, which is owned by Jones County, TX, and operated by MTC.

3. Y.S.M. is a citizen of Venezuela who was born in 2006. He entered the United States in 2022 as an unaccompanied minor.

4. Once in the United States, Y.S.M. reunited with his father I.S.G. and other extended family. I.S.G. filed a timely asylum application and included his son Y.S.M. as a derivative.

5. On March 14, 2025, Y.S.M. was detained by immigration agents, along with other relatives. Y.S.M. was later questioned by immigration and federal agents about a photograph. The agents stated that the photograph, found on Facebook, proved the Y.S.M. was a member of Tren de Aragua and that one of the persons in the photograph had a gun. Y.S.M. pointed out to the agents that the gun in question was in fact a water pistol. I have seen and reviewed the Facebook photograph in question and have confirmed that the gun in question is a water pistol.

6. After Y.S.M. was detained, he was initially transferred to Farmville Detention Facility in Virginia. Y.S.M. was made to wear green clothing, which signified that officers alleged that he was a member of Tren de Aragua.

7. On April 11, Y.S.M. was told by staff at the detention facility that he needed to attend a medical checkup. Once Y.S.M. arrived to the checkup, he was met by agents who began interrogating him about his ties to Tren de Aragua and pressured him to admit that he was a member of Tren de Aragua. The agents asked Y.S.M. to sign a paper saying that he was a member of Tren de Aragua. Y.S.M. refused to sign any document and denied that he was a member of Tren de Aragua.

8. On the night of April 13, Y.S.M. and his father were transferred from Virginia. I was scheduled to have a video call with Y.S.M. on April 14 at 9:00 AM EST; at 7:11 AM, I received an email notifying me that the video call had been cancelled. After checking ICE Detainee Locator, I contacted the detention center and emailed ERO as an attempt to obtain his location.

9. Sometime between April 14-16, Y.S.M. was transferred to Bluebonnet Detention Facility, as was his father. On the night of April 16, I was made aware of his location and emailed a request for a video call. I received a follow-up to my request on April 17 in the afternoon.

10. During the night of April 17, I received notice through Y.S.M.'s father that Y.S.M. had been taken away by agents. Y.S.M. was taken to another room. The agents returned for Y.S.M.'s

belongings. As he passed by, Y.S.M.'s father could see through a window that Y.S.M. was crying. As Y.S.M. and the agents were passing, Y.S.M. held up a paper to the window. Another detainee who spoke English was able to read that the paper said "deportation." The country of removal was not visible.  Because he has no final immigration order, the government could only be seeking to remove him under the AEA, not the immigration laws.


_____/s/ Travis John Collins_____



Executed this 17th day of April, 2025

**TAB 18**

## <u>DECLARATION OF KEVIN SIEGEL, ESQ.</u>

I, Kevin Siegel, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1.     I am an attorney at Brooklyn Defender Services in Brooklyn, New York.

2.     On April 17, 2025, I spoke with my client, a Venezuelan national detained at the Bluebonnet Detention Facility in Anson, Texas, and with his partner several times on the phone.

3.     My client and his partner told me that Venezuelan men detained at Bluebonnet were being given a piece of paper saying that they were about to be deported regardless of their immigration status because they are a danger to the United States and that these men were asked to sign the paper notice or a document provided with it. They also told me that ICE officials refused to say where the men would be deported.

4.     My client and his partner also told me that individual men were being removed from the facility without warning upon receiving the paper notice.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: April 18, 2025                                    /s/ Kevin Siegel
                                                        Kevin Siegel, Esq.

**TAB 19**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

A.A.R.P., *et al.*,

    *Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

    *Respondents–Defendants*.

Case No. 1:25-cv-59-H

## EMERGENCY MOTION FOR AN IMMEDIATE STATUS CONFERENCE

Petitioners make this emergency motion for an immediate status conference based on their filing early this morning regarding notices distributed to class members under the Alien Enemies Act and imminent removal flights under the AEA. *See* ECF No. 30 (Petitioners-Plaintiffs' Renewed Emergency Application for Temporary Restraining Order). Plaintiffs have obtained through proposed class members two copies of the Notice that is being issued; they are attached to this emergency motion.  The Notice is in English, does not say that one can contest the designation under the AEA, and does not state a timeframe for when the removal will occur. **Plaintiffs re-emphasize that proposed class members are being told that they will be imminently removed under the AEA, as soon as tonight.** Attached to this motion are two additional attorney declarations, one describing how another Venezuelan national at Bluebonnet has received such a notice that he refused to sign and then being taken away (Collins Decl.) and the other relaying how five Venezuelan men last night were told they had no choice to sign and would be deported (Petty Decl.). The last declaration is from a Venezuelan man with Temporary

1

Protected Status who nevertheless received an Alien Enemies Act Notice, and how around 30 other people have received notices (RJRS Decl.).

Petitioners' counsel requested the government's position on this motion for an immediate status conference. The government responded: "The government maintains that neither AARP nor WMM are at imminent risk of removal and that class certification is inappropriate. Thus, the government opposes an immediate status conference as unnecessary at this time."

Petitioners also requested the time by which the government intended to respond to the renewed emergency application for a temporary restraining order. The government stated that intends to file a response in opposition to the motion "at the appropriate time." It declined to specify further.

If the Court does not issue a TRO by 1:30 pm CT or hold a status conference to obtain the government's position as to the renewed emergency application for a TRO, and whether it is imminently removing the proposed class, Plaintiffs intend to seek emergency relief from the Fifth Circuit.

Dated: April 18, 2025                          Respectfully submitted,

                                               /s/Lee Gelernt
                                               Lee Gelernt
Noelle Smith*                                  Daniel Galindo
Oscar Sarabia Roman*                           Ashley Gorski*
My Khanh Ngo*                                  Patrick Toomey*
Cody Wofsy*                                     Sidra Mahfooz*
AMERICAN CIVIL LIBERTIES UNION                 Omar Jadwat*
FOUNDATION                                     Hina Shamsi*
425 California Street, Suite 700               AMERICAN CIVIL LIBERTIES
San Francisco, CA 94104                        UNION FOUNDATION
T: (415) 343-0770                              125 Broad Street, 18th Floor
E: nsmith@aclu.org                             New York, NY 10004
E: osarabia@aclu.org                           T: (212) 549-2660
E: mngo@aclu.org                               E: lgelernt@aclu.org

25-10534.281

**TAB 22**

### DECLARATION OF TRAVIS JOHN COLLINS, ATTORNEY FOR S.M.R.

I, Travis John Collins, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am an immigration attorney in Arlington, Virginia. My practice focuses on removal defense. I represent S.M.R. in his immigration proceedings.

2. S.M.R. is currently detained at the Immigration and Customs Enforcement ("ICE") Bluebonnet Detention Facility in Anson, TX, which is owned by Jones County, TX, and operated by MTC.

3. S.M.R. is a citizen of Venezuela who was born in 1992. He entered the United States in August 2023 and filed a timely asylum application.

