# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2026

Lyle W. Cayce
Clerk

———————

No. 25-10534

———————

W.M.M., *on their own behalf and on behalf of others similarly situated*;
F.G.M., *on their own behalf and on behalf of others similarly situated*;
A.R.P., *on their own behalf and on behalf of others similarly situated*,

*Petitioners—Appellants*,

*versus*

DONALD J. TRUMP, *in his official capacity as President of the United States*;
TODD WALLACE BLANCHE, *Acting Attorney General of the United States,
in his official capacity*; MARKWAYNE MULLIN, *Secretary of the United
States Department of Homeland Security, in his official capacity*; UNITED
STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS,
*Acting Director of the Director of United States Immigration and Customs
Enforcement, in his official capacity*; UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT; MARCO RUBIO, *Secretary of State,
in his official capacity*; UNITED STATES STATE DEPARTMENT; JOSH
JOHNSON, *in his official capacity as acting Dallas Field Office Director for
United States Immigration and Customs Enforcement*; MARCELLO
VILLEGAS, *in his official capacity as the Facility Administrator of* THE
BLUEBONNET DETENTION CENTER; PHILLIP VALDEZ, *in his official
capacity as Facility Administrator of* THE EDEN DETENTION CENTER;
JIMMY JOHNSON, *in his/her official capacity as Facility Administrator of*
THE PRAIRIELAND DETENTION CENTER; JUDITH BENNETT, *in her
official capacity as Warden of the Rolling Plains Detention Center*,

*Respondents—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:25-CV-59

---

PUBLISHED ORDER

Before Elrod, *Chief Judge*, and Jones, Smith, Stewart, Richman, Southwick, Haynes, Graves, Higginson, Willett, Ho, Duncan, Engelhardt, Oldham, Wilson, Douglas, and Ramirez, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*, joined by Jones, Smith, Stewart, Richman, Southwick, Graves, Higginson, Willett, Ho, Duncan, Engelhardt, Oldham, Wilson, Douglas, and Ramirez, *Circuit Judges*:[*]

In response to questions at oral argument and a later directive from the court, counsel for petitioners and the government revealed that the government has removed the three original named petitioners in this case. As there are currently no named petitioners in this appeal who are still in the United States, petitioners have moved to add five new class representatives on appeal—a motion that we deny today. Petitioners have also moved for these five proposed class representatives to proceed pseudonymously on appeal, as well as for the sealing of their unredacted motion to add class representatives. The government does not oppose either motion. But "the parties' consent does not end the analysis when determining whether pseudonymization is appropriate. Instead, the court must conduct its own balancing of the public and private interests at stake." *Sealed Appellant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *3 (5th Cir. Mar. 7, 2024). We DENY these motions without prejudice to any future determination by the district court regarding whether to allow any new class

---

[*] Judge Haynes concurs in the denial.

2

representatives to proceed under pseudonyms or whether to seal a motion adding class representatives.

"What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). Indeed, disclosure is generally favored. *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981) (referring to "the presumption of disclosure mandated by procedural custom"). And "[p]ublic naming of litigants is one aspect of the broader 'presumption, long supported by courts, that the public has a common-law right of access to judicial records.'" Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1368 (2022) (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011)). Thus, "[a] strong presumption against party pseudonymity is generally well settled." *Id.* at 1367.

Of course, this presumption can give way in appropriate circumstances. *E.g.*, *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). "The Supreme Court has yet to address the issue of when a pseudonym may be used." 5A Wright & Miller's Federal Practice & Procedure § 1321 (4th ed. 2026). But our court has articulated "three factors common to anonymous-party suits that . . . 'deserve considerable weight'" in determining whether to allow parties to use pseudonyms: "(1) whether the plaintiff is 'challeng[ing] governmental activity'; (2) whether the plaintiff will be required to disclose information 'of the utmost intimacy'; and (3) whether the plaintiff will be 'compelled to admit [his] intention to engage in illegal conduct, thereby risking criminal prosecution.'" *Doe v. Mckesson* (*Mckesson I*), 945 F.3d 818, 835 n.12 (5th Cir. 2019) (alteration in original) (quoting *Stegall*, 653 F.2d at 185), *judgment vacated on other grounds by* 592 U.S. 1 (2020); *see also Doe v. Mckesson* (*Mckesson II*), 71 F.4th 278, 300 n.12 (5th Cir. 2023) (citing *Mckesson I*, 945 F.3d at 835 n.12). But these factors do not constitute a "hard and fast formula for ascertaining whether a party may sue anonymously." *Stegall*, 653

F.3d at 186. We have also considered, among other things, "the showing of possible threatened harm." *Id.*

These considerations do not weigh in favor of allowing the proposed new representatives to proceed pseudonymously here. First, while the petitioners certainly challenge governmental activity, *see Mckesson I*, 945 F.3d at 835 n.12, "in only a very few cases challenging governmental activity can anonymity be justified," *Stegall*, 653 F.2d at 186. Where "plaintiffs [a]re suing private individuals rather than a government agency," a court may find "*more* reason *not* to grant the plaintiffs' request for anonymity." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992); *see id.* at 323–24 (applying the *Stegall* test).[1] But that a plaintiff sues the government "does not stand . . . for the proposition that there is more reason to grant [that] plaintiff's request for anonymity." *Id.* at 324.