6. On March 14, 2025, S.M.R. was detained by immigration agents, along with other relatives. After S.M.R. was detained, he was initially transferred to Farmville Detention Facility in Virginia. S.M.R was made to wear green clothing, which signified that he was a member of Tren de Aragua. He also was labelled as Tren de Aragua in his tablet.

9. On April 11, S.M.R. was told by staff at the detention facility that he needed to added a medical checkup. Once S.M.R. arrived to the checkup, he was met by agents who began interrogating him about his ties to Tren de Aragua and pressured him to admit that he was a member of Tren de Aragua. S.M.R. practices Santeria and has a tattoo of a crown, a meaningful symbol in Santeria. He also has a tattoo of a soccer ball. He also has a tattoo of a shoeblack plant ("cayena"), which he obtained with his girlfriend.

10. On the night of April 13, S.M.R. was transferred from Virginia. I was scheduled to have a video call with S.M.R. on April 14; that same morning, I received an email notifying me that the video call had been cancelled. After checking ICE Detainee Locator, I contacted the detention center and emailed ERO as an attempt to obtain his location.

11. Sometime between April 14-16, S.M.R. was transferred to Bluebonnet Detention Facility. On the night of April 16, I was made aware of his location and emailed a request for a video call. I received a follow-up to my request on April 18.

12. The morning of April 18, S.M.R was called and told that ICE agents wanted to speak to him. He was given papers telling him that he was going to be removed. They were interrogating him about being part of Tren de Aragua. He was shown a paper that said 50 U.S.C. 21 with a red stamp. They were asking him to sign documents which he refused to sign. He was taken away to another area.

_____/s/ Travis John Collins_____

Executed this 18th day of April, 2025

**TAB 23**

# DECLARATION OF VICTORIA C. PETTY

I, Victoria C. Petty, hereby declare:

1. I am an attorney at the Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCRSF"). I am licensed to practice law in the State of California.

2. I represent Y.G.H. in a habeas petition before the Eastern District of California. *Y.G.H. v. Trump, et al*, No. 1:25-cv-00435 (E.D. Cal.).

3. Y.G.H. is a 22-year-old Venezuelan national who entered the United States at a port of entry and was released on parole on or about September 13, 2023. He was also placed into removal proceedings. In February 2025, despite his continued parole, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained Y.G.H.

4. On March 25, about 40 days after taking Y.G.H. into ICE custody, ICE published a post on Facebook calling Y.G.H. a "TdA ARREST," referring to the Tren de Aragua Gang. Y.G.H. is not a member of Tren de Aragua ("TdA"), nor has ICE ever presented him with evidence of that allegation or provided an opportunity for him to contest it.

5. When LCCRSF began representing Y.G.H., he was detained by ICE at Golden State Annex in McFarland, California. At some point on April 14, ICE abruptly removed Y.G.H. from Golden State Annex to an unknown location. We were unable to obtain any information from ICE, despite trying each of several ICE phone numbers during normal business hours, and we could not get in touch with Y.G.H. We were concerned that he would be subject to summary removal under the Alien Enemies Act, so LCCRSF immediately drafted and filed a habeas petition and later than night filed an emergency motion for a temporary restraining order ("TRO") in the Eastern District of California.

6. On April 15, a judge in the Eastern District of California issued a TRO enjoining the government from removing Y.G.H. from the United States. Late that evening, the government stated that Y.G.H. was at the Bluebonnet Detention Facility ("Bluebonnet") in Anson, Texas. Y.G.H. still has a master calendar hearing scheduled for May 8, 2025 before the Adelanto Immigration Court in California.

7. On April 16 and April 17, 2025, Y.G.H. shared the following over three phone calls.

8. Y.G.H. explained that when he arrived at Bluebonnet, he was placed in a dormitory with about 30 other men, all from Venezuela, and all, from Y.G.H.'s observations, bearing tattoos of different styles and images. Y.G.H. also heard from multiple other men in his dorm that they were accused of "being TdA members, and that they learned of these accusations second-hand from friends and family members seeing ICE's posts on social media and/or on other news outlets. Like Y.G.H., the other detained men arrived at Bluebonnet recently from facilities outside of Texas, including in California, Arizona, and Colorado, and were still in removal proceedings.

9. Late Thursday evening, officers showed up at Y.G.H.'s dorm and took about five men away. The officers said the men did not have a choice whether to sign something or not, and that they were being deported. The men asked where to, but the officers refused to say.

10. Based on the events of the past few days, Y.G.H. fears that he will be summarily removed from the United States under the Alien Enemies Act.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed this 18th day of April, 2025 in Montrose, California.

Victoria Petty

**TAB 25**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

A.A.R.P.,\* W.M.M.,\* and F.G.M.\* on their own
behalf and on behalf of others similarly-situated,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States; PAMELA BONDI,
Attorney General of the United States, in her
official capacity; KRISTI NOEM, Secretary of the
U.S. Department of Homeland Security, in her
official capacity; U.S. DEPARTMENT OF
HOMELAND SECURITY; TODD LYONS,
Acting Director of the Director of U.S.
Immigration and Customs Enforcement, in his
official capacity; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; MARCO RUBIO,
Secretary of State, in his official capacity; U.S.
STATE DEPARTMENT; JOSH JOHNSON, in his
official capacity as acting Dallas Field Office
Director for U.S. Immigration and Customs
Enforcement; MARCELLO VILLEGAS, in his
official capacity as the Facility Administrator of
the Bluebonnet Detention Center; PHILLIP
VALDEZ, in his official capacity as Facility
Administrator of the Eden Detention Center;
JIMMY JOHNSON, in his/her official capacity as
Facility Administrator of the Prairieland Detention
Center; and JUDITH BENNETT, in her official
capacity as Warden of the Rolling Plains Detention
Center;

*Respondents–Defendants*.

Case No. 1:25-cv-059-H

**COMPLAINT-CLASS
ACTION: CLASS PETITION
FOR WRIT OF HABEAS
CORPUS AND COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

\* Motion for the Petitioners to proceed under pseudonyms has been concurrently filed with this
class petition and complaint.

25-10534.342

## INTRODUCTION

1.      Petitioners-Plaintiffs ("Petitioners") are Venezuelan men in immigration custody at risk of imminent removal under the President's Proclamation invoking the Alien Enemies Act ("AEA").

2.      By its terms, the AEA applies only where the United States is in a "declared war" with a "foreign nation or government," or a "foreign nation or government" has engaged in, or is threatening to engage in, an "invasion" or "predatory incursion" against the "territory of the United States." 50 U.S.C. § 21.

3.      The Proclamation at issue here invoking the AEA is entitled: "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua.[1] It authorizes the "immediate" removal, without notice or judicial review, of noncitizens over the age of fourteen who the government claims are members of the Venezuelan criminal gang Tren de Aragua ("TdA"), excluding lawful permanent residents. It also overrides all the procedural and substantive protection afforded by Congress for noncitizens in immigration proceedings, including protection against the removal to a place where they will face torture.