Second, the proposed representatives have not shown that proceeding under their real identities would require them to disclose "information 'of the utmost intimacy.'" *Mckesson I*, 945 F.3d at 835 n.12 (quoting *Stegall*, 653 F.2d at 185). In in *Wynne & Jaffe*, we noted that "'[w]here the issues involved are matters of a highly sensitive and personal nature,' such as birth control, abortion, homosexuality[,] or the welfare rights of illegitimate children or abandoned families, the normal practice of disclosing the parties' identities yields 'to a policy of protecting privacy in a very private matter.'"

---

[1] The older iteration of the Fifth Circuit, which contained the current Fifth and Eleventh Circuits, decided both *Wynne & Jaffe*, which first articulated the factors that *Stegall* catalogued, and *Stegall* itself. *See Boe v. Garcia*, No. 25-12407, 2026 WL 472456, at *1 (11th Cir. Feb. 19, 2026). *See generally Stegall*, 653 F.2d 180; *Wynne & Jaffe*, 599 F.2d 707. The Eleventh Circuit thus deploys the *Stegall* test in deciding whether to allow parties to use pseudonyms, *see, e.g.*, *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020); *Frank*, 951 F.2d at 322–24, and its precedent on the subject—while, of course, not binding on our court—can be useful to us as we approach the same subject.

599 F.2d at 712–13 (first alteration in original) (footnotes omitted) (quoting *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)); *see also Stegall*, 653 F.2d at 184–86 (citing *Wynne & Jaffe* as the source for the three factors that *Stegall* articulated). Religious beliefs may also qualify, depending on the circumstances. *See Stegall*, 653 F.2d at 186; *see also Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) (first citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001); and then citing *Stegall*, 653 F.2d at 186)). Courts have also "permitted plaintiffs to proceed anonymously in cases involving mental illness." *Frank*, 951 F.2d at 324 (citing *Doe v. Colautti*, 592 F.2d 704 (3d Cir. 1979)).

Here, the proposed class representatives have not shown that disclosure of their names would "require[]" them "to disclose information 'of the utmost intimacy.'" *Mckesson I*, 945 F.3d at 835 n.12 (quoting *Stegall*, 653 F.2d at 185). They insist that we should treat "immigration matters, like the ones here, that disclose personal information," as intimate information warranting pseudonymity. But this argument fails. To begin, one of the proposed representatives says nothing about his immigration status at all, and another has temporary protected status. Neither explains how revelation of "immigration matters" related to him would "disclose [any] personal information," let alone information that makes pseudonyms appropriate.

Of the other three proposed class representatives, one has an approved asylum application, and two represent that they are currently seeking asylum. But this, without more, does not demand pseudonymity. The proposed class representatives point out cases in which district courts allowed asylum applicants to proceed pseudonymously *in asylum proceedings*. *See M.M. v. Mayorkas*, No. 24-cv-02090, 2024 WL 1795766, at *2–3 (S.D.N.Y. Apr. 25, 2024); *M.O. v. Mayorkas*, No. 23-CV-06609, 2023 WL 7300960, at *1–2 (W.D.N.Y. Nov. 6, 2023). But they do not argue that they have used pseudonyms in their own asylum proceedings. Nor have they

shown that Venezuela penalizes asylum seekers. *Cf. Dayo v. Holder*, 687 F.3d 653, 656–58 (5th Cir. 2012) (holding that a violation of 8 C.F.R. § 208.6, which generally prohibits disclosure of "[i]nformation contained in or pertaining to any application for . . . asylum," may give rise to an asylum claim if the applicant can show that "he suffered past persecution or has a well-founded fear of future persecution"); *Castellan-Barrera v. Bondi*, No. 24-60432, 2025 WL 1577823, at *4 (5th Cir. June 4, 2025) ("[B]reach of confidentiality" under § 208.6 "may be grounds for relief if the petitioner shows that his home country penalizes asylum seekers." (citing *Dayo*, 687 F.3d at 656–58)). Without more, the asylum-seeker status of three of the five proposed class representatives does not counsel against the "strong presumption against party pseudonymity." Volokh, *supra*, at 1367; *see also Stegall*, 653 F.2d at 185.