4.      Although the AEA requires that its invocation be made "public," the Proclamation is dated March 14, 2015, but was not made public until March 15. The government, however, attempted to remove individuals under the Proclamation before it was made public.

5.      The AEA, enacted in 1798, provides the President with wartime authority and has been used only three times in our Nation's history: the War of 1812, World War I and World War II.

6.      It may not be used against a criminal gang or during peacetime.

---

[1] *Available at* https://perma.cc/ZS8M-ZQHJ.

7.      Nonetheless, on March 15, the government removed at least 137 Venezuelan noncitizens under the Proclamation to one of the world's most notorious prisons in El Salvador, where they may remain incommunicado for the rest of their lives according to the Salvadoran President.

8.      These individuals were sent to this brutal prison without any court having had an opportunity to review the threshold questions of whether a criminal gang can be deemed a "foreign government or nation" within the meaning of the AEA, or whether criminal activity and migration can constitute a military "invasion or predatory incursion" of the "territory of the United States;" under the Act.

9.      These individuals were also given no opportunity to contest their designation as members of the TdA gang and therefore did not even fall with the Proclamation. And more and more evidence is emerging that many (perhaps most) of these individuals lacked any ties to the gang and were mistakenly placed under the Proclamation.

10.      That more individuals are not languishing in a Salvadoran prison is the result of a nationwide class Temporary Restraining Order issued by Judge Boasberg in the District of Columbia. *J.G.G. v. Trump*, No. 1:25-cv-766-JEB, 2025 WL 825115, at *1 (D.D.C. Mar. 15, 2025). The D.C. Circuit declined to stay the TRO, *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *1 (D.C. Cir. Mar. 26, 2025), but the Supreme Court vacated the TRO, *Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *1 (U.S. Apr. 7, 2025). However, the Supreme Court made clear that review was available by habeas, that individuals subjected to the Proclamation are entitled to "due process" and must be given "notice . . . within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id*. at *2.

25-10534.344

11.    Accordingly, given that Petitioners and the putative class are no longer protected by the TRO in D.C., they file this habeas action given the Supreme Court's ruling that habeas is the proper mechanism to challenge the Proclamation's application.

12.    As of April 18, 2025, officers at Bluebonnet have issued notices to many men, including F.G.M., and many others in the proposed class. The notice is in English, does not say that one can contest the designation under the AEA, and does not state a timeframe for when the removal will occur.

13.    The Proclamation is unlawful for three principal reasons: the Proclamation (1) fails to satisfy the statutory predicates of the AEA because the TdA is not a "foreign government or nation" not is it involved in a military "invasion or predatory incursions" of the "territory of the United States;" (2) sweeps away the procedural and substantive protections Congress enacted for the protection of noncitizens subject to removal; and (3) provides no notice or opportunity for judicial review to show that an individual is not in fact a member of the TdA and therefore falls wholly outside of the Proclamation.

14.    This Court's intervention is necessary so that Petitioners and the putative class are not unlawfully sent to a Salvadoran prison pursuant to the Proclamation, perhaps for the remainder of their lives.

15.    Petitioners in this action do not seek release from detention or contest any aspect of their ongoing immigration proceedings.

## JURISDICTION AND VENUE

16.    This case arises under the Alien Enemies Act ("AEA"), 50 U.S.C. §§ 21-24; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* and its implementing regulations; the Convention Against Torture ("CAT"), *see* Foreign Affairs Reform and

3

Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112

Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231); the All Writs Act, 28 U.S.C.

§ 1651; and the Fifth Amendment to the U.S. Constitution.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241 *et seq*. (habeas

corpus); art. I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause); 28 U.S.C. § 1346 (United

States as defendant); 28 U.S.C. § 1361 (mandamus); and 28 U.S.C. § 1651 (All Writs Act).

18.     The Court may grant relief pursuant to 28 U.S.C. § 2241; 28 U.S.C. § 2243; the

Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; the All Writs Act, 28 U.S.C. § 1651; and

the Court's inherent equitable powers.

19.     Venue is proper in this District under 28 U.S.C. § 2241; 28 U.S.C. § 1391(b); and,

28 U.S.C. § 1391(e)(1) because at the time of filing the Petitioners were detained in the

Respondents' custody within the Northern District of Texas; a substantial part of the events and

omissions giving rise to the claim occurred in this district; and Respondents are agencies of the

United States or officers of the United States acting in their official capacity.

## PARTIES

### A.  Petitioners-Plaintiffs ("Petitioners")

20.     Petitioner A.A.R.P. is a Venezuelan national who is detained at Bluebonnet

Detention Center in Anson, Texas. A.A.R.P. fled Venezuela because he and his family were

persecuted there in the past for their political beliefs and for publicly protesting against the

current Venezuelan government. He came to the United States in 2023 with his wife and their

son. He is currently seeking asylum, withholding, and protection under the Convention Against

Torture. His next hearing is scheduled for April 28, 2025, at the Fort Snelling Minnesota

Immigration Court. A.A.R.P. was detained while carpooling to work with his wife on March 26,

2025. ICE has accused A.A.R.P. of having "tattoos and associates that indicate membership in the Tren de Aragua gang" in an I-213. A.A.R.P. has a number of tattoos including a clock that shows the date and time of his son's birth, a cross, and the Virgin Mary. None of these tattoos are related to TdA, and he denies any connection with TdA. Early on April 14, A.A.R.P. was suddenly transferred from the Sherburne County Jail in Minnesota to the Bluebonnet Detention Center despite his upcoming April 28 hearing in immigration court in Minnesota. A.A.R.P. is at grave risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador.

21.     W.M.M. is a Venezuelan national who is also detained at Bluebonnet Detention Center in Anson, Texas. W.M.M. fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the Maduro regime. W.M.M. arrived in the United States in 2023. He was released on his own recognizance, and he subsequently filed an asylum application. Several months later, federal authorities arrested W.M.M. on a misdemeanor warrant for alleged illegal entry into the United States. At his hearing on the warrant, the government alleged that W.M.M. is affiliated with TdA based on emojis used in W.M.M.'s social media feed, and a comment left by another individual on a social media post. The government also alleged that W.M.M. was arrested at a residence where an alleged TdA associate was present. *Id.* W.M.M. denies having any connection with TdA. The magistrate judge ordered W.M.M. released from federal criminal custody because the government had not met its threshold burden to show a serious risk that W.M.M. would flee. The judge noted that the illegal entry case was W.M.M.'s only interaction with a court. The U.S. Marshals released W.M.M. into ICE's custody and he was subsequently detained for about a month at the Winn Correctional Center in Louisiana. On April 14, W.M.M. was abruptly transferred along with

25-10534.347

several other Venezuelans to the Bluebonnet Detention Center, where he is now currently detained with Venezuelans transferred from other facilities. Even though W.M.M. has an individual hearing scheduled for August 22, his phone access was abruptly cut off the afternoon of April 15 and he was told he would be imminently transferred again. W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador.