The proposed representatives also fear that proceeding under their true names will cause the revelation of their physical characteristics. But it is difficult to see how physical characteristics that one exposes to the public count as intimate information—and the proposed representatives have not argued that they conceal the characteristics that they mention from the public. *Cf., e.g.*, *Kee v. City of Rowlett*, 247 F.3d 206, 213 (5th Cir. 2001) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Mara*, 410 U.S. 19, 21 (1973) (explaining that the Fourth Amendment "is not violated" by the compelled production of "'physical characteristics' that are 'constantly exposed to the public'" (quoting *United States v. Dionisio*, 410 U.S. 1, 14 (1973)). Even in the criminal context, one does not have a reasonable expectation of privacy in one's visible physical characteristics. *See Mara*, 410 U.S. at 21; *Dionisio*, 410 U.S. at 13–15; *Kee*, 247 F.3d at 213. Absent more evidence than the proposed class representatives have presented here, we will not deem physical characteristics intimate

information in the civil context. *Cf. Matthews v. Wozencraft*, 15 F.3d 432, 439 (5th Cir. 1994) (affirming summary judgment against a claim of appropriation of one's life story because "[n]o one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation." (quoting Restatement (Second) of Torts § 652C cmt. d (A.L.I. 1977))).

Finally, by revealing their identities, the proposed class representatives will not "be 'compelled to admit [their] intention to engage in illegal conduct, thereby risking criminal prosecution.'" *Mckesson I*, 945 F.3d at 835 n.12 (quoting *Stegall*, 653 F.2d at 815). Of course, a party need not necessarily "admit criminal conduct or criminal intent in order to proceed under a fictitious name." *Stegall*, 653 F.2d at 186. A court could also allow a party to proceed pseudonymously if that party "had to admit that [he] either had violated state laws or government regulations or wished to engage in prohibited conduct." *Wynne & Jaffe*, 599 F.2d at 713.

The proposed representatives maintain that this factor "is not at issue here." But that the parties may not dispute it does mean that we cannot consider it. *See Sealed Appellant*, 2024 WL 980494, at *3. And the proposed representatives have not argued that the revelation of their true identities will cause them to admit engaging in illegal conduct or risk criminal prosecution. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by," among other things, "failing to adequately brief the argument on appeal.").

Here, the disclosure of their identities would not require the proposed class representatives to "express a desire to participate in proscribed activities." *Wynne & Jaffe*, 599 F.2d at 713. Indeed, all of the proposed class representatives maintain that they want to contest their purportedly "false designation as a member of Tren de Aragua and the application of the Alien

7

Enemies Act to" them.  Moreover, the government, which knows their true identities, has already served them with notices of removal under the President's Proclamation.

We have also considered "the showing of possible threatened harm" in determining whether to allow parties to use pseudonyms. *Stegall*, 653 F.2d at 186.  Here, all five of the proposed class representatives express fear of retaliation "in the form of physical violence in Venezuela or third countries if their identities were to be revealed and if they were to be removed for being erroneously identified as members of TdA."  True, "[c]ourts generally allow pseudonymity if there is 'reasonable[]' 'fear[]' of 'retaliatory physical . . . harm to the requesting party or even more critically, to innocent non-parties,' which may be considered in light of 'the anonymous party's vulnerability to such retaliation.'"  Volokh, *supra*, at 1397 (second and third alterations in original) (footnotes omitted) (first quoting *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1045 (9th Cir. 2010); then quoting *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019); and then quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)).  "Express threats of violence would likely qualify, as would specific past incidents of violence or vandalism."  *Id.* (footnotes omitted).  But "[l]ack of such express threats or incidents—or at least lack of highly plausible predictions of possible future violence—will usually count against pseudonymity."  *Id.* (footnotes omitted).  And "this court does not usually allow parties to proceed anonymously based on generalized concerns."  *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 n.5 (5th Cir. 2022).

Here, the petitioners express only "generalized concerns" about potential retaliation, directed toward either them or their families, in Venezuela or other countries as a result of the U.S. government identifying them with TdA.  *See id.*  They present zero "plausible predictions of possible future violence," let alone evidence of "express threats or incidents" to

anyone, including them or their families, arising out of identification with TdA. *See* Volokh, *supra*, at 1397. These evidence-less, generalized fears do not permit the proposed class representatives to overcome the presumption against pseudonymity. Volokh, *supra*, at 1367; *see also June Med.*, 22 F.4th at 520 n.5. We therefore DENY the motion for the proposed class representatives to proceed under pseudonyms.

The motion to seal the unredacted motion to add class representatives relies "substantially" on "the same reasons that Petitioners have moved to have the [proposed representatives] proceed under pseudonym in this matter." That motion is also DENIED. "Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "The public has an interest in transparent court proceedings that is independent of the parties' interests." *June Med.*, 22 F.4th at 519 (quoting *In re Gee*, No. 19-30953, 2019 WL 13067384, at *4 (5th Cir. Nov. 27, 2019) (Elrod, J., concurring)). The common law thus "establishes a presumption of public access to judicial records." *Secs. & Exch. Comm'n v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). And where, as here, "at least one of the parties is a public official or party of a public nature," the "public's interest is particularly legitimate and important," *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)), and the "rationale for public access" is "even greater," *see June Med.*, 22 F.4th at 520 (quoting *Bradley*, 954 F.3d at 233).

\* \* \*

To recap: we DENY the motion for the proposed class representatives to proceed under pseudonyms. We likewise DENY the motion to seal the unredacted motion to add class representatives. Both

denials are without prejudice to any future determination by the district court regarding whether to allow new class representatives to proceed under pseudonyms or whether to seal a motion adding class representatives.