22.    Petitioner F.G.M. is a Venezuelan national who is also detained at Bluebonnet Detention Center in Anson, Texas. F.G.M. has a pending asylum application and no final removal order. On the evening of April 17, 2025, F.G.M. called his attorney. F.G.M. said that ICE accused him of being a member of TdA and provided documentation labeling him as such, and as an alien enemy. ICE told F.G.M. to sign papers written in English but F.G.M., who speaks only Spanish, refused. ICE informed F.G.M. that these papers were coming from the President and that he would be deported even if he did not sign the papers.

**B. Respondents-Defendants ("Respondents")**

23.    Respondent Donald Trump is the President of the United States. He is sued in his official capacity. In that capacity, he issued the Proclamation under the Alien Enemies Act. Injunctive relief is not sought against the President.

24.    Respondent Pamela J. Bondi is the U.S. Attorney General at the U.S. Department of Justice, which is a cabinet-level department of the United States government. She is sued in her official capacity.

25.    Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security, which is a cabinet-level department of the United States government. She is sued in her

25-10534.348

official capacity. In that capacity, Respondent Noem is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

26.     Respondent U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the United States federal government. Its components include Immigration and Customs Enforcement ("ICE"). Respondent DHS is a legal custodian of Petitioner.

27.     Respondent Todd Lyons is the Acting Director of ICE. Respondent Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Respondent Lyons is a legal custodian of Petitioner. Respondent Lyons is sued in his official capacity.

28.     Respondent ICE is the subagency of DHS that is responsible for carrying out removal orders and overseeing immigration detention. Respondent ICE is a legal custodian of Petitioner.

29.     Respondent Marco Rubio is the Secretary of State at the U.S. Department of State. He is sued in his official capacity.

30.     Respondent U.S. Department of State, which is a cabinet-level department of the United States government.

31.     Respondent Josh Johnson is the acting director of ICE's Dallas's Field Office, which is responsible for ICE activities in Northern Texas and Oklahoma, including Bluebonnet Detention Center. Respondent Johnson is an immediate legal custodian responsible for the arrest and detention of Petitioners. He is sued in his official capacity.

32.     Respondent Marcello Villegas is the Facility Administrator of the Bluebonnet Detention Center, which detains individuals suspected of civil immigration violations pursuant to

25-10534.349

a contract with ICE. Respondent Villegas is the immediate physical custodian responsible for the detention of Petitioners. He is sued in his official capacity.

33.     Respondent Phillip Valdez is the Facility Administrator of the Eden Detention Center, which detains individuals suspected of civil immigration violations pursuant to a contract with ICE. Respondent Valdez is the immediate physical custodian responsible for the detention of individuals in the Petitioner class. He is sued in his official capacity.

34.     Respondent Jimmy Johnson is the Facility Administrator of the Prairieland Detention Facility, which detains individuals suspected of civil immigration violations pursuant to a contract with ICE. Respondent Johnson is the immediate physical custodian responsible for the detention of individuals in the Petitioner class. He is sued in his official capacity.

35.     Respondent Judith Bennett is the Warden of the Rolling Plains Detention Center, which detains individuals suspected of civil immigration violations pursuant to a contract with ICE. Respondent Bennett is the immediate physical custodian responsible for the detention of individuals in the Petitioner class. She is sued in her official capacity.

<u>**BACKGROUND**</u>

**The Alien Enemies Act**

36.     The AEA is a wartime authority enacted in 1798 that grants the President specific powers with respect to the regulation, detention, and deportation of enemy aliens.

37.     The AEA, as codified today, provides that "[w]henever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government, and the President makes public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized,

8

shall be liable to be apprehended, restrained, secured, and removed as alien enemies." 50 U.S.C. § 21.

38.    The AEA can thus be triggered in only two situations. The first is when a formal declared war exists with a foreign nation or government. The second is when a foreign nation or government perpetrates, attempts, or threatens an invasion or predatory incursion against the territory of the United States.

39.    To trigger the AEA, the President must make a public proclamation of the declared war, or of the attempted or threatened invasion or predatory incursion. *Id.*

40.    The AEA also provides that noncitizens must be permitted the full time to depart as stipulated by any treaty between the United States and the enemy nation, unless the noncitizen has engaged in "actual hostility" against the United States. If no such treaty exists, the President may declare a "reasonable time" for departure, "according to the dictates of humanity and national hospitality." *Id.* § 22.

41.    Under the AEA, noncitizens who "refuse or neglect to depart" are subject to removal. *Id.* § 21.

42.    The Act has been used only three times in American history, all during actual or imminent wartime.

43.    The AEA was first invoked several months into the War of 1812, but President Madison did not use the AEA to remove anyone from the United States during the war.

44.    The AEA was invoked a second time during World War I by President Wilson. Upon information and belief, there were no removals effectuated pursuant to the AEA during World War I.

25-10534.351

45.     The AEA was used again during World War II, though it was never used as a
widespread method of removal.

46.     On December 7, 1941, after the Japanese invaded Hawaii in the attack on Pearl
Harbor, President Roosevelt proclaimed that Japan had perpetrated an invasion upon the territory
of the United States. The president issued regulations applicable to Japanese nationals living in
the United States. The next day Congress declared war on Japan.

47.     On the same day, President Roosevelt issued two separate proclamations stating
that an invasion or predatory incursion was threatened upon the territory of the United States by
Germany and Italy. The president incorporated the same regulations that were already in effect
as to Japanese people for German and Italian people. Three days later Congress voted
unanimously to declare war against Germany and Italy.

48.     Congress declared war against Hungary, Romania, and Bulgaria on June 5, 1942.
Just over a month later, President Roosevelt issued a proclamation recognizing that declaration
of war and invoking the AEA against citizens of those countries.

49.     Under these proclamations, the United States infamously interned noncitizens
from Japan, Germany, Italy, Hungary, Romania, and Bulgaria (with U.S. citizens of Japanese
descent subject to a separate order that did not rely on the AEA).

50.     It was not until the end of hostilities that the President provided for the removal of
alien enemies from the United States under the AEA.  On July 14, 1945, President Truman
issued a proclamation providing that alien enemies detained as a danger to public peace and
safety "shall be subject upon the order of the Attorney General to removal from the United
States." The Department of Justice subsequently issued regulations laying out the removal
process. *See* 10 Fed. Reg. 12,189 (Sept. 28, 1945). The regulations required, *inter alia*, notice of

10

the removal order to be served on the designated alien enemy and that the alien enemy had thirty (30) days thereafter to depart—during which time they could seek judicial review of the removal order. *Id*.

**Systemic Overhaul of Immigration Law in 1952**

51.    Following the end of World War II, Congress consolidated U.S. immigration laws into a single text under the Immigration and Nationality Act of 1952 ("INA").

52.    The INA, and its subsequent amendments, provide for a comprehensive system of procedures that the government must follow before removing a noncitizen from the United States. The INA now provides the exclusive procedure by which the government may determine whether to remove an individual. 8 U.S.C. § 1229a(a)(3).

53.    In addition to laying out the process by which the government determines whether to remove an individual, the INA also enshrines certain forms of humanitarian protection.

54.    First, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such alien's status," may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must show a "well-founded fear of persecution" on account of a protected ground, such as race, nationality, political opinion, or religion. 8 U.S.C. § 1101(a)(42)(A).

55.    Second, save for certain limited exceptions, Congress has barred the removal of an individual to a country where it is more likely than not that he would face persecution on one of these protected grounds. 8 U.S.C. § 1231(b)(3). That protection implements this country's obligations under the 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees. The relevant form of relief, known as "withholding of removal," requires the applicant

11

to satisfy a higher standard with respect to the likelihood of harm than asylum, but  this form of relief is mandatory if the standard is met.

56.    Third, the Convention Against Torture ("CAT") prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture. *See* 8 U.S.C. § 1231 note. That protection implements the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242. As with withholding of removal, CAT relief also requires the applicant to satisfy a higher standard with respect to the likelihood of harm than asylum and relief is mandatory if that standard is met. There is no exception to CAT relief.

**President Trump's Proclamation Invoking the AEA**

57.    On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See* Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua (Mar. 15, 2025).[2]

58.    Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15, despite making extensive preparations and attempts to remove class members under the Act.

59.    The Proclamation claims that the TdA gang is engaged in an invasion and predatory incursion into the United States, and that the gang should be considered a "foreign government."

---

[2] *Available at*: https://perma.cc/ZS8M-ZQHJ.

25-10534.354

60.     The Proclamation thus states that all Venezuelan citizens ages fourteen or older alleged to be members of TdA who are not U.S. citizens or lawful permanent residents are alien enemies.

61.     The Proclamation provides no means or process for individuals to contest that they are members of the TdA and do not therefore fall within the terms of the Proclamation. Nor does it provide individuals with the statutory grace period in which they can both seek judicial review or arrange their affairs and leave voluntarily.

62.     Instead, the Proclamation invokes the statutory exception to the "reasonable notice" requirement by claiming that the individuals subject to the Proclamation are "chargeable with actual hostility," and pose "a public safety risk," making them subject to immediate apprehension, restraint, and removal.

63.     The government employs a standardized check list, the "Alien Enemy Validation Guide," to determine who is an "alien enemy" subject to the Proclamation. An ICE officer completes the form, tallying points for different categories of alleged TdA membership characteristics.

64.     The checklist's methodology relies on several dubious criteria, including physical attributes like tattoos, hand gestures, symbols, logos, graffiti, and manner of dress. Experts who study the TdA have explained how none of these physical attributes are reliable ways of identifying members of the TdA.

65.     Noncitizens subject to the Proclamation are not afforded the procedural or substantive protection under the INA, including under Convention Against Torture.

66.     Multiple judges have already found that the Proclamation is likely unlawful. *See J.G.G.*, 2025 WL 914682, at *5–10 (Henderson, J., concurring) (AEA predicates of "invasion"

13

or "predatory incursion" not met); *id*. at *13 (Millett, J., concurring) ("The Constitution's demand of due process cannot be so easily thrown aside."); *J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 890401, at *2 (D.D.C. Mar. 24, 2025) (Boasberg, J.) ("before plaintiffs may be deported, they are entitled to individualized hearings to determine whether the Act applies to them at all").

67.     As a result of the Proclamation, countless Venezuelans—including Petitioners in this District—are at imminent risk of removal pursuant to the Proclamation without any hearing or meaningful review, regardless of the absence of any ties to TdA or the availability of claims for relief from and defenses to removal.

## CLASS ACTION ALLEGATIONS

68.     Petitioners bring this action under both Federal Rules of Civil Procedure 23(a) and 23(b)(2) and principles of habeas and equity on behalf of himself and a class of all other persons similarly situated.

69.     Petitioners seek to represent the following Proposed Class: All noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

70.     The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable. Hundreds of Venezuelans living in Texas and the greater southern U.S. region will potentially be subjected to summary removal under the Proclamation and its implementation by Respondents. Several weeks ago, the government identified nationwide 86 people in detention subject to the Proclamation and 172 more who are at liberty. *See supra*, Cerna Decl. ¶ 6. Based on the former number alone,

Petitioners clear the bar, but there are likely to be more individuals entering the class as more of the 172 individuals are taken into ICE custody. Upon information and belief, the government has in the last 24 to 48 hours suddenly transferred Venezuelan men, including Named Petitioners, from detention centers all over the country to northern Texas, despite their pending removal proceedings in immigration court. Upon information and belief, people have been transferred in groups of Venezuelan men, and been told that they appear to be on a list with other Venezuelans. Upon information and belief, many have now received notices under the AEA designating them as alien enemies. The Notice is in English, does not say that one can contest the designation under the AEA, and does not state a timeframe for when the removal will occur. Proposed class members are being told that they will be imminently removed under the AEA, as soon as tonight. Thus, many individuals in this District are at imminent risk of summary removal pursuant to the Proclamation. The proposed class also includes numerous future noncitizens who will be subjected to the Proclamation, as the government has repeatedly stated that it intends to continue using the Proclamation absent court intervention. Because ICE continues to "track[] the TdA members who are amenable to removal proceedings," *see supra*, Cerna Decl. ¶ 6, and more individuals will be designated under the Proclamation, "the class includes unknown, unnamed future members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000); *see also Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (discussing impracticability of joinder of unknown persons); *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981) ("joinder of unknown individuals is certainly impracticable").

71.    The class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: summary removal under the Proclamation contrary to the AEA, the INA, and due process. The suit also raises threshold questions of law common to

25-10534.357

members of the proposed class, including whether the Proclamation and its implementation satisfy the statutory requirements of the AEA; whether the Proclamation may lawfully override the protections afforded noncitizens under the INA; and whether the lack of due process violates the Fifth Amendment.

72.     The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the representative Petitioners are typical of the claims of the class. Each proposed class member, including the proposed class representatives, has experienced or faces the same principal injury (unlawful removal), based on the same government practice (the Proclamation and its implementation), which is unlawful as to the entire class because it violates the AEA, the INA, and due process.

73.     The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The representative Petitioners seek the same relief as the other members of the class—among other things, an order declaring the Proclamation unlawful and an injunction preventing enforcement of the Proclamation. In defending their rights, Petitioners will defend the rights of all proposed class members fairly and adequately.

74.     The proposed class is represented by experienced attorneys from the American Civil Liberties Union and the American Civil Liberties Union of Texas. Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens.

75.     The proposed class also satisfies Rule 23(b)(2). Respondents have acted (or will act) on grounds generally applicable to the class by subjecting them to summary removal under the Proclamation rather than affording them the protection of immigration laws. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

16

76.    The proposed class also satisfies the requirements for a class guided by Rule 23 but certified under equity habeas principles.

## CAUSES OF ACTION[3]

### FIRST CLAIM FOR RELIEF

*Ultra Vires*, **Violation of 50 U.S.C. § 21**, *et seq.*
**(All Respondents)**

77.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

78.    The AEA does not authorize the removal of noncitizens from the United States absent a "declared war" or a "perpetrated, attempted, or threatened" "invasion or predatory incursion" against the "territory of the United States" into the United States by a "foreign nation or government." *See* 50 U.S.C. § 21.

79.    The Proclamation and its implementation do not satisfy these statutory preconditions.

80.    Additionally, the AEA permits removal only where noncitizens alleged to be "alien enemies" "refuse or neglect to depart" from the United States. 50 U.S.C. § 21. The AEA also requires the government to afford noncitizens alleged to be "alien enemies" sufficient time to settle their affairs and to depart the United States. *See* 50 U.S.C. § 22.

81.    However, Petitioners and the class are being subject to forced removal without being afforded the privilege of voluntary departure, let alone any notice or an opportunity to respond to the designation of alien enemy.

---

[3] Insofar as a cause of action seeks to enjoin Respondents, Petitioners do not seek such relief against the President.

25-10534.359

82.     The application of the AEA Process to Petitioners and the class is therefore *ultra vires*.

## SECOND CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1101, *et seq.*
### (All Respondents)

83.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

84.     The INA provides that a removal proceeding before an immigration judge under 8 U.S.C. § 1229a is "the sole and exclusive procedure" by which the government may determine whether to remove an individual, "[u]nless otherwise specified" in the INA. 8 U.S.C. § 1229a(a)(3).

85.     The INA's "exclusive procedure" and statutory protections apply to any removal of a noncitizen from the United States, including removals authorized by the AEA.

86.     The AEA Process creates an alternative removal mechanism outside of the immigration laws set forth by Congress in Title 8.

87.     Because the AEA Process provides for the removal of Petitioners and the class without the procedures specified in the INA, it violates the INA.

## THIRD CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1158, Asylum
### (All Respondents)

88.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

89.     The INA provides, with certain exceptions, that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated

25-10534.360

port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1).

90.    Respondents' application of the AEA Process to Petitioners and the class prevents them from applying for asylum in accordance with 8 U.S.C. § 1158(a)(1) and is therefore contrary to law.

## FOURTH CLAIM FOR RELIEF

### Violation of 8 U.S.C. § 1231(b)(3), Withholding of Removal
### (All Respondents)

91.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

92.    With certain limited exceptions, the "withholding of removal" statute, INA § 241(b)(3), *codified at* 8 U.S.C. § 1231(b)(3), bars the removal of noncitizens to a country where it is more likely than not that they would face persecution.

93.    Respondents' AEA Process violates the withholding of removal statute because it does not provide adequate safeguards to ensure that Petitioners and the class are not returned to a country where it is more likely than not that they would face persecution. As a result, Respondents' actions against Petitioners and the class are contrary to law.

## FIFTH CLAIM FOR RELIEF

### Violation of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),
### codified at 8 U.S.C. § 1231 note
### (All Respondents)

94.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

25-10534.361

95.     FARRA prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture.

96.     Respondents' AEA Process violates FARRA because it does not provide adequate safeguards to ensure that Petitioners and the class are not returned to a country where it is more likely than not that they would face torture. As a result, Respondents' actions against Petitioners and the class are contrary to law.

**SIXTH CLAIM FOR RELIEF**

***Ultra Vires*, Violation of 50 U.S.C. § 22**
**(All Respondents)**

97.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

98.     The AEA requires that noncitizens whose removal is authorized by the AEA, unless "chargeable with actual hostility, or other crime against the public safety," be allowed the full time stipulated by treaty to depart or a reasonable time in which to settle their affairs before departing. *See* 50 U.S.C. § 22. The Proclamation on its face denies Petitioners and the class any time under Section 22 to settle their affairs, because it declares everyone subject to the Proclamation to be "chargeable with actual hostility" and to be a "danger to public safety."

99.     The government cannot invoke that exception categorically, without individualized assessments. Each noncitizen must specifically be "chargeable with actual hostility" or a crime against public safety to lose eligibility for voluntary departure.

100.    The AEA Process thus contravenes 50 U.S.C. § 22 and is *ultra vires.*

101.    The application of the AEA Process to Petitioners and the class is contrary to law.

**SEVENTH CLAIM FOR RELIEF**

**Violation of Due Process Under the Fifth Amendment**

20

**(All Respondents)**

102.    All of the foregoing allegations are repeated and realleged as if fully set forth

herein.

103.    The Due Process Clause of the Fifth Amendment provides in relevant part that:

"No person shall be deprived of life, liberty, or property, without due process of law." U.S.

Const. amend. V.

104.    In denying Petitioners and the class meaningful procedural protections to

challenge their removal, the Proclamation violates due process.

### EIGHTH CLAIM FOR RELIEF

**Violation of Habeas Corpus**
**(All Respondents)**

105.    Detainees have the right to file petitions for habeas corpus to challenge the

legality of their removal under the Proclamation.

106.    The summary removal of Petitioners and the class under the Proclamation violates

their right to habeas corpus. *See* 28 U.S.C. § 2241; U.S. Const. art. I, § 9, cl. 2 (Suspension

Clause).

### PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully pray this Court to:

a.  Assume jurisdiction over this matter;

b.  Certify this action on behalf of the proposed Petitioner Class, appoint the Petitioners as

class representatives, and appoint the undersigned counsel as class counsel;

c.  Grant a temporary restraining order to preserve the status quo pending further

proceedings;

25-10534.363

d.  Enjoin Respondents from transferring Petitioners and the Petitioner Class out of this district during the pendency of this litigation without advance notice to counsel;

e.  Grant a writ of habeas corpus to Petitioners and the Petitioner Class that enjoins Respondents removing them pursuant to the Proclamation;

f.  Enjoin Respondents from removing Petitioners and the Petitioner Class pursuant to the Proclamation.

g.  Declare unlawful the Proclamation;

h.  Enjoin Respondents from applying the Proclamation to Petitioners and the Petitioner Class without providing 30-day notice and an opportunity to respond to the designation prior to the removal date;

i.  Award Petitioners' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

j.  Grant such further relief as the Court deems just, equitable, and appropriate.

**TAB 26**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

|  |  |
|---|---|
| J.A.V., et al., | |
| *Petitioner.* | |
| v. | Civil Action No. 1:25-cv-072 |
| DONALD J. TRUMP, et al., | |
| *Respondents.* | |

## DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR

Pursuant to the authority of 28 U.S.C. § 1746, I, Carlos D. Cisneros, an Assistant Field Office Director for U.S. Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), Harlingen, Texas (TX) declare as follows:

1.      I am an Assistant Field Office Director ("AFOD") for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO Harlingen"). I began my employment with ICE (Legacy Immigration and Naturalization Service) on January 18, 2000, and I have been serving as the AFOD for ICE ERO Harlingen since August 28, 2022.

2.      In my role as AFOD, I oversee ERO enforcement operations for the Harlingen Office. As an AFOD, I am responsible for the supervision of deportation officers managing detained cases in Harlingen, Texas. I am also responsible for overseeing the safety, security and care of individuals in my custody.

3.      While preparing this declaration, I have examined the official records available to me regarding the Alien Enemies Act (AEA) notice procedure. I submit this declaration to outline

the notice procedure and to inform the court about why a description of the procedure should be kept under seal.

**A.    The Notice**

4.    Attached as an exhibit to this declaration is a copy of Form AEA-21B, which ICE officers serve on aliens whom the Agency intends to detain or remove pursuant to the AEA. Each alien is served individually, and the Form AEA-21B is read and explained to each alien in a language that alien understands.

5.    Consistent with a Notice to Appear in Title 8 proceedings, the Form AEA-21B is written in the English language. However, it is read and explained to each alien in a language that alien understands.  ICE officers are accustomed to working with aliens who do not understand English.

6.    Through an ICE-wide contract with a language assistance vendor (i.e. language lines), ICE uses professional oral interpretation and translation services that cover more than 200 languages, including rare and Indigenous languages. Enforcement and Removal Operations (ERO) serves as the Contracting Officer Representative for this ICE-wide language services contract. Centralizing oversight over the contract allows better coordination with the vendor and the establishment of processes for obtaining regular reports. Additionally, many ERO staff have sufficient proficiency in one or more languages other than English and communicate with limited English proficiency (LEP) persons in their primary language when appropriate.

7.    Pursuant to ICE detention standards, oral interpretation or assistance is provided to any detained alien who is illiterate or who speaks another language in which written material has not been translated.

8.    The various ICE Detention Standards under which detention facilities operate require that information be provided to LEP persons in a language or manner they can understand throughout the detention process to provide them with meaningful access to programs and services. This may be accomplished through use of bilingual staff or professional interpretation and translation services. Depending on the type of facility and contract specifications, the contractor may have and use their own dedicated language line.

**B.    Habeas Components to the Process**

9.    The alien is served individually with a copy of the Notice, Form AEA 21-B, the notice is read to the alien in a language that he or she understands.

10.     As part of the notice procedure, the alien is informed that he or she can make a telephone call to whomever he or she desires, including legal representatives. ICE ensures that telephones are made available for the aliens and that the aliens have access to the telephone lines.

11.     Although there may be fact-specific exceptional cases, in a general case, after an alien is served with Form AEA 21-B, the alien is given a reasonable amount of time, and no less than 12 hours, including the ability to make a telephone call, to indicate or express an intent to file a habeas petition. If the alien does not express any such intention, then ICE may proceed with the removal, though such removal may not actually occur for many more hours or days, giving the alien additional time to express an intent. If the alien does express an intent to file a habeas petition, the alien is given a reasonable amount of time, and no less than 24 hours, to actually file that petition. If the alien does not file such a petition within 24 hours, then ICE may proceed with the removal, though such removal may not actually occur for many more hours or days, giving the alien additional time to file the petition. Further, because aliens subject to the AEA are often detained for several days before removal, they frequently have much more time to express an intent to file a habeas petition or to actually file such a petition. Moreover, these timeframes are consistent with, if not more generous than, the timeframes used for expedited removal procedures under Title 8.

12.     In nearly every case in which an alien files a habeas petition based on detention related to the AEA, the alien also seeks a Temporary Restraining Order (TRO).  The TRO request is typically adjudicated quickly, sometimes within hours of being filed. Although there may be fact-specific exceptional cases, in a general case, ICE will not remove under the AEA an alien who has filed a habeas petition while that petition is pending. However, ICE may reconsider that position in cases where a TRO has been denied and the habeas proceedings have not concluded within a reasonable time.

C.     **Justification for Sealing the Description of the Notice Procedure**

13.     The internal notice procedure outlined in this declaration should be filed and remain under seal because this process is law enforcement sensitive. In this circumstance, revealing our notice procedure would disclose to the public guidelines that are integral to conducting law enforcement investigations and could risk circumvention of the law.

Signed this _____ day of April 2025.

## NOTICE AND WARRANT OF APPREHENSION AND REMOVAL
### UNDER THE ALIEN ENEMIES ACT

A-File No:_____   Date:_____

In the Matter of: _____

Date of Birth: _____   Sex:    Male        Female

**Warrant of Apprehension and Removal**

**To any authorized law enforcement officer:**

The President has found that Tren de Aragua is perpetrating, attempting, or threatening an invasion or predatory incursion against the territory of the United States, and that Tren de Aragua members are thus Alien Enemies removable under Title 50, United States Code, Section 21.

_____ has been determined to be: (1) at least fourteen years of
         (Full Name of Alien Enemy)
age; (2) not a citizen or lawful permanent resident of the United States; (3) a citizen of Venezuela; and (4) a member of Tren de Aragua. Accordingly, he or she has been determined to be an Alien Enemy and, under Title 50, United States Code, Section 21, he or she shall be apprehended, restrained, and removed from the United States pursuant to this Warrant of Apprehension and Removal.

**Signature of Supervisory Officer:** _____

**Title of Officer:** _____   **Date:** _____

**Notice to Alien Enemy**

I am a law enforcement officer authorized to apprehend, restrain, and remove Alien Enemies. You have been determined to be at least fourteen years of age; not a citizen or lawful permanent resident of the United States; a citizen of Venezuela; and a member of Tren de Aragua. Accordingly, under the Alien Enemies Act, you have been determined to be an Alien Enemy subject to apprehension, restraint, and removal from the United States. Until you are removed from the United States, you will be detained under Title 50, United States Code, Section 21. Any statement you make now or while you are in custody may be used against you in any administrative or criminal proceeding. This is not a removal under the Immigration and Nationality Act. If you desire to make a phone call, you will be permitted to do so.

After being removed from the United States, you must request and obtain permission from the Secretary of Homeland Security to enter or attempt to enter the United States at any time. Should you enter or attempt to enter the United States without receiving such permission, you will be subject to immediate removal and may be subject to criminal prosecution and imprisonment.

Signature of alien: _____   Date: _____

| CERTIFICATE OF SERVICE |
|---|
| I personally served a copy of this Notice and Warrant upon the above-named person on _____ and ensured it was read to this person in a language he or she understands.                    (Date) |
| _____        _____<br>Name of officer/agent                                    Signature of officer/agent |

Form AEA-21B

25-10534.474

**TAB 27**

## DECLARATION OF SARAH FRANCES CORNING

I, Sarah Frances Corning, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts stated herein are true and correct, to the best of my knowledge and belief:

1. I am an attorney and Legal Fellow at the American Civil Liberties Union of Texas and am one of the attorneys representing the Petitioners and putative class in *W.M.M. v. Trump*, No. 25-cv-69-H (N.D. Tex.). I make this Declaration based upon personal knowledge, except where otherwise indicated.

2. In the evening of April 17, 2025, my colleague, Ashley Harris, and I both drove to Abilene, Texas because we were notified that individuals held in the Bluebonnet Detention Center in the Northern District of Texas were given Alien Enemies Act ("AEA") notices and told they would be deported imminently.

3. We arrived at the Bluebonnet Detention Center the next morning, on April 18, 2025. Upon arrival, we requested to speak with 10 individuals, including named Petitioner, F.G.M.

4. I am fluent in both English and Spanish. I spoke with F.G.M. around 2:30 PM on that day in Spanish. F.G.M. stated that he was given a notice on Thursday, April 17. In the morning of the 18th, an officer told him that he might be deported that evening.

5. In my conversation with F.G.M., he relayed: He could not read the notice because he cannot read English. He was not offered translation or interpretation of the notice into Spanish by the officers. The officers told F.G.M. that he would be deported whether or not he signed the notice.

6. F.G.M. showed me the notice he received. Attached to this declaration is a true and correct copy of a photograph that I took of F.G.M.'s notice. His name is listed last name first, follow by first name so the initials appear as G.M., F.A. The attached version of the notice is redacted of F.G.M.'s full name and personal identifying information. An unredacted version of the notice has already been provided to the government's counsel in this case, and can be submitted under seal to the Court if necessary.

7. I also translated a declaration from F.G.M. about his experience. F.G.M.'s declaration uses as his initials "FAGM." F.G.M. and F.A.G.M. refer to the same person. The "A" stands for his middle name.

Executed this 29th day of April, 2025 in Austin, Texas.


  /s/ Sarah Frances Corning
_____

Sarah Frances Corning

**TAB 28**

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| W.M.M., *et al.*, on their own behalf and on behalf of all others similarly situated, | |
| *Petitioners–Plaintiffs*, | |
| v. | Case No. 1:25-cv-59-H |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| *Respondents–Defendants*. | |

## PETITIONERS-PLAINTIFFS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, CERTIFY A CLASS UNDER RULE 23(c)(4)

TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Petitioners-Plaintiffs ("Petitioners") hereby move the Court to reconsider its May 9, 2025 order denying Petitioners' Amended Motion for Class Certification. ECF No. 67. In the alternative, Petitioners move the Court for an order certifying a class as to the issues that are common to the class pursuant to Federal Rule of Civil Procedure 23(c)(4). Reconsideration and certification are warranted for the reasons given in the attached Memorandum.

Dated: May 13, 2025

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo
Cody Wofsy*
Spencer Amdur*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Respectfully submitted,
/s/Lee Gelernt
Lee Gelernt
Daniel Galindo
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

1

**TAB 29**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS

W.M.M., *et al.*, on their own behalf and on behalf
of all others similarly situated,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

*Respondents–Defendants*.

Case No. 1:25-cv-59-H

## MEMORANDUM IN SUPPORT OF PETITIONERS-PLAINTIFFS'
## MOTION TO RECONSIDER OR, IN THE ALTERNATIVE,
## TO CERTIFY A CLASS UNDER RULE 23(c)(4)

**TAB 30**

**DECLARATION OF DAN SMULIAN**

I, Dan Smulian declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a Supervising Attorney at the Immigration Law Unit at The Legal Aid Society. I supervise Karene Brown who represents F.G.M. in his immigration proceedings. I have been communicating with F.G.M. and representing him before ICE-ERO.

2. F.G.M. was originally detained at Bluebonnet Detention Center. Around May 6, 2025, he was moved to Eden Detention Center.  F.G.M. reported that he was moved along with nine other Venezuelans.  I am attaching a screenshot reflecting that his current location continues to be Eden.  At Eden, he is kept in the Segregation Housing Unit with up to one roommate.  At present he is the only person in his cell.  As of Friday, May 9, he has been allowed out into a small area not much bigger than two body lengths, surrounded by fencing, for about 30 minutes a day.

3. Because I am based in New York, I have been unable to visit F.G.M. in person. Instead, I rely on phone calls and virtual visits to communicate with him. Arranging legal communications at both facilities has been time consuming.

4. F.G.M.'s access to a phone has been sporadic.  When F.G.M. arrived at Eden, the PIN code he was given for communications did not work so he was not able to call us at all. Eventually, he was able to call out, which I believe costs money.

5. Confidential legal video visit must be scheduled days in advance.  Prior to F.G.M. being moved from Bluebonnet, I waited over a week for a scheduled video call with F.G.M.  He was moved to Eden before that call could occur.  It typically takes 2 to 4 days at Eden.

6. I have also been unable to reach him on the non-confidential messaging application used at Eden. F.G.M. reports that he only has sporadic access to the messaging tablet.

7. If F.G.M. did not have an attorney, it would be extremely difficult for him to file a habeas petition on his own. I am not sure how he would even learn basic information such as what should be included in the petition and where to mail it. F.G.M. struggles with literacy in Spanish and does not speak, read or write English. I do not believe that F.G.M. has access to interpretation or translation services at Eden. He simply would not be able to draft a habeas petition on his own.

8. F.G.M. is unaware whether Eden even has a law library. Even if F.G.M. had access to a law library, he would be unable to use it to understand how to file a habeas petition.

9. I do not believe that F.G.M. has open access to the internet and even if he did, would not know how to access information regarding filing a habeas petition.

Executed May 12, 2025.

_____ /s/ Dan Smulian

Dan Smulian

**TAB 31**

## DECLARATION OF OSCAR SARABIA ROMAN

I, Oscar Sarabia Roman, declare as follows:

1. I am a lawyer at the American Civil Liberties Union Immigrants' Rights Project. I represent the Petitioners in this case.

2. On May 12, 2025, I visited Bluebonnet Detention Center with my colleague Talia Roma. Bluebonnet is located in Anson, Texas, about a three-hour drive from the nearest large city, Dallas. We met with individuals detained at Bluebonnet in an attorney visitation area that had two meeting rooms available.

3. Ms. Roma and I had to provide a list of names and A-numbers in advance in order to speak with individuals. Facility staff informed us that we were not permitted to speak with individuals whose names or A-numbers we did not have.

4. The detainees we spoke with stated that they do not have access to computers. They can use a tablet to message their families or make video calls to loved ones. The individuals we spoke with were not aware of any other applications on the tablets.

5. The people we met with could not read or write in English. They would have no way to draft a habeas petition in English to submit to a court on their own.

6. We spoke to a number of people who had received a notice of designation under the Alien Enemies Act. Several brought the notices to our appointments. But no one understood what the notices said because they were in English. Not a single person we spoke with, even those who had already received AEA removal notices, knew what habeas corpus meant.

7. Of the ten people that my colleagues at the ACLU of Texas spoke with at Bluebonnet Detention Center on April 18, 2025, at least three are no longer located at Bluebonnet.

According to ICE's detainee locator, one is detained at Eden Detention Center and two are detained at Prairieland Detention Center. All three of those individuals received AEA removal notices while detained at Bluebonnet. Several individuals I spoke with on May 12 reported that a number of people who were given notices and put on buses on April 18 were subsequently transferred to detention facilities other than Bluebonnet.

Executed on May 12, 2025 in Abilene, TX.

/s/ Oscar Sarabia Roman

Oscar Sarabia Roman

## Certificate of Service

I certify that on June 5, 2025, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel of record.

S/Lee P. Gelernt

Lee P. Gelernt
